**[Counsel for Defendants listed on signature page]**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CONTINENTAL AUTOMOTIVE SYSTEMS, INC., a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>AVANCI, LLC, a Delaware corporation, et al.,<br><br>        Defendants. | Case No. 5:19-cv-02520-LHK<br><br>**DEFENDANTS' MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF TEXAS PURSUANT TO 28 U.S.C. SECTION 1404(a)**<br><br>[ORAL ARGUMENT REQUESTED]<br><br>Judge: Hon. Lucy H. Koh<br><br>Date:    November 14, 2019, a Thursday<br>Time:    1:30 pm<br>Place:   Courtroom 8, 4th Floor<br>         280 South 1st Street<br>         San Jose, CA 95113 |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT, on November 14, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Lucy H. Koh, U.S. District Court Judge, Defendants Avanci, LLC ("Avanci"), Nokia Corporation ("Nokia Corp."), Nokia of America Corporation ("Nokia America"), Nokia Solutions and Networks US LLC ("Nokia Solutions"), Nokia Solutions and Networks Oy ("Nokia Solutions Oy"), Nokia Technologies Oy ("Nokia Technologies Oy") (Nokia Corp., Nokia America, Nokia Solutions, Nokia Solutions Oy, and Nokia Technologies Oy collectively referred to herein as "Nokia"), and Conversant Wireless Licensing SARL ("Conversant") (Avanci, Nokia, and Conversant are collectively referred to as "Defendants") will, and hereby do, move to transfer this action to the United States District Court for the Northern District of Texas.  Defendants bring this Motion on the ground that there is no material connection between this action and this District and the convenience of the parties and witnesses and the interests of justice would best be served if transfer is ordered pursuant to 28 U.S.C. § 1404(a).

Defendants base this Motion on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declarations of Luke McLeroy, Scott W. Burt, and Michael Brunelle filed concurrently herewith, other matters of which this Court may take judicial notice, the records on file with the Court, and any further briefing or argument presented to the Court before or at the time of hearing of this matter.

# TABLE OF CONTENTS

I.         INTRODUCTION ...................................................................................................1

II.        FACTUAL BACKGROUND ...................................................................................2

      A.     NONE OF THE PARTIES ARE LOCATED IN THIS DISTRICT, AND NONE OF THE ALLEGED CONDUCT OCCURRED IN THIS DISTRICT ...........................3

           1.    The Multilateral License Management Agreement That Is the Focus of the Complaint Was Negotiated and Entered into Outside This District ...............4

           2.    The Alleged Individual Licensing Negotiations Between Defendants and Continental US's Affiliates Occurred Outside this District............................5

           3.    The FRAND Commitments That Continental US Claims Were Allegedly Breached by Defendants Were Made Outside this District ............................6

      B.     NON-PARTY WITNESSES RELEVANT TO ANY PATENT ESSENTIALITY DETERMINATIONS ARE ALSO NOT LOCATED IN THIS DISTRICT...............7

III.       LEGAL STANDARD....................................................................................................8

IV.       ARGUMENT .................................................................................................................8

      A.     THE ACTION COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF TEXAS........................................................................................8

      B.     THE 1404 CONVENIENCE FACTORS WEIGH DECISIVELY TOWARD THE NORTHERN DISTRICT OF TEXAS AS THE MOST CONVENIENT AND APPROPRIATE VENUE FOR THIS ACTION ...................................................9

           1.    Continental US's Choice of Forum Is Entitled to Little, If Any, Weight Because It Is Not a Resident of This District and the Operative Facts in the Case Occurred Elsewhere ...................................................................................9

           2.    Transferring to the Northern District of Texas Is More Convenient for Both the Parties and the Witnesses .......................................................................12

           3.    The Location of Evidence Weighs Toward Transfer to the Northern District of Texas.....................................................................................................15

            4.    The Interest of Justice Factors Weigh in Favor of Transfer .........................15

                 (a)    The Forum's Familiarity with the Governing Law Factor Does Not Favor the Northern District of California ..........................................15

                 (b)    The Northern District of Texas Offers a More Streamlined Docket, Which Favors Transfer .................................................................17

                 (c)    The Northern District of Texas Has a Local Interest in the Adjudication of This Case ...............................................................17

V.        CONCLUSION..........................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004) ....................................................................9

*Arreola v. Finish Line*,
  No. 14-cv-03339-LHK, 2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) ..................12, 14

*Brown v. Abercrombie & Fitch Co.*,
  No. 4:13-CV-05205 YGR, 2014 WL 715082 (N.D. Cal. Feb. 14, 2014)...................12

*Burgess v. HP, Inc.*,
  No. 16-CV-04784-LHK, 2017 WL 467845 (N.D. Cal. Feb. 3, 2017)...........10, 17, 18

*Chang v. Biosuccess Biotech, Co.*,
  No. 14-CV-00425-LHK, 2014 WL 12703706 (N.D. Cal. May 30, 2014) .................8

*Ctr. For Food Safety v. Vilsack*,
  No. C 11-00831 JSW, 2011 WL 996343 (N.D. Cal. Mar. 17, 2011) .......................17

*Cung Le v. Zuffa, LLC*,
  108 F. Supp. 3d 768 (N.D. Cal. 2015) ................................................10, 12

*Duffy v. Facebook, Inc.*,
  No. 16-cv-06764-JSC, 2017 WL 1739109 (N.D. Cal. May 4, 2017)...................14, 17

*In re Funeral Consumers Antitrust Litig.*,
  No. C 05-01804 WHA, 2005 WL 2334362 (N.D. Cal. Sept. 23, 2005)....................16

*Global Tech. Int'l Ltd., v. Continental Automotive Sys., Inc.*,
  No. 12-cv-3041-CMC (D.S.C. Dec. 12, 2012), ECF No. 13-2.....................5

*Grossman v. Johnson & Johnson*,
  No. 14-cv-03557-VC, 2015 WL 1743116 (N.D. Cal. Apr. 13, 2015) .......................14

*Hoffman v. Blaski*,
  363 U.S. 335 (1960)....................................................................8, 9

*Jarvis v. Marietta Corp.*,
  No. C 98-4951 MJJ, 1999 WL 638231 (N.D. Cal. Aug. 12, 1999) ........................17

*Machado v. CVS Pharmacy, Inc.*,
  13-CV-04501-JCS, 2014 WL 631038 (N.D. Cal. Feb. 18, 2014) ............................18

*Martin v. Glob. Tel*Link Corp.*,
  No. 15-cv-00449-YGR, 2015 WL 2124379 (N.D. Cal. May 6, 2015).......................15

*Mays v. Wal-Mart Stores, Inc.*,
  No. 17-cv-07174-LHK, 2018 WL 1400468 (N.D. Cal. March 19, 2018) .......... *passim*

*Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*,
  2008 WL 794533 (N.D. Tex. Mar. 26, 2008) ........................................18

*Norwest Mortgage, Inc. v. Superior Court*,
  72 Cal. App. 4th 214 (1999) ..............................................................17

*Park v. Dole*,
  964 F. Supp. 2d 1088 (N.D. Cal. 2013) ..................................8, 10, 12, 15

*Peters v. Wells Fargo Bank, N.A.*,
  No. 17-cv-04367-JST, 2018 WL 398238 (N.D. Cal. Jan. 12, 2018) .........................................10

*Saleh v. Titan Corp.*,
  361 F. Supp. 2d 1152 (S.D. Cal. 2005) ....................................................................................11

*San Francisco Residence Club, Inc. v. Leader Bulso & Nolan, PLC*,
  No. C-13-0844 EMC, 2013 WL 2050884 (N.D. Cal. May 14, 2013) ....................................16

*Schuett v. FedEx Corp. Retirement Appeals Comm.*,
  No. 15-CV-0189-PJH, 2015 WL 4484153 (N.D. Cal. July 22, 2015)....................................16

*Sorensen v. Phillips Plastics Corp*,
  No. C-08-03094MHP, 2008 WL 4532556 (N.D. Cal. Oct. 9, 2008)........................................16

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988)....................................................................................................................8

*Valenzuela v. Sol Grp. Mktg. Co.*,
  No. 2:14-cv-09478-R-VBK, 2015 WL 653086 (C.D. Cal. Jan. 30, 2015) ...............................10

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ..................................................................................................................8

**Statutes**

15 U.S.C. § 22 ....................................................................................................................................9

28 U.S.C. § 1331 ................................................................................................................................9

28 U.S.C. § 1337(a) ...........................................................................................................................9

28 U.S.C. § 1367 ................................................................................................................................9

28 U.S.C. § 1391(b)(2)........................................................................................................................9

28 U.S.C. § 1391(c)(2)......................................................................................................................10

28 U.S.C. § 1404(a) ................................................................................................................1, 8, 18

## I.    INTRODUCTION

Defendants respectfully submit that this case simply does not belong in the Northern District of California.[1]  None of the allegedly unlawful or anticompetitive conduct occurred anywhere near this District, the parties' relevant connections to this District are negligible or non-existent, and it is likely that the overwhelming majority of the potential party and non-party witnesses, as well as documents, are located outside this District.  Moreover, Plaintiff Continental Automotive Systems, Inc. ("Continental US") is not a resident of this District—it is a Delaware corporation with its principal place of business in Michigan—so its choice of forum is entitled to no deference.  Instead, this Court should consider which forum would be most convenient for the parties and witnesses—that forum is the Northern District of Texas, where the bulk of the defendants are located, where the relevant Defendants entered into the Master License Management Agreement that is a central subject of the First Amended Complaint ("Complaint"), and where the likely witnesses from all parties can more conveniently attend any trial.  The relevant factors under 28 U.S.C. § 1404(a), when applied here, decidedly favor the Court transferring the case.

Tellingly, none of the conduct alleged in the Complaint—or referred to in the Anti-Suit Injunction Motion filed by Continental US—occurred in the Northern District of California.  The allegedly collusive Master License Management Agreement among Defendants was negotiated by defendant Avanci personnel located in Dallas, Texas, with personnel from the defendant and non-defendant patent owners in the Avanci platform,[2] the substantial majority of whom are located either in Texas or abroad.  Only a single officer of one defendant, Conversant, who was involved in negotiating the Master License Management Agreement is located in the Northern District of

---

[1] While they do not join in this motion, Optis UP Holdings, LLC ("Optis UP"), Optis Cellular Technology, LLC ("Optis Cellular"), Optis Wireless Technology, LLC ("Optis Wireless") (Optis UP, Optis Cellular, and Optis Wireless collectively referred to herein as "Optis") do not oppose transfer.  Former Optis employee, Raymond Warren, attested to facts relevant to this motion in his declaration in support of defendants' opposition to the Continental US's antisuit injunction motion.  His declaration, ECF No. 102-6, is cited herein as "Warren Declaration" or "Warren Decl."

[2] The Avanci platform is a "patent pool" within the meaning of the "Antitrust Guidelines for the Licensing of Intellectual Property," issued by the United States Department of Justice and Federal Trade Commission.  U.S. Dep't of Justice & Fed. Trade Comm'n, Antitrust Guidelines for the Licensing of Intellectual Property (Jan. 12, 2017) at § 5.5.

California.  Moreover, none of the one-on-one licensing negotiations that took place between patent owners in the Avanci platform and Continental entities occurred in this District.  The licensing personnel for Continental US are believed to be located at Continental US's principal place of business in Michigan, but, again, no defendant ever negotiated with any Continental US employees, instead negotiating only with employees of other Continental entities in Europe, and Avanci, for example, engaged in its licensing negotiations with Continental entities from its headquarters in Dallas, Texas.  None of the standard-setting organizations ("SSOs") whose intellectual property rights policies ("IPRs") are at issue in this Complaint are located in the Northern District of California.  And the conduct challenged in the Anti-Suit Injunction Motion all occurred overseas in Europe, a location from which it is more convenient to travel by air to Dallas than it would be to travel to the Northern District of California.

While the Northern District of California has no connection whatsoever to this dispute or the relevant conduct of the parties, the Northern District of Texas is where most of the relevant conduct alleged in the Complaint occurred, and it is by far the most convenient district for the parties and for the potential party witnesses and non-party witnesses.  None of the Section 1404 transfer factors weighs in favor of this action remaining in this District, and all of the factors, taken together, weigh decisively toward transfer to the Northern District of Texas.

## II.    FACTUAL BACKGROUND

The Complaint alleges a variety of claims relating to defendants' purported agreement to refuse to individually license SEPs related to 2G, 3G, and 4G cellular standards to Continental US on fair, reasonable, and non-discriminatory ("FRAND") terms.  Compl. ¶ 1.  The gravamen of Continental US's claims is that "[d]efendants have collusively agreed to only offer licenses to the automotive industry at the OEM level in an attempt to obtain elevated royalties that far exceed any measure of FRAND," and that the defendant patent owners collusively agreed to refuse to offer licenses to Continental US on an individual basis, and instead agreed to only license their patents through the Avanci platform license.  *Id.* ¶¶ 8, 128-133, 149, 171-178.  Continental US further alleges that defendants' "collusive agreement is expressly memorialized in a multilateral agreement among Avanci Members and Avanci"—the Avanci platform's Master License Management

Agreement.  *Id.* ¶ 129.  In addition, Continental US filed an Anti-Suit Injunction Motion that concerns overseas patent litigation in Germany.  As discussed below, none of this alleged conduct has any material connection to the Northern District of California.

### A.   NONE OF THE PARTIES ARE LOCATED IN THIS DISTRICT, AND NONE OF THE ALLEGED CONDUCT OCCURRED IN THIS DISTRICT

Continental US is a Delaware corporation with its principal place of business in Auburn Hills, Michigan—located in the Eastern District of Michigan—and is an indirect subsidiary of the German conglomerate Continental AG.  Compl. ¶¶ 16-17.  Continental US is a non-resident in this District.  Defendants' are unaware of any Continental US licensing personnel that have played any role in negotiating with any Defendant.  Instead, all of the licensing personnel that the Defendants dealt with were European employees of Continental entities based in Europe.  As a result, Continental US's relevant operations have no material connection with this District at all.

It is also the case that none of the Defendants are incorporated in California or have principal places of business in this District, and none of the licensing personnel that interacted with Continental US are located here:[3]

- Avanci, LLC is a Delaware company with its principal place of business in Dallas, Texas, and Avanci Platform International Limited is an Irish company with its principal place of business in Dublin, Ireland.  Compl. ¶¶ 20-21;

---

[3] Continental US asserts in the Complaint that it has a research and development facility in Santa Clara, that Defendants Nokia and Conversant Intellectual Property Management Corp. ("Conversant IP Texas"), an affiliate of defendant Conversant SARL, has offices located in the San Jose Division, and that unnamed third parties may also have offices in the San Jose Division.  Compl. ¶¶ 39, 68.  However, nowhere in the Complaint does Continental US allege that its research and development facility in Santa Clara was in any way involved in the licensing claims made against Defendants.  Nor does Continental US claim that the offices of Conversant IP Texas or third parties in the District had anything to do with the licensing behavior at issue in the Complaint.  The Complaint vaguely alleges that Nokia "has sent licensing correspondence to Continental's affiliate from its offices in this judicial district."  *Id.* ¶ 33.  But, the affiliate referenced is Zonar Systems, Inc., which is based in Seattle, Washington.  Zonar is not a party to the case, and the Nokia America licensing employee who had contact with Zonar moved to Seattle, Washington.  ECF No. 102-4 ¶¶ 3-4, 7 ("Schmidt Decl.").  In any event, a single Nokia America licensing person's contact with non-party Zonar cannot serve as a basis for Continental US's claims here.  Therefore, it is irrelevant for purposes of transfer.  Similarly, the Complaint alleges that Continental *sent* licensing correspondence to a Conversant office in this District (Compl. ¶ 41), but the Conversant representative involved in this correspondence was at all times based in Ottawa, Canada.  Declaration of Scott W. Burt ¶ 6(c) ("Burt Decl.").

- Nokia Corporation, Nokia Solutions and Networks Oy, and Nokia Technologies Oy are all Finnish companies with principal places of business in Espoo, Finland.  Nokia of America Corporation ("Nokia America") is a Delaware corporation with its most significant corporate places of business in Murray Hill, New Jersey, and Dallas, Irving, and Plano, Texas.  Nokia Solutions and Networks US LLC was headquartered in Irving, Texas, but no longer exists—it was merged into Alcatel Lucent USA Inc., effective January 1, 2018, which later changed its name to Nokia of America Corporation.  Alcatel Lucent USA Inc. was headquartered in Murray Hill, New Jersey.  *See* Declaration of Michael Brunelle ("Brunelle Decl.") ¶ 3-4, 9-11; *compare id.*, *with* Compl. ¶¶ 27-32;

- Conversant Wireless Licensing SARL is a Luxembourgian company with its principal place of business in Luxembourg.  Compl. ¶ 35; Burt Decl. ¶ 2.

- Optis Wireless Technology, LLC is a Delaware company with its principal place of business in Plano, Texas; Optis Cellular Technology, LLC is a Delaware company in Plano, Texas; and Optis UP Holdings, LLC is a Delaware company in Plano, Texas.  Compl. ¶¶ 44-46; Warren Decl. ¶¶ 9-11.

Based on the above, it is evident that, the vast majority of the relevant party witnesses will be located outside this District.

### 1. The Multilateral License Management Agreement That Is the Focus of the Complaint Was Negotiated and Entered into Outside This District

Continental US alleges that "Defendants have collusively agreed to only offer licenses to the automotive industry at the OEM level in an attempt to obtain elevated royalties that far exceed any measure of FRAND" and that this agreement was "expressly memorialized in a multilateral agreement among Avanci Members and Avanci," the Master License Management Agreement.  Compl. ¶¶ 8, 129; *see also id.* ¶¶ 10, 15, 128, 150, 154, 171.  That agreement was negotiated and entered into in Texas—not in this District.

Avanci, LLC is located in Dallas, Texas and it conducts its licensing business operations through personnel working in Dallas.  McLeroy Decl. ¶ 2.  Avanci, LLC's Dallas employees are responsible for the negotiation and execution of agreements with patent-owner participants in the Avanci platform, including the Master License Management Agreement that Continental US has made the central subject of its Complaint.  *Id.* ¶¶ 2-3; Warren Decl. ¶ 18; Compl. ¶ 129.

Likewise, the key employees of defendant licensors with responsibility for the Avanci relationship, including the negotiation and signing of Master License Management Agreement, are

4

largely located in the Northern or Eastern Districts of Texas, or in Europe, primarily Finland, in the case of the Nokia Defendants.  McLeroy Decl. ¶¶ 2-3.  Key employees of other patent licensors in Avanci who engaged in the negotiations at issue in the Complaint are located primarily in the Northern District of Texas, Southern District of California, Delaware, or foreign countries—but not in the Northern District of California.[4]  *Id.* ¶ 3.

**2.    The Alleged Individual Licensing Negotiations Between Defendants and Continental US's Affiliates Occurred Outside this District**

Continental US alleges it sought relevant licenses from Avanci, Nokia, Conversant, and Optis.  Compl. ¶¶ 114, 140-144.  However, it nowhere alleges that these attempts to license were conducted from or in the Northern District of California or by employees at Continental US's facility in this District.[5]  Instead, Continental US does not dispute that this conduct occurred in locations far away from the Northern District of California.

For example, Continental US has submitted a sworn declaration in support of its Anti-Suit Motion stating that "Continental" (defined as Continental AG, Continental Automotive GmbH, and Continental Automotive Hungary Ltd.—not Continental US) negotiated for "more than a year . . . to obtain a direct licensing offer from Nokia" and then filed a complaint with the European Commission leveling accusations that Nokia violated FRAND "by failing to offer direct licenses to Nokia's purported standard essential patents ('SEPs') to Continental and its affiliate Zonar, or any other component suppliers."   ECF No. 32-22 ¶¶ 2-3 ("Hufnagel Decl.").[6]   Other than some

---

[4] Boris Teksler, one of three managers of Conversant SARL, and the CEO of its parent company, Conversant Intellectual Property Management Inc. ("Conversant IP"), works and resides near Palo Alto, California.  Burt Decl. ¶ 3.  Although Mr. Teksler was one of the Conversant representatives involved in the discussions to join Avanci, other Conversant representatives involved in those negotiations are based in Plano, Texas.  *See id.*  ¶ 6(b).

[5] Continental US also has a facility located near San Antonio, Texas.  *See* Declaration of Continental General Counsel Robert Patton, *Global Tech. Int'l Ltd., v. Continental Automotive Sys., Inc.*, No. 12-cv-3041-CMC (D.S.C. Dec. 12, 2012), ECF No. 13-2.  To the extent that Continental US's facility in the Northern District of California weighs against transfer (which it does not), it is counter-balanced by the existence of Continental US facilities in Texas.

[6] Continental AG noted that Daimler, Bury Technologies, Valeo, and Gemalto filed similar complaints with the European Commission challenging Nokia's licensing activities in Finland—not the Northern District of California.  Hufnagel Decl. ¶ 4-5.

communications with Zonar in Seattle, Washington that have nothing to do with Continental US's claims in this case, all of this alleged Nokia conduct relating to the European Commission would have occurred, if at all, with Nokia's licensing personnel in Finland.  *See* Brunelle Decl. ¶ 12; Schmidt Decl. ¶¶ 7-10; ECF No. 102-3 ("Holopainen Decl.") ¶¶ 2, 4-5.

Similarly, Continental US cannot dispute that any efforts it claims to have made to obtain licenses from Avanci, Conversant, or Optis would have taken place outside of the Northern District of California.  Avanci employees in Dallas, Texas discussed a potential license for Avanci's portfolio with Continental Automotive GmbH employees in Germany.  McLeroy Decl. ¶ 4; Compl. ¶¶ 140-141.  As for Conversant, in January 2019, an outside attorney for Continental directed correspondence with "Conversant" regarding a license to the Conversant Wireless SARL portfolio to the California offices of Conversant IP Texas.  Burt Decl. ¶ 6(c).  The licensing correspondence on behalf of Conversant SARL, however, was authored by a representative of Conversant IP, from his offices located in Ottawa, Canada.  *Id.*  Likewise, the limited communications PanOptis Patent Management, LLC, a non-party affiliate of Optis, had with Zonar, a non-party affiliate of Plaintiff in Seattle, Washington, and Continental Automotive AG, Plaintiff's non-party parent in Germany, were directed to and from PanOptis Patent Management's office and personnel in Plano, Texas.  Warren Decl. ¶¶ 5-7, 17 (Optis and its non-party affiliates do not operate or maintain personnel in California).

### 3. The FRAND Commitments That Continental US Claims Were Allegedly Breached by Defendants Were Made Outside this District

Continental US alleges that Defendants made and breached FRAND commitments to various SSOs.[7]  *See, e.g.*, Compl. ¶¶ 1, 5-6, 14-15, 71, 86-102, 120, 126, 151-158, 182-186.  Yet, none of these SSOs are located in this District.  The Telecommunications Industry Association ("TIA") is headquartered in Arlington, Virginia and has an office in Dallas, Texas.[8]  The European

---

[7] Avanci is not a patent owner, as admitted by Continental US in its Complaint.  *See, e.g.*, Compl. ¶¶ 4, 5, 7, 81, 84-102, 151-168.  Therefore, Avanci could not and did not make any FRAND commitments to any SSO.

[8] *See Contact Us*, Telecommunications Industry Association, https://www.tiaonline.org/about/contact-us/ (last visited July 19, 2019).

Telecommunications Standards Institute ("ETSI") is headquartered in Sophia Antipolis, France;[9] the Alliance for Telecommunications Industry Solutions ("ATIS") is in Washington, D.C., United States;[10] the Association of Radio Industries and Businesses ("ARIB")[11] and the Telecommunication Technology Committee ("TTC")[12] are both in Tokyo, Japan; and the China Communications Standards Association ("CCSA") is in China.[13]  There is, thus, no relevant SSO to whom FRAND commitments were allegedly made in the Northern District of California.

### B.  NON-PARTY WITNESSES RELEVANT TO ANY PATENT ESSENTIALITY DETERMINATIONS ARE ALSO NOT LOCATED IN THIS DISTRICT

Continental US alleges that not all of the patents offered by the Avanci license are essential to cellular standards, many of which "have alternatives in or outside of the 'platform,'" as a result of "initial over-declarations of potential essentiality," and that "Avanci has made no disclosure of the actual process by which it's supposed experts have made essentiality determinations."  Compl. ¶¶ 116-117; *see also id.* ¶¶ 171-172.  These allegations make it possible that non-party witnesses who participated in the essentiality determination may be called to testify in this case.  Yet, as with the parties and party witnesses, none of the non-party patent experts who made the essentiality determinations are located in this District.  McLeroy Decl. ¶ 5.  Indeed, six are located in Fredericksburg, Virginia; three are located in Raleigh, North Carolina; four are located in Boulder, Colorado; one is located in Salt Lake City, Utah; two are located in Seattle, Washington; and two are located in Austin and Houston, Texas.  *Id.*

---

[9]  *See  Find  Us*, European Telecommunications Standards Institute, https://www.etsi.org/about/find-us (last visited July 19, 2019)

[10]  *See  About,* Alliance for Telecommunications Industry Solutions, https://www.atis.org/01_about/location/ (last visited July 19, 2019).

[11]  *See  About  ARIB*, Association of Radio Industries and Business, https://www.arib.or.jp/english/arib/about_arib.html (last visited July 19, 2019).

[12]  *See About TTC*, Telecommunications Technology Committee, https://www.ttc.or.jp/e/about (last visited July 19, 2019).

[13]  *See  About  CCSA*, China Communications Standards Association, http://www.ccsa.org.cn/english/about.php (last visited July 19, 2019).

### III.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).

Courts employ a two-step process to determine whether to transfer an action under Section 1404.  *Chang v. Biosuccess Biotech, Co.*, No. 14-CV-00425-LHK, 2014 WL 12703706, at *2 (N.D. Cal. May 30, 2014).  The first step is to determine whether the action could have been brought in the district to which transfer is sought.  *Mays v. Wal-Mart Stores, Inc.*, No. 17-cv-07174-LHK, 2018 WL 1400468, at *2 (N.D. Cal. March 19, 2018) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)).  If so, courts then undertake an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

Courts in this District analyze several factors in determining whether convenience and fairness support transferring an action under Section 1404(a).  These include:  "(1) Plaintiff's choice of forum; (2) the convenience of the parties and witnesses; (3) the location of the evidence; and (4) other factors related to fairness and the interest of justice," including the familiarity of each forum with the applicable law, the local interest in deciding local controversies, and the relative court congestion and time to trial.  *Mays*, 2018 WL 1400468, at *3, 5-6.  However, the plaintiff's choice of forum is not given deference when the plaintiff has no relevant connection to the forum it has chosen, as is the case here.  *See Mays*, 2018 WL 1400468, at *3 (deference given to a plaintiff's choice of forum is "substantially diminished" where the plaintiff venue choice is not its residence); *Park v. Dole*, 964 F. Supp. 2d 1088, 1094 (N.D. Cal. 2013) (same).

### IV.   ARGUMENT

### A.   THE ACTION COULD HAVE BEEN BROUGHT IN THE NORTHERN DISTRICT OF TEXAS

This action meets all three requirements to have been brought in the Northern District of Texas: (1) the Northern District of Texas would have subject matter over this action; (2) Defendants are subject to personal jurisdiction in the Northern District of Texas (at least to the same extent they are in the Northern District of California);[14] and (3) venue is proper in the Northern District of Texas. *See Hoffman*, 363 U.S. at 343-44.

First, the Northern District of Texas has federal question jurisdiction over Continental US's antitrust claims under 28 U.S.C. §§ 1331 and 1337(a), and supplemental jurisdiction over Continental US's state law claims under 28 U.S.C. § 1367. Second, personal jurisdiction exists in the Northern District of Texas to the same extent that it exists in the Northern District of California. *See* 15 U.S.C. § 22; *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1179-80 (9th Cir. 2004) (holding that Section 12 of the Clayton Act confers a statutory basis for exercising personal jurisdiction over an antitrust defendant in any federal district court, without consideration as to venue). Finally, venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). As referenced above, the majority of the conduct that is being challenged by Continental US here—licensing activities through and related to Avanci, LLC, headquartered in Dallas, Texas—occurred in the Northern District of Texas. *See supra*, pp. 3-7. Accordingly, this action could have been brought in the Northern District of Texas.

**B.    THE 1404 CONVENIENCE FACTORS WEIGH DECISIVELY TOWARD THE NORTHERN DISTRICT OF TEXAS AS THE MOST CONVENIENT AND APPROPRIATE VENUE FOR THIS ACTION**

**1.    Continental US's Choice of Forum Is Entitled to Little, If Any, Weight Because It Is Not a Resident of This District and the Operative Facts in the Case Occurred Elsewhere**

---

[14] The non-U.S. defendants and Optis Wireless, Optis Cellular Technology, LLC, and Optis UP Holdings, LLC reserve the right to assert lack of personal jurisdiction as a defense in this matter. The filing of this motion shall not be deemed or construed in any way as consent to personal jurisdiction or as a waiver of the right to assert the defense of lack of personal jurisdiction or any other defense. For purposes of this motion, however, Defendants note that if personal jurisdiction exists in the Northern District of California, it would exist to the same extent in the Northern District of Texas based on Plaintiff's antitrust claims. Defendants asserted a personal jurisdiction challenge in the Opposition to Plaintiff's Motion for Anti-Suit Injunction, ECF No. 102, pp. 22-25.

Continental US's choice of forum is not entitled to any material weight here because Continental US neither resides in the Northern District of California, nor alleges that any relevant conduct took place in this District.  Where, as here, a plaintiff is a non-resident of its chosen forum, its choice receives little deference in a motion to transfer analysis.  *See Mays*, 2018 WL 1400468, at *3 (deference given to a plaintiff's choice of forum is "substantially diminished" where the plaintiff's venue choice is not its residence); *Park*, 964 F. Supp. 2d at 1094 (same).[15]  For purposes of venue, a corporate plaintiff is deemed to reside "only in the judicial district in which it maintains its principal place of business."  28 U.S.C. § 1391(c)(2).  Continental US concedes that it is incorporated under the laws of Delaware with its principal place of business in Auburn Hills, Michigan.  Compl. ¶ 16.

Moreover, that deference is further diminished where, as here, the operative facts of the case have no connection to the Northern District of California.  *Burgess v. HP, Inc.*, No. 16-CV-04784-LHK, 2017 WL 467845, at *7 (N.D. Cal. Feb. 3, 2017) (granting motion to transfer despite plaintiff's forum choice where "the majority of the relevant conduct occurred outside of the Northern District of California").  Here, Continental US does not allege any conduct related to its claims occurred in this District.  *See Cung Le v. Zuffa, LLC*, 108 F. Supp. 3d 768, 779 (N.D. Cal. 2015) (transferring away from plaintiff's chosen forum because, "despite the attempt to create some strong connection to San Jose, Plaintiffs filed . . . in a district where very few of the operative facts occurred").  Indeed, even Continental US's home district of the Eastern District of Michigan would have a greater connection to the claims by virtue of the fact that Continental US is headquartered there, as well as the Eastern District of Michigan's closer proximity to defendants' witnesses and documents than this District.  It would be a more appropriate venue than the Northern District of

---

[15] *See also Peters v. Wells Fargo Bank, N.A.,* No. 17-cv-04367-JST, 2018 WL 398238, at *2 (N.D. Cal. Jan. 12, 2018) ("Less deference is also appropriate when the plaintiff has chosen a forum where it does not reside."); *Valenzuela v. Sol Grp. Mktg. Co.*, No. 2:14-cv-09478-R-VBK, 2015 WL 653086, at *3 (C.D. Cal. Jan. 30, 2015) ("While Plaintiff's choice of forum ordinarily merits great deference, the Court does not defer to his choice because he does not plead that he resides in California.").

California.[16]  Plaintiff's election of this District is naked forum shopping for the Ninth Circuit, as there is no plausible connection between the venue and this case.

As noted above (*see supra* n.3), Continental US alleges only that it and Nokia and an affiliate of Conversant SARL have offices in this District, but it does not allege facts linking this action to conduct by employees at those offices.  Compl. ¶¶ 39, 68.  The presence of unrelated offices of a defendant or affiliate of a defendant in the district is an insufficient connection to warrant deference to plaintiff's choice of forum.  *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1159 (S.D. Cal. 2005) (ordering transfer of venue and reasoning that "[w]hile it certainly cannot be disputed that the defendants, one of which is headquartered here, have some connections with the [transferor district], plaintiffs have failed to demonstrate that *their claims* have a *material* connection with this district . . .") (emphasis in original).

Instead, as shown above:

- The allegedly unlawful Master License Management Agreement was negotiated and entered into by Avanci personnel in Dallas, Texas, and the employees of many of the patent-owners in the Avanci platform whose conduct is relevant to the allegations in the Complaint are located in or near the Northern District of Texas.  Conversely, only one potentially relevant witness is located in the Northern District of California to Defendants' knowledge.  *See supra*, pp. 4-5.

- According to Continental US's sworn declaration, the individual licensing conduct relevant to Continental US's claim with Nokia occurred in Europe, and was handled by Continental's German parent.  Avanci personnel based in Dallas also engaged in licensing negotiations with Continental's parent in Europe.  *See supra*, pp. 5-6.  And other defendants engaged in licensing negotiations with Continental US's parent in Europe from their offices in Plano, Texas or Ottawa, Canada.  *Id.*  No such licensing negotiations are alleged to have occurred in the Northern District of California.

---

[16] While the Northern District of Texas is by far the most appropriate and convenient forum, Defendants note that venue in the Eastern District of Michigan would be much more convenient than San Jose for the vast majority of witnesses.  The travel time between either Texas or Europe, where Defendants' witnesses are primarily located, to Detroit is significantly less than the travel time to the Northern District of California.  Moreover, transfer to the Eastern District of Michigan would be much more convenient than the Northern District of California for the Conversant IP representative in Ottawa who was involved in licensing correspondence with Continental US and is a likely witness in this case.  Burt Decl. ¶¶ 1, 5, 6; *see generally* AIR MILES CALCULATOR, https://www.airmilescalculator.com/distance/ (The estimated flight time from Ottawa, Canada to Detroit, Michigan is approximately 1 hour and 19 minutes whereas the flight time to San Francisco, California is approximately 5 hours and 7 minutes).

- The FRAND commitments that Continental US claims were breached were made to SSOs that are all located far outside the Northern District of California.  *See supra*, pp. 6-8.

- The non-party patent experts who evaluated the essentiality of the SEPs included in the Avanci license are all located outside the Northern District of California.  *See supra*, pp. 7-8.

Continental US claims that Avanci is the "Collusive Vehicle to Raise the Price of Utilizing Cellular Standards . . . ."  Compl. at 28.  Because Continental US's claims arise from Avanci's role as a licensing platform, and are based on conduct of Avanci employees working out of Avanci's principal executive office in Dallas, including the negotiation of the Master License Management Agreement, the Northern District of Texas has far greater ties to the underlying facts of the dispute, making it the more appropriate forum.  *See Arreola v. Finish Line*, No. 14-cv-03339-LHK, 2014 WL 6982571, at *11 (N.D. Cal. Dec. 9, 2014) (transferring to the district where "the relevant agreements were most likely negotiated and executed"); *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014) (transferring where "the Northern District [of California]'s connection to the activities alleged in the complaint is significantly weaker than the [proposed district's], as the majority of the incidents giving rise to the action occurred there."); *Cung Le*, 108 F. Supp. 3d at 779 (transferring to venue with a "considerably strong" interest because "Defendant is headquartered there and conducts a substantial amount of business in" that area).  Given the absence of any material connection of the parties (including Continental US) and the claims to this District, the Court should afford no weight to Continental US's choice of forum, and transfer to the Northern District of Texas.

### 2.   Transferring to the Northern District of Texas Is More Convenient for Both the Parties and the Witnesses

The convenience of the parties and witnesses, "often the most important factor in resolving a motion to transfer," heavily favors transfer to the Northern District of Texas.  *Park*, 964 F. Supp. 2d at 1095 (internal citations and quotations omitted).  Transfer would unquestionably be more convenient for Defendants, many of whom are headquartered in or very near to that district, and for the many relevant potential witnesses from Defendants, who are located in that district.

Defendant Avanci, LLC is headquartered in Dallas, Texas.  Compl. ¶ 20.  Likewise, all three Optis defendants—Optis Wireless, Optis Cellular, and Optis UP—are headquartered in Plano, Texas, located less than twenty miles north of Dallas.[17]  *Id.* ¶¶ 44-46; Warren Decl. ¶¶ 9-13.  Finally, Conversant IP Texas and Conversant Wireless Licensing Limited are Texas corporations with principal places of business in Plano.[18]  Compl. ¶ 39; Burt Decl. ¶ 1.  Accordingly, many of the relevant potential witnesses from Defendants are located in or near Dallas.  *See supra*, pp. 3-8. Nokia America has its most significant corporate presences in Murray Hill, New Jersey, and Dallas, Texas; Irving, Texas; and Plano, Texas.  Brunelle Decl. ¶ 3.  For party witnesses located in Europe, their convenience will be better served by litigation in a more convenient locale, like the Northern District of Texas, than in the Northern District of California.[19]

Further, to the extent there are any relevant Continental US witnesses located in its Michigan headquarters, they are also closer to the Northern District of Texas than to the Northern District of California.[20]  And the same would be true for witnesses from Continental's parent company located

---

[17] *See Distance from Dallas, TX to Plano*, TX, DISTANCE BETWEEN CITIES, https://www.distance-cities.com/distance-dallas-tx-to-plano-tx, (last visited July 19, 2019).  Moreover, the Northern District of Texas is more convenient than the Northern District of California for the witnesses who will have to travel for purposes of this litigation, as hotel rooms in the former venue are materially less expensive than in the latter.

[18] While Conversant SARL is the only named Conversant defendant, Continental US defines "Conversant" to include the aforementioned entities, and alleges that "Conversant IP Inc., Conversant SARL, Conversant IP Corp., and Conversant Wireless . . . act as a common, unified economic enterprise."  Compl. ¶ 40.  The management and licensing of the Conversant Wireless SARL portfolio is conducted by employees of Conversant Wireless Texas, Conversant IP Texas, and Conversant IP.  Burt Decl. ¶ 4.

[19] Continental US claims that it spent more than a year engaged in various individual licensing negotiations with Nokia Solutions Oy and Nokia Technologies Oy, both headquartered in Espoo, Finland.  Hufnagel Decl. ¶ 1-2.  Any relevant witnesses from Avanci Platform International Limited and Conversant SARL are likely located in Ireland and Luxembourg, respectively and transfer to the Northern District of Texas would lessen the distance and time for witnesses traveling from these jurisdictions.  The estimated flight times from Dublin, Ireland and from Luxembourg to Dallas, Texas are 8 hours and 57 minutes and 10 hours and 5 minutes.  These compare with flight times to San Jose, California of 10 hours and 9 minutes, and 11 hours and 12 minutes, and 10 hours and 48 minutes, respectively.  *See generally* AIR MILES CALCULATOR, https://www.airmilescalculator.com (last visited July 19, 2019).

[20] Indeed, the travel time and average ticket cost for a flight from Detroit, Michigan to Dallas, Texas is less than from Detroit, Michigan to San Jose, California.  Specifically, the air travel distance from Detroit to Dallas is 981 miles and the flight takes 2 hours and 21 minutes.  *See Distance Between*

---

13

in Germany.[21]

The mere fact that one or more parties has an office in California does not make the Northern District of California more convenient than the Northern District of Texas, particularly where none of the relevant conduct occurred in this forum and the vast majority of relevant witnesses are located elsewhere. *See Duffy v. Facebook, Inc.*, No. 16-cv-06764-JSC, 2017 WL 1739109, at *6 (N.D. Cal. May 4, 2017) (ordering transfer of venue and reasoning that "[t]he mere fact that one defendant's headquarters are [in the transferor state] does not make this forum more convenient when the claims really arise out of conduct in another forum").

Finally, and importantly, the Northern District of Texas is more convenient to most of the currently known potential non-party witnesses—none of whom are located in this District. *Arreola*, 2014 WL 6982571, at *10 ("[W]hile the convenience of party witnesses is a factor to be considered, the convenience of *non-party witnesses* is the more important factor") (citation and quotations omitted) (emphasis in original); *Grossman v. Johnson & Johnson*, No. 14-cv-03557-VC, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015) ("The convenience of the witnesses, particularly non-party witnesses, is often the most important factor."). As shown above, the non-party patent experts whom Avanci engaged to evaluate the essentiality of the SEPs included in the Avanci license are potential non-party witnesses. Of these individuals, two are located in Austin and Houston, Texas, six in Fredericksburg, Virginia; three in Raleigh, North Carolina, and four in Boulder, Colorado[22]

---

Detroit, MI (DTW) and Dallas, TX (DAL), AIR MILES CALCULATOR, https://www.airmilescalculator.com/distance/dtw-to-dal/ (last visited July 19, 2019). By contrast, the air travel distance from Detroit to San Jose is 2,062 miles and the flight takes 4 hours and 24 minutes. *See Distance Between Detroit, MI (DTW) And San Jose, CA (SJC)*, AIR MILES CALCULATOR, https://www.airmilescalculator.com/distance/dtw-to-sjc/ (last visited July 19, 2019).

[21] The air travel distance from Munich, Germany to Dallas, Texas is 5,329 miles and 10 hours and 35 minutes. *See Distance Between Munich (MUC) and Dallas, TX (DFW)*, AIR MILES CALCULATOR, https://www.airmilescalculator.com/distance/muc-to-dfw/ (last visited July 19, 2019). This compares with approximately 5,882 miles and 11 hours and 38 minutes to San Jose, California. *See Distance Between Munich (MUC) and San Jose, CA (SJC)*, AIR MILES CALCULATOR, https://www.airmilescalculator.com/distance/muc-to-sjc/ (last visited July 19, 2019).

[22] The air travel distance from Denver to Dallas is 641 miles and the flight takes 1 hour and 42 minutes. *See Distance Between Denver, CO (DEN) and Dallas, TX (DFW)*, AIR MILES CALCULATOR, https://www.airmilescalculator.com/distance/den-to-dfw// (last visited July 19, 2019). The air travel distance from Denver to San Jose as 948 miles and the flight takes 2 hours

all of which are more convenient to Dallas than San Jose.[23]   In addition, potential witnesses from non-defendant patent owners in the Avanci platform are also located in the Dallas, Texas area. McLeroy Decl. ¶ 3.   Certain non-party licensing witnesses of Continental's German parent are located in Germany, for which Dallas would again be more convenient.  *See* Hufnagel Decl. ¶¶ 1-2.

### 3. The Location of Evidence Weighs Toward Transfer to the Northern District of Texas

"Although developments in electronic conveyance have reduced the cost of document transfer somewhat, costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored."  *Park*, 964 F. Supp. 2d at 1095.  Because Continental US claims that Avanci is the "Collusive Vehicle to Raise the Price of Utilizing Cellular Standards," Compl. at 28, documents maintained by Avanci in Dallas are likely to be among the most relevant to this action, which weighs in favor of transfer.  Other relevant documents from various of the defendants are also likely to be located in or near the Northern District of Texas.[24]

It is also likely that a volume of potentially relevant electronic evidence is located outside of this District and the Northern District of Texas.  The location of those documents is a neutral factor, which, as explained below, does not disturb the balance when the factors weigh toward transfer.  *See Martin v. Glob. Tel*Link Corp.*, No. 15-cv-00449-YGR, 2015 WL 2124379, at *5 (N.D. Cal. May 6, 2015).

### 4. The Interest of Justice Factors Weigh in Favor of Transfer

#### (a) The Forum's Familiarity with the Governing Law Factor Does Not Favor the Northern District of California

Where the "relevant factors either favor transfer . . . or are neutral," courts find that, "on balance, the factors weigh in favor of transfer."  *Mays*, 2018 WL 1400468, at *6.  In this case, the

---

and 17 minutes.  *See Distance Between Denver, CO (DEN) and San Jose, CA (SJC)*, Air Miles Calculator, https://www.airmilescalculator.com/distance/den-to-sjc/ (last visited July 19, 2019).

[23] The remaining small minority, three of fifteen, are in Salt Lake City, Utah (one), and Seattle, Washington (two), which are closer to San Jose than to Dallas.

[24] As mentioned above, all three Optis defendants are headquartered in Plano, Texas, and Conversant Intellectual Property Management Corporation and Conversant Wireless Licensing Limited are Texas corporations with principal places of business in Plano.  Compl. ¶¶ 39, 44-46; Burt Decl. ¶ 1.

forum's familiarity with the governing law does not disrupt the balance of factors that favor transfer because this factor "is inapplicable in a choice between two federal courts applying federal law." *Sorensen v. Phillips Plastics Corp*, No. C-08-03094MHP, 2008 WL 4532556, at *4 (N.D. Cal. Oct. 9, 2008); *see Schuett v. FedEx Corp. Retirement Appeals Comm.*, No. 15-CV-0189-PJH, 2015 WL 4484153, at *7 (N.D. Cal. July 22, 2015) ("The court presumes that all federal courts have equal familiarity with the governing [federal] law."). The majority of Continental US's claims raise questions of, or are inextricably intertwined with, federal law and claims, so there is no distinction between this District and the Northern District of Texas in their familiarity with the law.

The remaining claims are either based in contract law or California's Unfair Competition Law ("UCL"). The applicable law for Plaintiff's contract claims will depend on the circumstances of the underlying agreements to the SSOs' IPR policies, but given that neither the patent-owner defendants nor the SSOs are located in California, there is no reason to think that California law will govern those claims.[25]

As to the single supplemental California law claim, because "the main *federal* event is clearly better served in the [Northern] District of Texas than in San Francisco, the pendency of a supplemental state-law claim should not override the indicated result" of the transfer analysis. *In re Funeral Consumers Antitrust Litig.*, No. C 05-01804 WHA, 2005 WL 2334362, at *6 (N.D. Cal. Sept. 23, 2005). Moreover, the Northern District of Texas "would have little difficulty in assessing and applying that [California] law given the straightforward nature of the claim brought against Defendants." *San Francisco Residence Club, Inc. v. Leader Bulso & Nolan, PLC*, No. C-13-0844 EMC, 2013 WL 2050884, at *9 (N.D. Cal. May 14, 2013). Here, the UCL claim is predicated on either the claimed antitrust violation or the claimed breach of contract, so that there is a substantial overlap in the UCL analysis. Compl. ¶¶ 198-204. Further, because the California UCL does not cover "injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are

---

[25] ETSI's IPR Policy designates the laws of France to govern the agreement. But ETSI's designation of French law does not make one federal jurisdiction more appropriate than the other. The remaining SSOs do not specify which state's contract law a court should apply when interpreting the respective policies.

outside of California," (*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 225 (1999)), it is very likely that the UCL claim will not even survive a motion to dismiss.  For all of these reasons, the "familiarity with the governing law" factor in the transfer analysis is neutral.

        (b)      The Northern District of Texas Offers a More Streamlined Docket, Which Favors Transfer

"In evaluating the interest of justice, a court may consider public interest factors such as court congestion [and the] local interest in deciding local controversies." *Mays*, 2018 WL 1400468, at *5.  "To measure congestion, courts compare the two fora's median time from filing to disposition or trial." *Id.* at 6 (citing *Ctr. For Food Safety v. Vilsack,* No. C 11-00831 JSW, 2011 WL 996343, at *8 (N.D. Cal. Mar. 17, 2011) (internal citation and quotations omitted)).  According to statistics provided on the United States Courts website, the total number of cases before the Northern District of California as of December 2018 was 5,187, with a 7.6-month average time to disposition, as opposed to a caseload of 3,474 and a 7-month average time to disposition in the Northern District of Texas.[26]  The relatively heavier caseload in the Northern District of California weighs in favor of transfer to the Northern District of Texas.  *See, e.g.*, *Duffy*, 2017 WL 1739109 (holding greater docket congestion in the Northern District of California weighed in favor of transfer to less-congested district).

        (c)      The Northern District of Texas Has a Local Interest in the Adjudication of This Case

In evaluating local interests, courts generally look to whether the acts or injury giving rise to the claim occurred in the district, *i.e.*, where the "crux" of the case lies. *Burgess*, 2017 WL 467845, at *12 ("Unless there is a particular local interest, the district where the 'crux' of the case lies is the preferred district.") (internal citations omitted); *Jarvis v. Marietta Corp.*, No. C 98-4951 MJJ, 1999 WL 638231, at *7 (N.D. Cal. Aug. 12, 1999) (finding that the proposed venue "clearly has an interest in its corporations and the activities they undertake" where "the actions which

---

[26] *See Median Time From Filing to Disposition of Civil Cases, by Action Taken, Statistical Tables for the Federal Judiciary*, UNITED STATES COURTS, *available at* https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2019/03/31 (March 31, 2019)

substantiate the claim occurred predominantly in [the proposed venue]" and also involved a corporation from the proposed venue); *Machado v. CVS Pharmacy, Inc.*, 13-CV-04501-JCS, 2014 WL 631038, at *5 (N.D. Cal. Feb. 18, 2014) (the proposed venue had a greater local interest where most of the alleged conduct occurred in that district and "the outcome of th[e] case may have implications for employers and employees in [that district]"); *see also Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.,* 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (internal quotations and citations omitted) ("This factor generally favors the venue where the acts giving rise to the lawsuit occurred.").  As explained above, the "crux" of the case here lies in the Northern District of Texas where the Avanci platform is located, and therefore this factor weighs in favor of transfer. *Burgess*, 2017 WL 467845, at *12.

Finally, transfer relieves the citizenry in the Northern District of California of jury duty associated with a case that is entirely unrelated to this District given the location of the alleged conduct, parties, witnesses, and evidence in this matter.  *See Mays*, 2018 WL 1400468, at *5 (considering the public interest factor of "burdening citizens in an unrelated forum with jury duty").

## V.   CONCLUSION

For all the foregoing reasons, the Court should grant Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), and transfer this action to the Northern District of Texas.

Dated:  July 31, 2019

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler (*pro hac vice*)
jkessler@winston.com
Aldo A. Badini (SBN 257086)
abadini@winston.com
Susannah P. Torpey (*pro hac vice*)
storpey@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

Ian L. Papendick (SBN 275648)
ipapendick@winston.com
Jeanifer E. Parsigian (SBN 289001)
jparsigian@winston.com

WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Counsel for Defendant Avanci, LLC*


<u>*/s/ James G. Kress*</u>
James G. Kress (*pro hac vice*)
james.kress@bakerbotts.com
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202)-639-7700
Facsimile: (202)-639-7890

Peter K. Huston (SBN 150058)
peter.huston@bakerbotts.com
Tina V. Ngo (SBN 324102)
tina.ngo@bakerbotts.com
Telephone: (415)-291-6200
Facsimile: (415)-291-6300
BAKER BOTTS L.L.P.
101 California Street
Suite 3600
San Francisco, CA 94111

*Counsel for Defendant Conversant*
*Wireless Licensing SARL*


<u>*/s/ Mark A. McCarty*</u>
Mark A. McCarty (*pro hac vice*)
mark.mccarty@alston.com
Matthew D. Richardson (*pro hac vice*)
matt.richardson@alston.com
John D. Haynes (*pro hac vice*)
john.haynes@alston.com
Andrew Tuck (*pro hac vice*)
andy.tuck@alston.com
Cassandra Kerkhoff Johnson (SBN 300064)
cassie.johnson@alston.com
ALSTON & BIRD LLP
1201 W. Peachtree St.
Atlanta, GA 30309

Telephone: (404)-881-7000
Facsimile: (404)-881-7777

Ryan W. Koppelman (SBN 290704)
ryan.koppelman@alston.com
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone: (650)-838-2000
Facsimile: (650)-838-2001

Teresa T. Bonder (SBN 321558)
ALSTON & BIRD LLP
560 Mission Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Facsimile: (415) 243-1001
teresa.bonder@alston.com

*Counsel for Defendant Nokia Corporation, Nokia of America Corporation, Nokia Solutions and Networks US LLC, Nokia Solutions and Networks OY, and Nokia Technologies OY*