**[Counsel for filing parties listed on signature pages]**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL AUTOMOTIVE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AVANCI, LLC, et al., <br><br> Defendants. | Case No. 5:19-cv-02520-LHK <br><br> **JOINT CASE MANAGEMENT CONFERENCE REPORT PURSUANT TO FED. R. CIV. P. 26(f) AND CIVIL L.R. 16-9** <br><br> Hearing Date:  August 21, 2019 <br> Time:  2:00 p.m. <br> Place:  Courtroom 8 <br> Judge:  Hon. Lucy H. Koh |

In accordance with FED. R. CIV. P. 26(f), Civil L.R. 16-9 and the Standing Order for all Judges of the Northern District of California on the Contents of Joint Case Management Statements, plaintiff Continental Automotive Systems, Inc. ("Continental") and defendants Avanci, LLC, Avanci Platform International Limited (together, "Avanci Defendants"), Nokia Corporation, Nokia of America Corporation, Nokia Solutions and Networks US LLC, Nokia Solutions and Networks OY, Nokia Technologies OY (together, "Nokia"), Conversant Wireless Licensing SARL ("Conversant"), Optis UP Holdings, LLC, Optis Cellular Technology, LLC, and Optis Wireless Technology, LLC (together, the "Optis Entities") (collectively, "Defendants," and together with Continental, the "Parties"), by and through their respective counsel, have met and conferred and hereby submit the following Joint Case Management Statement (the "Joint Statement").

## 1.    JURISDICTION AND SERVICE

### a.    Plaintiff's Statement

Continental brings this action to remedy Defendants' failure and refusal to comply with their respective FRAND licensing obligations and to enforce such obligations, pursuant to, *inter alia*, Sections 1 and 2 of the Sherman Act and Section 16 of the Clayton Act, 15 U.S.C. §§ 1, 2, 26, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the California Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq. *See* Dkt. 97 at ¶¶ 57, 198-204 (First Amended Complaint). The Court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331 and 1337. *Id*. To the extent any of Continental's claims are deemed to arise under state law, the Court has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1367, because such claims arise from the same factual nucleus as Continental's federal law claims.[1] *Id*. at ¶ 58.

This Court has personal jurisdiction over each defendant based on their national contacts with the United States as a whole pursuant to 15 U.S.C. § 22, as well as

---

[1] Defendants' statement regarding jurisdiction and service is unnecessarily argumentative. Continental will address any arguments made by the Defendants in opposition to their forthcoming joint motion to dismiss.

1  Defendants' relevant contacts with the Northern District of California.  *Id*. at ¶ 59.  Upon

2  information and belief, each Defendant has conducted and continues to conduct business in

3  this judicial district, and/or has engaged in continuous and systematic activities in this

4  judicial district, including licensing activities, demands, and negotiations in California – at

5  least through their agent Avanci.  *Id*.

6  Venue is proper in the Northern District of California pursuant to 28 U.S.C.

7  §1391(b) and (c), and/or 15 U.S.C. § 22.  *Id*. at ¶ 60.

8  On May 13, 2019, Continental served Defendants Avanci, LLC; Nokia Solutions

9  and Networks US LLC; Nokia of America Corporation; Optis Cellular Technology, LLC;

10  Optis UP Holdings; and Optis Wireless Technology, LLC.  Service was waived by Avanci

11  Platform International Limited (returned June 3, 2019), and by Conversant Wireless

12  Licensing SARL (June 5, 2019).  Dkts. 25-26.  Sharp was served on July 26, 2019.  Dkt.

13  120.

14  **b.    Defendants' Statement**

15  The Court lacks subject matter jurisdiction over this action under Article III of the

16  Constitution because Continental has not alleged that it has suffered or will suffer an

17  imminent and non-hypothetical injury-in-fact caused by Defendants' alleged conduct.  The

18  Complaint fails to allege that Defendants are seeking any royalties (much less "elevated"

19  royalties) from Continental.  FAC ¶¶ 8, 154.  Instead, Continental complains that

20  Defendants are seeking such royalties from non-party automobile manufacturers (OEMs),

21  which are customers of Continental, which hypothetically might assert a claim for

22  indemnification against Continental.  *Id.* ¶¶ 11, 157.  However, Continental does not allege

23  that a single one of its customers has ever invoked an indemnity agreement to seek to

24  recover any such "elevated" royalties allegedly charged by Defendants.  Indeed,

25  Continental does not even identify a single one of its customers that has, in fact, paid any

26  allegedly excessive royalties to Defendants—Continental merely speculates that it might

27  be injured in the future "***should Defendants succeed*** in procuring a non-FRAND license

28  from those OEM customers."  FAC ¶ 157 (emphasis added).  This hypothetical and

1  speculative injury caused by Continental's customers' potential demands for indemnity—

2  not Defendants' conduct—is insufficient to plead Article III standing.  "[L]ack of Article

3  III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of

4  Civil Procedure 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

5       The Court lacks personal jurisdiction over defendant Avanci Platform International

6  Limited because it lacks sufficient minimum contacts with the United States for purposes

7  of 15 U.S.C. § 22.  The Court lacks personal jurisdiction over Nokia Corporation because

8  no allegations in the Complaint relate to Nokia Corporation, except that it is a parent

9  corporation.  *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1234 (N.D. Cal.

10  2004) (finding that a parent company cannot be held liable "either directly or indirectly

11  liable for the acts of its subsidiary.").

12       If the Court dismisses Continental's Sherman Act claims, the Clayton Act's

13  provision allowing for personal jurisdiction based on national contacts will not be

14  applicable, and the Court will lack personal jurisdiction over Nokia of America

15  Corporation, Nokia Solutions and Networks US LLC, Nokia Solutions and Networks Oy,

16  Nokia Technologies Oy, Conversant SARL and Avanci LLC because there are no

17  minimum contacts with California.

18       As discussed in the next section, Continental lacks personal jurisdiction over the

19  Optis Entities as to the non-Sherman act claims.  Moreover, venue is not proper under 15

20  U.S.C. § 22 as to all claims, the sole venue statute plead by Continental as to the Optis

21  Entities.

22  **2.**     **FACTS**

23       **a.**     **Plaintiff's Statement**

24       Continental, a leading provider of cutting-edge automotive components, filed this

25  lawsuit on May 10, 2019, as a result of Defendants' concerted refusal to license their

26  alleged standard essential patents ("SEPs") relevant to the 2G, 3G, and 4G cellular

27  standards to Continental and its suppliers on fair, reasonable, and non-discriminatory

28  ("FRAND") terms and conditions.  Continental is a willing licensee, and seeks to pay a

FRAND royalty rate for a license to the SEPs owned, controlled, and/or licensed by Defendants.[2]

The principal factual issues in dispute, in Continental's estimation, are, *inter alia*:

- The FRAND terms and conditions for a global license to all of the 2G, 3G and 4G SEPs owned, controlled, and/or licensed by Defendants, including the appropriate royalty base for determining such a FRAND rate;

- Whether Defendants have offered Continental a license to the 2G, 3G, and 4G SEPs at issue on FRAND terms and conditions as their FRAND licensing obligations would require them to do, or have refused to do so;

- Which, if any, of the SEPs at issue are, in fact, essential to the standards-at-issue;

- Defendants' respective proportional share of the SEPs that are, in fact, essential to the standards-at-issue;

- Defendants' history of licensing the SEPs at issue, including vis-à-vis suppliers of components and/or in the automotive industry;

- The history of Defendants' FRAND commitments vis-à-vis various standard setting organizations ("SSOs"), and whether Defendants have breached those commitments;

- Whether certain Defendants falsely represented to the SSOs that set the standards-at-issue (whether through misrepresentations or material omissions) that they would license their alleged SEPs on FRAND terms, and if so, whether such misrepresentations or omissions were intentional;

- Whether the relevant SSOs relied on certain Defendants' false FRAND promises when they adopted those Defendants' purported SEPs into the relevant

---

[2] Once again, Defendants' statement is unnecessarily argumentative, and Continental disputes many of the allegations therein. This submission is not the appropriate vehicle for arguing the entire case. Such allegations will be addressed as necessary during the course of this litigation.

standards, thus foregoing the process by which such SSOs were required to consider other alternatives to those technologies, or to abandon any portion of the standards for which no technology was available on FRAND terms and conditions.

- The formation and operations of Avanci, including how and why it was created, its objectives, and its strategies, particularly relative to licensing in the automotive industry;

- Whether Defendants have entered into an unlawful contract, combination or conspiracy among themselves that includes anti-competitive agreements or mutual understandings, as set forth in Continental's First Amended Complaint;

- Whether Defendants have unlawfully acquired and/or maintained monopoly power in the relevant markets alleged in the First Amended Complaint, and/or have unlawfully conspired to maintain and/or extend their monopoly power so acquired in such markets, as alleged in Continental's First Amended Complaint;

- Whether the anticompetitive conduct, as alleged in the First Amended Complaint, has harmed, and continues to harm, competition in the markets alleged in the First Amended Complaint;

- Whether there is any procompetitive justification for Defendants' exclusionary and anti-competitive conduct alleged in the First Amended Complaint, and if so, whether such a justification is outweighed by the anticompetitive effects of Defendants' breach of their FRAND licensing obligations as set forth in the First Amended Complaint; and

- Whether Continental has suffered irreparable injury due to Defendants' refusal to offer it a license to their respective SEPs on FRAND terms and conditions, and by their resulting breach of their contractual commitments with SSOs that have set the standards-at-issue.

b.     **Defendants' Statement**

Defendants Nokia, Conversant, the Optis Entities, and Sharp (the "Patent Owner Defendants") own patents essential to the 2G, 3G, and 4G wireless communication standards. *See* FAC ¶¶ 86-97. The Avanci Defendants have a non-exclusive and limited right to grant a single joint license—the Avanci platform license—to all of the SEPs held by the Patent Owner Defendants and many other patent owners for particular products on specific terms and conditions. *See* FAC ¶ 4. The Patent Owner Defendants and other patent owners retain the right to license their patents separately to Avanci platform licensees or anyone else. FAC ¶ 129.

The Avanci platform was created in response to product developers' need for an open and efficient way to access the licenses needed for the latest wireless technology. Prior to the creation of the Avanci platform, it was difficult for product developers to know what technology rights they might need, and how to get them, from the many different owners of SEPs. An Avanci platform license covers the entire SEP portfolio of the patent owners who participate in the platform, plus the SEPs of new patent owners who subsequently choose to participate. It is also a non-exclusive license, meaning that interested companies can negotiate independently with the patent-owner participants in the Avanci platform to obtain a license individually, without being required to pay for those rights twice, should they also take an Avanci platform license.

The following specific facts, which are particularly relevant to Continental's claims, are either expressly alleged in the Complaint, set forth in documents incorporated by reference in the Complaint, or are reasonably inferred from the Complaint's allegations:

- No Defendant has ever demanded that Continental enter into a license agreement.
- No Defendant has ever threatened Continental with a patent infringement lawsuit.
- None of Continental's OEM customers have entered into a license agreement with Avanci.
- None of Continental's OEM customers have demanded or threatened to demand indemnification from Continental of the cost of royalties paid pursuant to any license agreement with Avanci.

- Continental voluntarily entered into indemnification agreements with its OEM customers as part of the bidding process for the business of those OEM customers.
- Defendants expressly agreed, in the Master License Management Agreement among the Defendants, that patent owners in the Avanci platform have the absolute right to independently enter into individual licensing agreements for their SEPs directly with any interested parties, and there is no other agreement among the Defendants to the contrary.
- The Master License Management Agreement among Defendants expressly prohibits patent owner participants in the Avanci platform from collecting double royalties, should they license both through the Avanci platform and independently through individual licensing negotiations.
- Defendant Conversant offered an individual license of its SEPs to Continental, which Continental refused.
- Defendant Nokia offered an individual license of its SEPs to Continental Automotive GmbH, which Continental Automotive GmbH refused.
- Defendants the Optis Entities never refused to license Continental and previously Continental concluded that it did not need a license from the Optis Entities as explained further below.
- Avanci, LLC, engaged in licensing negotiations with Continental, and offered to obtain authorization from the patent owner members of the Avanci platform to provide a license to Continental.
- The Avanci Defendants do not own any SEPs and do not participate in any SSOs.

However, in the event that Continental is able to plead claims that meet the requirements of Rule 8 and Rule 12(b)(6), Defendants anticipate that Continental may dispute some of the foregoing factual issues.

**Optis Entities:**  The Optis Entities have never refused to license Plaintiff.   The Optis Entities have at all times been willing to and remain willing to grant a license to its

1   SEPs relating to telecommunications on fair, reasonable and non-discriminatory terms.

2   The Plaintiff has never had a negotiation with the Optis Entities before filing this lawsuit.

3       The Plaintiff's affiliate Continental AG and the Optis Entities had communications

4   two years ago.  Based on the information Continental provided, both parties agreed that

5   there was nothing to negotiate because Continental stated that it was using CDMA2000,

6   which is not part of the Optis Entities' mapped holdings.  *Id.*, ¶¶ 5-7.  In other words, the

7   Optis Entities have never had and still do not have a licensing program in the CDMA2000

8   space.

9       In specific, when Continental AG contacted PanOptis in August 2017, it was only

10  seeking a license for its CDMA2000 products.  *See* Dkt 102-6 at 5-8; Ex. A to Warren Decl.

11  [8/17/2017 Continental letter to PO]; Dkt. 102-6 at 2, Warren Decl., ¶ 5.  In response, the

12  Optis Entities responded that because its portfolio focused on LTE and WCDMA and it had

13  not evaluated its portfolio for CDMA2000, it was "currently not licensing for the

14  CDMA2000 standard."  Dkt. 102-6 at 9-10, Ex. B to Warren Decl. [8/21/2017 Email to

15  Continental]; Dkt. 102-6 at 2, Warren Decl., ¶ 5.  Continental accepted that explanation and

16  did not respond.  Dkt. 102-6 at 2, Warren Decl., ¶ 5.

17      In June 2018 an affiliate of Continental, Zonar, inquired about licensing via its

18  attorney at Seattle-based SeedIP.  Dkt. 102-6 at 12-15, Ex. C to Warren Declaration

19  [6/1/2018 SeedIP Email to PO]; Warren Decl., ¶ 6.  The letter did not mention the

20  relationship between Zonar and Continental AG.  *Id.*  SeedIP acknowledged receipt of

21  correspondence from PanOptis, stated "[w]e are having discussions inside our firm" and

22  then went silent.  Dkt. 102-6 at 17, Ex. D to Warren Declaration [6/4/2018 Email to SeedIP];

23  Warren Decl., ¶ 6.

24      In late October 2018, an attorney for what the Optis Entities believed was Continental

25  AG wrote the Optis Entities again.  That letter acknowledged receipt of PanOptis' August

26  2017 response to its earlier inquiry, and did not mention any additional products beyond the

27  CDMA2000 products that were mentioned in August 2017.  Dkt. 102-6 at 20-22, Ex. E to

28  Warren Declaration [10/25/2018 Continental Letter]; Warren Decl., ¶ 7.  There was no

1    subsequent communication until the filing of this lawsuit.

2         The Optis Entities have never filed any patent lawsuit or threatened to file a patent

3    lawsuit against Continental, its affiliates or its known customers.  *Id.*, ¶ 4.  Before this

4    litigation began, the Optis Entities had ceased communication with all automobile

5    manufacturers, including those that Continental claims as customers.  *Id.*, ¶ 8.

6         The Optis Entities have no facilities in California, no employees in California, no

7    operations in California, and receive no ongoing payments from any California companies.

8    *See* Dkt 102-6, ¶¶ 9-16.  The Optis Entities have also not had any communications with

9    Plaintiff or its affiliates that were directed to the Northern District of California.  *Id.*, ¶¶ 17-

10   18.  As a result, there is no personal jurisdiction in this District over the Optis Entities as to

11   the non-Sherman Act claims.  In addition, venue is improper as to the Sherman Act claims.

12   According to Plaintiffs, "venue is proper over Optis Wireless, Optis Cellular, and Optis UP

13   in this judicial district at least pursuant to 15 U.S.C. § 22, as Optis Wireless, Optis

14   Cellular, and Optis UP all transact business within this judicial district."  FAC ¶ 66.

15   "Though personal jurisdiction is appropriate everywhere under [15 U.S.C. § 22], venue is

16   proper only in the district(s) the corporation inhabits, is found, or transacts business."  *KM*

17   *Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 725 (7th Cir. 2013).  Continental

18   does not plead facts that satisfy this standard.

19   **3.     LEGAL ISSUES**

20        **a.      Plaintiff's Statement**

21        Continental seeks a declaration of its rights and of Defendants' breaches of contract

22   and other violations of law, as well as the determination and imposition of the FRAND

23   terms and conditions for a license to the SEPs owned or controlled by Defendants.

24        As such, this action presents the following legal issues for the Court's

25   determination, *inter alia*:

26        •   The rates and/or terms that must be included in any offer to license SEPs on

27             FRAND terms and conditions, per the IPR policies of the SSOs that set the

28             standards-at-issue and the governing law;

- Whether Defendants are required, per the IPR policies of the SSOs that set the standards-at-issue and the governing law, to offer direct licenses on FRAND terms and conditions to any willing licensees, including to any supplier of telecommunications equipment at any tier within the automotive supply chain;

- The applicable law that governs the determination of any such FRAND terms and conditions, and related obligations;

- The determination of the appropriate royalty base for the license sought by Continental, including application of federal apportionment law to the determination of the royalty base (*i.e.*, the smallest salable patent practicing unit rule);

- The legal standard applicable to Continental's breach of contract and promissory estoppel claims, *see* Dkt. 97 at ¶¶ 151-66;

- The legal standard applicable to Continental's claims that Defendants' conduct has been in violation of Sections 1 and 2 of the Sherman Act, *see* Dkt. 97 at ¶¶ 170-97;

- The legal standard applicable to Continental's claim that Defendants' conduct constituted unfair competition in violation of CAL. BUS. & PROF. CODE § 17200 et seq., *see* Dkt. 97 at ¶¶ 198-204; and

- Whether Continental is entitled, as a matter of applicable law, to the various forms of relief requested in its "Prayer for Relief," *see* Dkt. 97 at pgs. 61-62.

**b.    Defendants' Statement**

Defendants state that the following legal issues, among others, are presented by this action:

- Whether the alleged hypothetical harm that Continental claims it is at risk of suffering, as a result of indemnification obligations that it freely made to non-parties to this litigation that have not yet entered license agreements for Defendants' SEPs, is sufficient for Article III standing for the injunctive and

declaratory relief that Continental seeks.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

- Whether Continental has Article III standing to obtain injunctive and declaratory relief on behalf of its customers, which are not parties to this litigation.  *See Pony v. Cty. of Los Angeles*, 433 F.3d 1138, 1148 (9th Cir. 2006) ("Generally, a plaintiff may only bring a claim on his own behalf, and may not raise claims based on the rights of another party.")

- Whether this action should be transferred to the Northern District of Texas under 28 U.S.C. § 1404, because the Northern District of California lacks any material connections to the conduct alleged in the Compliant or the parties.

- Whether the Court has personal jurisdiction over certain defendants, and in particular over the foreign defendants that do not conduct business in the United States or have any presence in the United States that relates to the specific conduct alleged in the Complaint.

- Whether Continental has sustained an antitrust injury proximately caused by Defendants' actions, as required by Section 4 of the Clayton Act, 15 U.S.C. § 15(a), arising from the indemnification agreements that Continental alleges that it entered into with its non-party customers as part of the competitive bidding process for those customers' business.

- Whether Defendants' licensing agreements and licensing conduct could give rise to liability under Section 1 and Section 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 17200 of the California Business and Professions Code, where Continental alleges the agreement among the Defendants provides that the patent owner defendants retain the right to independently enter into individual licensing agreements for their SEPs directly with any interested parties, and at least one patent owner offered such a license to Continental.

- Whether Continental can state a claim for, and prove, a relevant market and market power under Section 2 of the Sherman Act.

- Whether Defendants may be liable for breach of contract or promissory estoppel based on commitments that some, but not all, of the defendants may have made to SSOs, and what substantive law may apply such claims, where the conduct alleged may have occurred outside the United States.
- Whether the Court has the authority to grant the relief that Continental seeks.
- Whether all necessary parties have been joined to grant the relief that Continental seeks.

## 4.    MOTIONS

### a.    Pending Motions

As of the date of this Joint Statement, there are two pending motions before the Court:

- Continental's Motion for Anti-Suit Injunction.  On June 12, 2019, Continental filed its Motion for Anti-Suit Injunction.  Dkt 32.  On July 24, 2019, Defendants Nokia, Avanci, Conversant and the Optis Entities filed a consolidated Opposition to Continental's Motion, and Continental filed its Reply on August 9, 2019.  *See* Dkts. 102, 128.  This motion is pending before the Court.
- Certain Defendants' Motion to Transfer.  On July 31, 2019, Defendants Nokia, Avanci and Conversant filed their Motion to Transfer Venue to the Northern District of Texas.  Dkt. 110. The Motion to Transfer is pending before the Court, with Continental's opposition due on August 28, 2019, and Defendants' reply due on September 13, 2019.[3]  *See* Dkt. 125.

### b.    Anticipated Motions

---

[3] The Optis Entities submit the following additional comment: "The Optis Entities believe that they should properly be dismissed from this case.  To the extent the Court determines to transfer the case while the Optis Entities are still part of the case, the Optis Entities agree to the requested transfer to the jurisdictions identified in the motion because of the unique aspects of this case.  The Optis Entities agree that there is no discernable connection between the N.D. Cal. and the facts alleged in the complaint."

1    Defendants intend to file a consolidated motion to dismiss the Complaint in its

2  entirety, and the Court has ordered the parties to file a stipulation setting forth a proposed

3  briefing schedule by August 21, 2019.  Defendants also intend to file a motion to stay

4  discovery, which Continental has indicated it will oppose.

5  **5.      AMENDMENT OF PLEADINGS**

6    Under FED. R. CIV. P. 15(a)(1)(B), Continental may further amend its First

7  Amended Complaint as of course within twenty-one (21) days after Defendants' filing of

8  their consolidated motion to dismiss.  As part of the parties' meet and confer, Continental

9  asked Defendants if they intend to pursue any counter-claims in this action, should their

10  anticipated motion to dismiss be denied in whole or in part.  Defendants indicated to

11  Continental that they have not made any decisions in that respect.

12    Continental believes the case management process – and specifically the setting of a

13  schedule – would be aided by further indication from Defendants of their anticipated

14  intentions with respect to possible counter-claims.

15    Defendants believe that there are no case management benefits to be gained from

16  departing from the regular procedures under the Federal Rules, under which Defendants

17  will assert any counterclaims as part of their answers, in the event that the Court

18  determines that the Complaint meets the pleading requirements of Rule 8 and Rule 12.

19  **6.      EVIDENCE PRESERVATION**

20    The Parties have reviewed the Guidelines Relating to the Discovery of

21  Electronically Stored Information (the "ESI Guidelines"), and hereby each confirm that

22  they have designated an attorney member of their respective legal teams (the "ESI

23  Designees"), to meet and confer regarding reasonable and proportionate steps to be taken

24  to preserve evidence relevant to the issues reasonably evident in this action, as outlined by

25  the Guidelines for the Discovery of Electronically Stored Information.

26  **7.      DISCLOSURES**

27    The Parties have agreed to serve the information required by FED. R. CIV. P.

28

1   26(a)(1) by September 25, 2019.

2   **8.      DISCOVERY**

3         **a.      Discovery Propounded to Date**

4         On August 2, 2019, Continental served initial sets of requests for production under

5   FED. R. CIV. PRO. 34 on Avanci, Nokia, the Optis Entities and Conversant.  No other

6   discovery requests have been propounded as of the date of this Joint Statement.

7         **b.      Scope of Anticipated Discovery.**

8               i.      Plaintiff's Discovery

9         Continental will seek documentary and testimonial discovery from Defendants and

10  certain third parties regarding, among other things:  (1) the structure of Defendants'

11  respective patent licensing organizations and identities of individuals within those

12  organizations; (2) the practices and procedures utilized by Defendants and other Avanci

13  members in their patent licensing activities; (3) the strategies of Defendants and other

14  Avanci members related to licensing out their SEPs, including with respect to doing so in

15  the automotive industry; (4) Defendants' analyses of the essentiality of their respective

16  patents, and communications with SSOs that set the standards-at-issue related to

17  contribution of technologies to those standards; (5) any licenses to Defendants' SEPs, and

18  documents and communications related to the negotiation of such licenses with potential

19  licensees in the automotive industry; (6) Defendants' commitments to license their

20  respective SEPs on FRAND terms, and Defendants' analyses and/or interpretations of the

21  nature and requirements of those commitments; (7) Defendants' formulation and/or

22  calculation of royalty rates for their SEPs; (8) Defendants' proportional share of all patents

23  essential to the standards-at-issue; (9) any communications among Defendants and

24  governmental entities that regulate anti-competitive conduct or compliance with the

25  FRAND obligation; (10) the appropriate aggregate royalty appropriate for a license to all

26  SEPs relating to the standards-at-issue, respectively; (11) Defendants' revenues, profits

27  and losses related to their licensing of SEPs; (12) the creation of Avanci, as well as the

28  nature and scope of their membership in Avanci; (13) the management and SEP licensing

1   activities of Avanci; (14) coordination among the Defendants and other Avanci members

2   with respect to their various SEP licensing and litigation activities, including with respect

3   to Continental and its customers in the automotive industry; and (15) allocation and

4   distribution of revenue generated by Avanci's SEP licensing activities.

5         Defendants have indicated they will be filing a motion to stay discovery pending a

6   ruling on the motion to transfer venue and anticipated consolidated motion to dismiss.

7   Continental will oppose the motion to stay, and such a stay is inappropriate here.  *See, e.g.,*

8   Plaintiff's opposition to motion to continue the case management conference, Dkt. 118 at

9   5-6 (discussing why a stay of discovery is inappropriate under controlling case law).

10               ii.     Defendants' Position

11        Defendants intend to file a motion to stay discovery until the pending motion to

12  transfer to the Northern District of Texas, and Defendants' consolidated motion to

13  dismiss, have been resolved.  Good cause exists to stay discovery at least until the motion

14  to transfer is resolved, because if the Court transfers this action, it would preserve the

15  resources of this Court to have any discovery disputes briefed and resolved in the

16  transferee district.  Continental would suffer no prejudice from such a short stay because

17  it has not alleged that it has suffered any harm from Defendants' alleged conduct.

18        Good cause also exists to stay discovery pending resolution of Defendants' motion

19  to dismiss for a similar reason—so that the Court can first determine whether Continental

20  has Article III standing to pursue its claims for prospective relief based on its hypothetical

21  theory of injury, arising not from Defendants' conduct, but from the decision of non-party

22  customers of Continental potentially to seek indemnification in the future for the royalties

23  they may one day pay should they decide to license Defendants' SEPs.  If the Court lacks

24  subject matter jurisdiction due to Continental's failure to allege Article III standing, then

25  there is no basis for Continental to obtain discovery from Defendants.

26        Moreover, as the Supreme Court cautioned in *Twombly*: "[I]t is only by taking care

27  to require allegations that reach the level suggesting [an antitrust violation] that we can

28  hope to avoid the potentially enormous expense of discovery in cases with no

'"reasonably founded hope that the [discovery] process will reveal relevant evidence"' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (third alteration in original) (citation omitted). That admonition applies here. Defendants should not be forced to expend the resources that would be required to engage in the highly-burdensome discovery process for antitrust claims when there is a substantial likelihood that each of Continental's claims will fail as a matter of law.

Defendants will brief these issues fully in their motion to stay discovery.

### c.     Protective Order.

The Parties agree that a protective order is necessary to safeguard confidential and competitively-sensitive information of all Parties, and of non-parties from whom discovery is likely to be sought.  Counsel for Continental circulated a proposed protective order to counsel to Defendants on July 31, 2019.  Continental requests that the Court set a deadline of August 28, 2019 for the parties to submit the proposed protective order to the Court so that discovery is not delayed by Defendants unnecessarily delaying the entry of the protective order.

Defendants' are reviewing Continental's proposal, and propose that the parties submit the proposed protective order to the Court when the parties have reached agreement on the appropriate terms.

### d.     Proposed Limitations or Modifications to the Discovery Rules.

#### i.     Plaintiff's Proposal Regarding Modifications to Limits on Discovery

Continental proposes the following modifications and limitations regarding discovery:

<u>Depositions</u>.  Plaintiff believes that relief from the limitation on the number of depositions set forth in FED. R. CIV. P. 30(a)(2) is necessary and appropriate given the many complex issues in the case, as well as the fact there is only one plaintiff, but five defendant groups.  In place of the default limitations on depositions outlined in FED. R. CIV. P. 30(a)(2), Plaintiff proposes that:

- *Continental*: (1) may take up to one-hundred and forty (140) total hours of non-expert depositions (including depositions taken pursuant to FED. R. CIV. P. 30(b)(6) of witnesses affiliated with the respective Defendants; and (2) may take up to sixty (60) total hours of non-expert depositions of non-party witnesses.

- *Defendants:* (1) may collectively take up to fifty (50) total hours of non-expert depositions (including depositions taken pursuant to FED. R. CIV. P. 30(b)(6)) of witnesses affiliated with Continental; and (2) may collectively take up to sixty (60) total hours of non-expert depositions of non-party witnesses.

As set forth above, Continental proposes that both sides have the same amount of time to examine third parties, but that Continental have more time for party depositions. The reason for this approach is that Continental needs to have sufficient time to examine both individual and 30(b)(6) witnesses from five different defendant groups, whereas there is only one plaintiff, and thus Defendants have much less need (and justification) for an expansion in the number of hours needed to conduct party depositions.  Defendants proposal is unreasonable because it would subject Plaintiff to 135 hours of depositions (i.e., 60 hours, plus 15 x 5 hours), while Plaintiff would only be able to take 140 hours of depositions for all five defendant groups.  Moreover, subjecting a single party to 135 hours of deposition time (over 19 days) will likely prove abusive, as there are only so many witnesses and so many topic areas to cover.  Under Continental's more reasonable proposal, its own witnesses will still very likely have to sit for far more deposition time than the witnesses from any one defendant group.

Plaintiff further proposes that all depositions in this matter shall be limited to 1 day of seven (7) hours, as outlined in FED. R. CIV. P. 30(d)(1), with the exception of depositions taken pursuant to FED. R. CIV. P. 30(b)(6), which shall not be so limited in duration.  A witness may be deposed both in his or her individual capacity under FED. R. CIV. P. 30(b)(1), and also as a corporate designee under FED. R. CIV. P. 30(b)(6).  Designation of a witness as a corporate designee under FED. R. CIV. P. 30(b)(6), and

1    deposition of that witness thereunder, shall not limit the duration of time that witness may

2    be deposed in his or her individual capacity under FED. R. CIV. P. 30(b)(1).  Defendants

3    have not responded to this aspect of Continental's proposal.

4        <u>Interrogatories.</u>  Continental proposes that it may propound up to a total of forty

5    (40) interrogatories on each respective defendant group, and Defendants may collectively

6    propound twenty-five (25) joint interrogatories on Continental, as well as ten (10) separate

7    interrogatories per respective defendant group on Continental.  Continental's proposal is

8    reasonable because Continental needs to be able to ask the same interrogatories to each

9    defendant group (in order to get their position on common issues) while also pursuing

10   certain individual issues vis-à-vis each defendant group.  In contrast, Defendants should be

11   expected (and required) to address any common issues vis-à-vis Continental in one set of

12   interrogatories, while otherwise having additional interrogatories they can use for

13   individual issues specific to that defendant group.  Under Continental's reasonable

14   proposal, Continental will be required to answer up to 75 separate interrogatories (based on

15   the current inclusion of five defendant groups), whereas each defendant group must only

16   answer up to 40 separate interrogatories, making the individual burden far greater for

17   Continental than any individual defendant group.  Defendants have proposed that the limits

18   set forth for interrogatories under FRCP 33 should apply (*i.e.*, 25 interrogatories), but this

19   is unreasonable for two reasons.  First, it would only allow Plaintiff to serve 25

20   interrogatories per defendant group, which is not sufficient for a case of this size and

21   complexity (especially without even knowing whether Defendants will eventually assert

22   counterclaims).  Second, it would allow the defendants to coordinate and serve a combined

23   125 interrogatories on Continental, which is wholly disproportionate and unduly

24   burdensome in relation to the number of interrogatories each defendant group would be

25   required to answer.

26       Plaintiff further proposes that the limitations on discovery may be modified upon

27   agreement of the Parties, or upon order of the Court upon a showing of good cause for

28   such modification.

1    Authenticity Presumptions.  Continental proposes that documents produced by non-

2    parties under FED. R. CIV. P. 45 subpoenas that are from non-parties' files shall be

3    presumed to be authentic within the meaning of FED. R. EVID. 901.  If a party to this action

4    serves a specific good-faith written objection to the authenticity of a document produced

5    from a non-party's files, the presumption of authenticity will no longer apply to that

6    document.  Any objection to a document's authenticity must be provided with (or prior to)

7    the exchange of objections to trial exhibits.  The Parties will promptly meet and confer to

8    attempt to resolve any objection.  The Court will resolve any objections that are not

9    resolved through this means through the discovery process provided by the Court.

10   Defendants have not taken a position on this aspect of Continental's proposal.

11   Expert Discovery.  Continental proposes that expert disclosures, including each

12   side's expert reports, shall comply with the requirements of FED. R. OF CIV. P. 26(a)(2),

13   and further that expert reports should be served in three phases in this matter.  First, each

14   party shall serve opening reports from all experts the party may use at trial, to the extent

15   the sponsoring party has the burden of proof on the issue in question or intends to present

16   the opinions or analyses in question at trial (even if the party believes it does not have the

17   burden of proof on the issue in question).  Second, each party shall then serve any rebuttal

18   expert reports, *i.e.*, reports intended solely to contradict or rebut evidence on the same

19   subject matter addressed in the opening reports.  Third, as necessary to protect against

20   unfair surprise, each party may then serve expert reports only to the extent needed to rebut

21   any new, affirmative opinions offered for the first time in the rebuttal expert reports.  The

22   timing for the service of such reports is presented in Exhibit A.

23   In response, Defendants argue that the "normal" practice is for the plaintiff to first

24   make its disclosures, followed by the defendant, followed by plaintiff's rebuttal.  In

25   Continental's experience, there is no "normal" approach with respect to expert disclosures.

26   Sometimes the schedule is delineated by reference to who has the burden of proof,

27   sometimes it is delineated by reference to plaintiff and defendant, and sometimes it is

28   delineated solely by reference to "opening" and "rebuttal," without any reference to party

status or who holds the burden of proof.  Continental's proposed approach is based on several considerations.  First, structuring the schedule by reference to party status is inappropriate because Defendants may intend to present expert testimony in support of an affirmative defense, or may otherwise intend to present certain expert testimony before seeing, and irrespective of, whatever Continental's experts say in their opening reports (*e.g.*, Defendants' own explanation for why they think their royalty rates are FRAND, or what the FRAND obligation means—things Defendants presumably have an opinion about, irrespective of Continental's position).  Where that is the case, Defendants should not be able to "wait" and "go second" in the expert disclosures.  Any expert testimony that any party knows it intends to present at trial should be presented on the first disclosure date.  Second, merely using two disclosure dates—the first for "opening reports," and the second for "rebuttal reports," creates too great a risk of "sandbagging" by Defendants, wherein Defendants will wait to disclose all, or at least the lion's share, of their expert case on the second date (notwithstanding the fact they presumably will have been working on it for months before ever seeing Continental's opening reports), leaving Continental no opportunity to submit a rebuttal to what is otherwise Defendants' affirmative case.  Continental's counsel was the victim of such an approach by Ericsson in the *TCL v. Ericsson* case in the Central District of California, Case No. 8:14-cv-00341-JVS (wherein only two expert report dates were used—one called "opening" and the second called "rebuttal"), which in turn led to a trial continuance so that TCL's experts could fairly rebut what Ericsson's experts had to say.  ECF No. 1074 at 14.  Continental's approach is intended to eliminate the risk that anyone will suffer prejudice from such behavior, and greatly reduce the risk a party will need to seek a continuance of the trial due to improper disclosures by the other party.

### ii.    Defendants' Proposal Regarding Modifications to Limits on Discovery

There is no ripe dispute for the Court to consider concerning modifications to the discovery limits provided under the Federal Rules of Civil Procedure.  Continental first

1   provided Defendants with the foregoing proposals on Saturday, August 10, 2019, just three

2   business days before this Joint Case Management Statement was due.  The meet and

3   confer process is ongoing, with Continental continuously providing new rationales for its

4   proposals, including just a few hours before the deadline for this CMC submission.

5   Notwithstanding the current disagreement with Continental, Defendants anticipate that the

6   Parties will be able to agree on some modifications to the discovery limits to present to the

7   Court as a joint stipulation for Court approval.

8        Defendants did present the following reasonable counter-proposals concerning

9   depositions and interrogatories to Continental as part of the meet and confer process:

10       Depositions.  Defendants agreed to Continental's proposal that Continental: (1) may

11   take up to one-hundred and forty (140) total hours of non-expert depositions (including

12   depositions taken pursuant to Fed. R. Civ. P. 30(b)(6) of witnesses affiliated with the

13   respective Defendants; and (2) may take up to sixty (60) total hours of non-expert

14   depositions of non-party witnesses.

15       Defendants requested that Continental agree that Defendants: (1) may collectively

16   take up to sixty-five (65) total hours of non-expert depositions (including depositions taken

17   pursuant to Fed. R. Civ. P. 30(b)(6) of witnesses affiliated with Continental; each

18   Defendant group shall be entitled to an additional fifteen (15) hours of Defendant-specific

19   deposition; and (2) may collectively take up to sixty (60) total hours of non-expert

20   depositions of non-party witnesses; each Defendant group shall be entitled to an additional

21   fifteen (15) hours of Defendant-specific depositions.

22       Defendants' proposal is a reasonable expansion of the deposition limits that gives

23   Defendants sufficient time to examine Continental's witnesses and develop their defenses.

24   Continental has not indicated that it is unwilling to meet and confer further to discuss

25   deposition limits.  However, if Continental is unwilling to compromise, despite Defendants

26   agreeing to Continental's proposal for the depositions it will take, then Defendants submit

27   that Defendants' proposal is more reasonable.

28

1    Continental's proposal would improperly shoe horn into one case at least five

2  separate disputes regarding at least five separate negotiations involving many different

3  patent portfolios into one case, and has layered on top of this a set of baseless competition

4  claims.  The common deposition hours are designed to address the common issues in the

5  case: the competition allegations and Continental's technologies.  The defendant specific

6  deposition times are designed to address the unique aspects of each alleged negotiations

7  and each different patent portfolio.

8    Interrogatories.  Defendants believe that the 25 interrogatory limit provided in Rule

9  33 is sufficient for the needs of this case, and Continental has not given any explanation as

10  to why an expansion is necessary, especially in light of the significant additional burdens

11  that responding to 15 extra interrogatories would impose on Defendants.  In this case,

12  Continental has requested and Defendants have agreed to very substantial deposition time

13  limit expansions that will give Continental all the tools it needs.

14    It is unfair for Continental to request to be permitted to serve far more

15  interrogatories on Defendants than are allowed under Rule 33, while at the same time

16  arguing that the Defendants should get fewer interrogatories than provided by Rule 33.

17  Nonetheless, Defendants continue to be willing to meet and confer to discuss whether a

18  modification to the interrogatory limits is appropriate in this action.

19    Expert Discovery.  It was not until after close of business on the evening that this

20  joint statement was due that Continental explained why it believes that it is appropriate to

21  depart from the normal expert disclosure procedure under which the plaintiff serves its

22  expert reports first, followed by the defendants' expert rebuttal reports, followed by

23  plaintiff's expert reply reports.  This exemplifies why, as Defendants explained in the

24  preamble to this section, none of the discovery limits issues that Continental has chosen to

25  raise are ripe for the Court to consider.  While Defendants believe that there is no need in

26  this case to depart from the regular procedure of expert disclosure and discovery, the

27  parties should have the opportunity to meet and confer to discuss Continental's concerns

28

1  about how discovery should be conducted, and attempt to come to a stipulated

2  compromise.

3          **e.        Document Subpoenas to Non-Parties.**

4          The Parties agree as follows with respect to non-parties producing materials in

5  response to subpoenas for production of documents under FED. R. CIV. P. 45.  The issuing

6  party shall request that non-parties simultaneously produce materials to all Parties.  If,

7  notwithstanding such request, the non-party does not produce the materials to all Parties,

8  the issuing party shall provide a copy of all materials to the other side within five (5)

9  business days of its receipt of the materials produced by the non-party.  If the party serving

10 a subpoena on a non-party under FED. R. CIV. P. 45 agrees to modify or extend the time for

11 the non-party to extend to such a subpoena in writing, it shall provide a written explanation

12 for the basis for such extension to the other Parties.

13         **f.        Service.**

14         The Parties hereby consent to service by electronic mail, and agree to serve any

15 documents not filed via ECF, including pleadings, discovery requests, subpoenas for

16 testimony or documents, expert disclosure, and delivery of all correspondence, whether

17 under seal or otherwise, by email to all attorneys for the receiving party then appearing on

18 the ECF docket, at the email addresses listed thereon.  All pleadings, discovery requests

19 and responses, subpoenas for testimony or documents and responses, and expert disclosure

20 shall be served by email to all attorneys for all parties then appearing on the ECF docket.

21 In the event the volume of served materials is too large for email and requires electronic

22 data transfer by file transfer protocol or a similar technology, or overnight delivery, the

23 serving party will telephone or email the other side's principal designee when the materials

24 are sent to provide notice that the materials are being served.  For purposes of calculating

25 discovery response times under the Federal Rules of Civil Procedure, electronic delivery

26 shall be treated the same as hand delivery.

27         **g.        Report on Planned Stipulated E-Discovery Order.**

28

The Parties' respective ESI Designees will meet to discuss a Stipulated Electronically-Stored Information (ESI) Order, which the Parties will then propose to the Court.

**h.    Proposed Discovery Plan**

The Parties' respective proposals regarding the timing of discovery are set forth in Exhibit A.

**i.    Current Discovery Disputes**

To date, the Parties have not identified any discovery disputes.

**9.    CLASS ACTIONS**

There is no proposed class in this action.

**10.   RELATED CASES**

The Parties do not believe there are any "related cases or proceedings" pending before another judge in the Northern District of California, or before another court or administrative body in the United States, that meet the standard for "related cases" as defined in Civil L.R. 3-12.

However, as noted in Continental's Motion for Anti-Suit Injunction, a number of proceedings currently pending in Europe may have factual and/or procedural bearing on the case-in-suit, and therefore should be brought to the Court's attention as "proceedings pending before . . . another court or administrative body" that have some relation to the instant action. These include a complaint filed before the European Commission by Continental's customer Daimler AG ("Daimler") and many of its component suppliers – including Continental AG – that pertains to conduct by Nokia that is similar and related to the conduct alleged in the Complaint in this action. *See* Dkt 32.

Furthermore, as stated in Continental's Motion for Anti-Suit Injunction, Nokia and Sharp have filed a number of patent enforcement actions in Germany against Daimler, wherein Continental's affiliates have intervened. These suits are related to the subject matter of this litigation as well, in light of Continental's argument that Nokia and Sharp have failed to offer FRAND rates to any willing, potential licensee and instead insist on

only offering direct licenses to automotive original equipment manufacturers. *Id.* These matters include:

- *Nokia Solutions and Networks Oy v. Daimler AG*, First Munich Regional Court, Patent Division, No. 21 O 3889/19.

- *Nokia Technologies Oy v. Daimler AG*, First Munich Regional Court, Patent Division, No. 7 O 3890/19.

- *Nokia Technologies Oy v. Daimler AG*, First Munich Regional Court, Patent Division, No. 21 O 3891/19.

- *Nokia Technologies Oy v. Daimler AG*, Düsseldorf Regional Court, Patent Division, No. 4a O 26/19.

- *Nokia Technologies Oy v. Daimler AG*, Düsseldorf Regional Court, Patent Division, No. 4a O 27/19.

- *Nokia Technologies Oy v. Daimler AG*, Düsseldorf Regional Court, Patent Division, No. 4c O 17/19.

- *Nokia Technologies Oy v. Daimler AG*, Mannheim Regional Court, Patent Division, No. 2 O 37/19.

- *Nokia Technologies Oy v. Daimler AG*, Mannheim Regional Court, Patent Division, No. 2 O 36/19.

- *Nokia Solutions and Networks Oy v. Daimler AG*, Mannheim Regional Court, Patent Division, No. 2 O 35/19.

- *Nokia Solutions and Networks Oy v. Daimler AG*, Mannheim Regional Court, Patent Division, No. 2 O 34/19.

- *Sharp Kabushiki Kaisha v. Daimler AG*, Mannheim Regional Court, Patent Division, No. 2 O 46/19, complaint filed on April 12, 2019, asserted patent EP 2 154 903.

- *Sharp Kabushiki Kaisha v. Daimler AG*, Mannheim Regional Court, Patent Division, No. 2 O 87/19, complaint filed on June 5, 2019, asserted patent EP 2 129 181.

- *Sharp Kabushiki Kaisha v. Daimler AG*, First Munich Regional Court, Patent Division, No. 21 O 8609/19, complaint filed on June 25, 2019, asserted patent EP 2 854 324.

- *Sharp Kabushiki Kaisha v. Daimler AG*, First Munich Regional Court, Patent Division, No. 21 O 9918/19, complaint filed on June 27, 2019, asserted patent EP 2 312 896 B1.

- *Sharp Kabushiki Kaisha v. Daimler AG*, First Munich Regional Court, Patent Division, No. 7 O 8818/19, complaint filed on June 28, 2019, asserted patent EP 2 667 676.

**Nokia's position**: The German litigation listed above is not related to this litigation because it involves different entities and different issues, as described in the Defendants' opposition to Continental's Motion for Anti-suit Injunction.  Dkt. No. 101.

**11.    RELIEF**

**a.      Continental's Requested Relief**

Continental seeks equitable relief in the form of entry of judgment against the Defendants declaring, ordering and adjudging at least the following:

- That Defendants are liable for failing and refusing to comply with their commitments to offer FRAND terms and conditions for a license to their alleged 2G, 3G and/or 4G SEPs to Continental;

- That Defendants are liable for promissory estoppel;

- That Continental and other suppliers in the automotive supply chain are entitled to a license from Defendants for any and all patents Defendants deem "essential" and/or which Defendants have declared as "essential" to the 2G, 3G, and 4G standards under FRAND terms and conditions;

- The proper FRAND terms and conditions to which Continental is entitled vis-a-vis Defendants;

- That a license on FRAND terms and conditions must be consistent with apportionment principles under federal patent law (*i.e.*, the smallest salable patent practicing unit rule);

- That Defendants have not offered Continental a license to the alleged 2G, 3G, and 4G SEPs at issue on FRAND terms and conditions.

- That Defendants have violated Sections 1 and 2 of the Sherman Act, and of the California Business and Professions Code Section 17200 et seq. *See* Dkt. 97 at 61-62;

- That Defendants shall be enjoined from demanding excessive royalties from Continental and its customers that are not consistent with Defendants' FRAND obligations;

- That Defendants shall be enjoined from enforcing their alleged 2G, 3G, and/or 4G SEPs against Continental and its customers via patent infringement lawsuits or other proceedings in other jurisdictions, while Continental remains a willing licensee and seeks an adjudication of the FRAND terms and conditions from this Court;

- That Defendants shall be enjoined from further violation of the Sherman Act and of the California Business and Professions Code Section 17200 et seq. *Id.* at 62;

- The imposition of a binding, worldwide license between the parties which provide Continental and all of its affiliates with a license to the 2G, 3G, and 4G SEPs at issue on FRAND terms and conditions.

Finally, Continental requests that the Court award it expenses, costs, and attorneys' fees under applicable laws. *Id.*

**b. Defendants' Requested Relief**

Defendants deny that Continental is entitled to the relief it seeks. If the Court determines that Continental has alleged claims that meet the pleading requirements of Rule 8 and Rule 12, Defendants will assert their counterclaims against Continental, if any, in their answers to the operative complaint.

**12.   SETTLEMENT AND ADR**

The Parties have not engaged in formal settlement discussions since the commencement of this action.  The Parties have met and conferred regarding ADR and believe that ADR would be premature at this time.  The Parties have also complied with Civ. L.R. 16-8(b) and ADR L.R. 3-5 and have each filed an ADR Certification form with the Court.  *See* Dkts. 112 (Nokia), 113 (Continental), 119 (Optis), 121 (Avanci (Corrected)), and 134 (Conversant).

**13.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

On June 14, 2019, Nokia filed a declination to proceed before a Magistrate Judge for all future proceedings.  Dkt. 46.

**14.   OTHER REFERENCES**

The Parties agree that this case is not suitable for reference to binding arbitration or a special master.

**15.   NARROWING OF ISSUES**

The Parties do not seek any bifurcation of issues at this time.  Should it become apparent that issues before the Court in this action may be narrowed by stipulation or motion, the Parties will consider how best to do so at that time – including with respect to suggestions that may expedite the presentation of evidence at trial.

**16.   EXPEDITED TRIAL PROCEDURE**

The Parties agree that this case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64.

**17.   SCHEDULING**

The Parties' respective proposals regarding the case schedule are set forth in Exhibit A.

**18.   TRIAL**

Plaintiff's position is that because equitable relief is sought in the Complaint, a bench trial is required.  Defendants' position is that it is too early in the case to determine whether a jury trial is either required or should be empaneled in an advisory role.  This

analysis will need to await the filing of counter-claims and full discovery on the nature of the specific remedies sought.  At this point, the Parties are not able to estimate the necessary length of any trial.

**19.     DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-15, Continental has filed its Certificate of Interested Entities or Persons on May 10, 2019 – in which Continental stated that as of the date of filing, Continental Automotive Systems, Inc. is wholly owned by Continental Automotive, Inc., which in turn is wholly-owned by Continental Automotive Holding Netherlands B.V., which is wholly-owned by CGH Holding B.V., which is wholly-owned by CAS-One Holdinggesellschaft mbH, which is wholly-owned by Continental Caoutchouc-Export-GmbH, which is owned 51% by Continental Automotive GmbH and 49% by Continental A.G.  *See* Dkt. 3.  Furthermore, Continental's Certificate of Interested Parties stated that no publicly-held company owns 10% or more of Continental Automotive Systems, Inc., however Continental Automotive Systems, Inc. is an indirect subsidiary of Continental A.G., a German public corporation.  *Id.*

Nokia similarly filed its Certificate of Interested Entities or Persons on July 24, 2019, which provided as follows:

- Defendant Nokia of America Corporation is a wholly owned subsidiary of Nokia Solutions and Networks B.V., a company organized under the laws of the Netherlands, which is a wholly owned subsidiary of Nokia Solutions and Networks Oy, a company organized under the laws of Finland.

- Defendant Nokia Solutions and Networks Oy is a wholly owned subsidiary of Nokia Corporation.

- Defendant Nokia Corporation is a publicly traded company organized under the laws of Finland. Nokia Corporation is not owned by any parent corporation, and no other publicly held corporation owns 10% or more of its stock.

- Defendant Nokia Solutions and Networks US LLC no longer exists. It was merged into Alcatel Lucent USA Inc., effective January 1, 2018, which later changed its name to Nokia of America Corporation.

- Nokia Technologies Oy is a Finnish company and is a wholly owned subsidiary of Nokia Corporation.

Dkt. 100.  Apart from these relationships, Nokia's Certificate of Interested Entities and Persons provided that no other persons, associations of persons, firms, partnerships, corporations or other entities have a financial interest in the subject matter in controversy or in a party to the proceeding, nor have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding.  *Id.*

Avanci filed its Certificate of Interested Entities or Persons on August 5, 2019, which disclosed that: (i) Inception Holdings, LLC is the parent company of, and wholly owns, Avanci, LLC; (ii) Inception Holdings International Limited is the parent company of, and wholly owns, Avanci Platform International Limited; and (iii) Inception Holdings, LLC is the parent company of, and wholly owns, Inception Holdings International Limited.  Dkt. 122.  Avanci further provided that no other persons, associations of persons, firms, partnerships, corporations or other entities have a financial interest in the subject matter in controversy or in a party to the proceeding, nor have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding.  *Id.*

The Optis Entities filed their Certificate of Interested Entities or Persons on August 12, 2019.  (1) Optis UP Holdings, LLC is wholly owned by PanOptis Equity Holdings. (2) Optis Cellular Technology, LLC is wholly owned by Optis CT Holdings, LLC, which is wholly owned by PanOptis Equity Holdings.  (3) Optis Wireless Technology, LLC is wholly owned by Optis WT Holdings, LLC, which is wholly owned by PanOptis Equity Holdings. (4) H57 Acquisition, LLC, H57 Acquisition Fund, LP, and H57 Acquisition Partners, LLC, own PanOptis Equity Holdings. (5) No publicly-held company owns 10% or more of any of the Optis Entities.

1    Conversant filed its Certificate of Interested Entities or Persons on August 13, 2019.

2    Dkt. 135.  Conversant Wireless SARL is wholly owned by Conversant Intellectual

3    Property Management, Inc. and no publicly-held company owns 10% or more of the stock

4    of Conversant Wireless SARL.  Conversant further provided that no other persons,

5    associations of persons, firms, partnerships, corporations or other entities have a financial

6    interest in the subject matter in controversy or in a party to the proceeding, nor have a non-

7    financial interest in that subject matter or in a party that could be substantially affected by

8    the outcome of this proceeding.  *Id*.

9    **20.    PROFESSIONAL CONDUCT**

10    All attorneys of record have reviewed the Guidelines for Professional Conduct for

11    the Northern District of California.

12    **21.    SUCH OTHER MATTERS AS MAY FACILITATE THE JUST, SPEEDY,**

13    **AND INEXPENSIVE DISPOSITION OF THIS MATTER**

14    The Parties have not identified any other issues to address with the Court at this

15    time.

16    DATED: August 14, 2019                     Respectfully submitted,

17

18

19   */s/Martin R. Bader*
     Martin R. Bader (SBN 222865)
20   mbader@sheppardmullin.com
     **SHEPPARD, MULLIN, RICHTER &**
21   **HAMPTON LLP**
22   12275 El Camino Real, Suite 200
     San Diego, California 92130
23   Telephone: (858) 720-8900
     Facsimile: (858) 509-3691
24

25   *Counsel for Plaintiff*
     *Continental Automotive Systems, Inc.*
26

27   */s/ Peter K. Huston*
     Peter K. Huston (SBN 150058)
28   peter.huston@bakerbotts.com

     */s/ Jeffrey L. Kessler*
     Jeffrey L. Kessler (*pro hac vice*)
     jkessler@winston.com
     Aldo A. Badini (SBN 257086)
     abadini@winston.com
     Susannah P. Torpey (*pro hac vice*)
     storpey@winston.com
     **WINSTON & STRAWN LLP**
     200 Park Avenue
     New York, NY 10166-4193
     Telephone: (212) 294-6700
     Facsimile: (212) 294-4700


     Ian L. Papendick (SBN 275648)
     ipapendick@winston.com
     Jeanifer E. Parsigian (SBN 289001)
     jparsigian@winston.com

**BAKER BOTTS LLP**
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

James G. Kress (*pro hac vice*)
james.kress@bakerbotts.com
**BAKER BOTTS LLP**
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 639-7884
Facsimile: (202) 639-1185

*Counsel for Defendant*
*Conversant Wireless Licensing SARL*

/s/ H. Annita Zhong
Jason G. Sheasby (SBN 205455)
jsheasby@irell.com
H. Annita Zhong (SBN 266924)
hzhong@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

*Attorneys for Defendants*
*Optis UP Holdings, LLC, Optis Wireless*
*Technology, LLC, and Optis Cellular*
*Technology, LLC*

**WINSTON & STRAWN LLP**
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

*Counsel for Defendants*
*Avanci, LLC and Avanci Platform*
*International Limited*

/s/ [4]
Ryan W. Koppelman (SNB 290704)
ryan.koppelman@alston.com
**ALSTON & BIRD LLP**
1950 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone: 650-838-2000
Facsimile: 650-838-2001

*Counsel for Defendants*
*Nokia Corporation, Nokia of America*
*Corporation, Nokia Solutions and Networks*
*US LLC, Nokia Solutions and Networks Oy,*
*and Nokia Technologies Oy*

---

[4] This joint report is being filed without Nokia's counsel's signature because counsel for Nokia failed to provide its authorization for the final version of the report prior to the filing deadline.

**Exhibit A**

**Parties' Proposed Discovery Plan and Schedule**

| Event | Continental's Position | Defendants' Position |
|---|---|---|
| Close of Fact Discovery | October 14, 2020[5] | 12 months after order denying Defendants' motion to dismiss in whole or in part |
| Opening Expert Reports | November 11, 2020 | +4 weeks from prior deadline |
| Rebuttal Expert Reports | December 9, 2020 | +12 weeks from prior deadline |
| Further Rebuttal Expert Reports (as needed) | January 6, 2021 | +6 weeks from prior deadline |
| Close of Expert Discovery | February 17, 2020 | +6 weeks from prior deadline |
| Last Day to File Summary Judgment and *Daubert* Motions | March 10, 2021 | +4 weeks from prior deadline |
| Oppositions to Summary Judgment and *Daubert* Motions Due | April 7, 2021 | +4 weeks from prior deadline |
| Replies to Summary Judgment and *Daubert* Motions Due | April 21, 2021 | +4 weeks from prior deadline |
| Hearing on Summary Judgment and *Daubert* Motions | May 12, 2021 | +4 weeks from prior deadline |
| Pretrial Disclosures | June 11, 2021 | +8 weeks from prior deadline |
| Pretrial Conference | July 9, 2021 | +6 weeks from prior deadline |
| Trial | TBD (approximately 4 weeks after pretrial conference) | TBD |

---

[5] Continental's position is based on discovery not being stayed.  Continental thinks any stay of discovery is inappropriate.

**FILER'S ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3) regarding signatures, I, Martin R. Bader, attest that concurrence in the filing of this document has been obtained from each of the other signatories. I declare under penalty under the laws of the United States of America that the foregoing is true and correct. Executed this 14 day of August, 2019, at San Diego, California.

*/s/Martin R. Bader*
Martin R. Bader