Teresa T. Bonder (SBN 321558)
**ALSTON & BIRD LLP**
560 Mission Street, Suite 2100
San Francisco, CA 94105
Telephone:    (415) 243-1000
Facsimile:    (415) 243-1001
teresa.bonder@alston.com

Ryan W. Koppelman (SBN 290704)
**ALSTON & BIRD LLP**
950 Page Mill Road
Palo Alto, CA 94304
Telephone:    (650) 838-2000
Facsimile:    (650) 838-2001
ryan.koppelman@alston.com

Mark A. McCarty (*pro hac vice* granted)
Matthew D. Richardson (*pro hac vice* granted)
John D. Haynes (*pro hac vice* granted)
Andrew J. Tuck (*pro hac vice* granted)
Cassandra Kerkhoff Johnson (SBN 300064)
**ALSTON & BIRD LLP**
1201 W. Peachtree St.
Atlanta, GA 30309
Telephone:    (404) 881-7000
Facsimile:    (404) 881-7777
mark.mccarty@alston.com
matt.richardson@alston.com
john.haynes@alston.com
andy.tuck@alston.com
cassie.johnson@alston.com

*Attorneys for Defendants Nokia Corporation,
Nokia of America Corporation, Nokia Solutions
and Networks US LLC, Nokia Solutions and
Networks Oy, and Nokia Technologies Oy
(Counsel for additional defendants on signature
page)*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINENTAL AUTOMOTIVE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> AVANCI, LLC, et. al., <br><br> Defendants. | Case No. 19-cv-2520-LHK <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> The Honorable Lucy H. Koh <br><br> Hearing Date: November 21, 2019 <br> Time: 1:30 p.m. <br> Courtroom: 8, 4th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendants Avanci, LLC; Avanci Platform International Limited; Nokia Corporation; Nokia of America Corporation; Nokia Solutions and Networks US LLC; Nokia Solutions and Networks Oy; Nokia Technologies Oy; Conversant Wireless Licensing SARL; Optis UP Holdings, LLC; Optis Cellular Technology, LLC; Optis Wireless Technology, LLC; and Sharp Corporation (collectively, "Defendants") will and hereby do move to dismiss Plaintiff Continental Automotive Systems, Inc.'s ("Continental") First Amended Complaint ("Complaint") filed in this matter. The hearing on this motion will be held on November 21, 2019, at 1:30 pm in Courtroom 8 of the United States District Court of the Northern District of California, located at 280 South First Street, 4th Floor, San Jose, California, 945113.

Defendants bring this motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(5), and 12(b)(6) on the following grounds:

1.      Continental lacks Article III standing because it never sought a license, its allegations of injury are too speculative to satisfy Article III's standing requirements, and it has not sufficiently alleged that any conduct engaged in by Defendants actually caused injury to Continental to satisfy the causation component of Article III standing.

2.      Continental's antitrust claims fail to state a claim under Rule 12(b)(6) because Continental fails to establish the following essential components of an antitrust claim: antitrust injury; an anticompetitive agreement or conspiracy; that Defendants have unlawfully acquired monopoly power; and a relevant market.

3.      Continental's promissory estoppel claim fails to state a claim under Rule 12(b)(6) because it is not available under French law and does not satisfy the requirements of U.S. law.

4.      Continental's declaratory judgment claim should be dismissed because it is duplicative.

5.      Continental's breach of contract claim should be dismissed for seeking an improper remedy.

6.      Continental's claim for violation of California Business & Professions Code Section 17200 should be dismissed because Continental has not alleged that it has lost money or property as a

DEFENDANTS' MOTION TO DISMISS                                    Case No. 19-cv-2520-LHK

result of the alleged unfair competition and therefore lacks UCL standing; because the antitrust claims should be dismissed; and because there are insufficient connections with California.

7.   The claims against Nokia Corporation, Conversant SARL, Avanci Platform International Limited should be dismissed under Rule 12(b)(2) because this Court lacks personal jurisdiction over them. If the Court dismisses Continental's antitrust claims, it should also dismiss Defendants Nokia of America Corporation, Nokia Solutions and Networks US LLC, Nokia Solutions and Networks Oy, Nokia Technologies Oy, Conversant SARL, Avanci LLC, and Sharp Corporation for lack of personal jurisdiction.

8.   Continental's breach of contract claim against Avanci fails because Avanci is not an SEP owner and did not make any FRAND commitments to any of the SSOs, so Avanci did not owe any contractual obligations which Continental can claim have been breached.

9.   The claims against Defendant Sharp Corporation should be dismissed under Rule 12(b)(5) for improper service.

10.   The claims against the Optis Defendants should additionally be dismissed for lack of personal jurisdiction (state law claims) and venue (all claims), and because of a lack of a case or controversy because Continental entities declined to pursue license negotiations.

This motion is based upon this notice of motion, the accompanying statement of issues to be decided, the accompanying memorandum of points and authorities, the accompanying declarations, all pleadings and documents on file in this case, and on such other written and oral arguments as may be presented to the Court.

Dated: August 30, 2019

/s/  Ryan W. Koppelman
Ryan W. Koppelman (SBN 290704)
ALSTON & BIRD LLP
950 Page Mill Road
Palo Alto, CA 94304
Telephone: (650) 838-2000
ryan.koppelman@alston.com

*[additional counsel for Defendants listed on memorandum signature page]*

DEFENDANTS' MOTION TO DISMISS                                        Case No. 19-cv-2520-LHK

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Complaint should be dismissed in its entirety because Continental lacks Article III standing to assert the claims alleged in the Complaint?

2.      Whether Continental's antitrust claims should be dismissed under Rule 12(b)(6) because Continental fails to establish antitrust injury; an anticompetitive agreement or conspiracy; that Defendants have unlawfully acquired monopoly power; and a relevant market?

3.      Whether Continental's claim for promissory estoppel should be dismissed because that claim is not available under French law and does not satisfy U.S. law?

4.      Whether the declaratory judgment claim is duplicative and should be dismissed?

5.      Whether Continental's breach of contract claim should be dismissed because it seeks an improper remedy?

6.      Whether Continental's claim for violation of California Business & Professions Code Section 17200 should be dismissed because Continental lacks UCL standing; because the antitrust claims should be dismissed; and because there is no connection to California?

7.      Whether this Court lacks personal jurisdiction over Nokia Corporation, Conversant SARL, Avanci Platform International Limited, and the Optis Defendants such that the claims against those Defendants should be dismissed under Rule 12(b)(2)?

8.      Whether Continental's breach of contract claim against Avanci fails because it cannot be alleged that Avanci made any FRAND commitments to the relevant SSOs, such that it did not owe any contractual obligations which Continental can claim have been breached?

9.      Whether service of process was improper as to Defendant Sharp Corporation such that the claims against Sharp should be dismissed under Rule 12(b)(5) for improper service?

10.     Whether there is a lack of a case or controversy between the Optis Defendants and Continental because Continental entities declined to pursue license negotiations?

DEFENDANTS' MOTION TO DISMISS                                     Case No. 19-cv-2520-LHK

# <u>TABLE OF CONTENTS</u>

I.      FACTS ................................................................................................................ 2

II.     LEGAL STANDARDS ...................................................................................... 3

III.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE
        CONTINENTAL LACKS ARTICLE III STANDING. ...................................... 4

        A.      Continental Has Not Alleged that It Has Suffered or Will Suffer an Imminent
                and Non-Speculative Injury-in-Fact. ....................................................... 4

        B.      Continental Fails to Plead that Defendants' Conduct Caused It Injury. ....... 6

IV.     THE ANTITRUST CLAIMS SHOULD BE DISMISSED FOR FAILURE TO
        STATE A CLAIM ............................................................................................. 7

        A.      Continental's Antitrust Claims Should Be Dismissed Because Continental
                Lacks Antitrust Standing............................................................................ 7

        B.      Continental's Section 1 Claim (Count IV) Must Also Be Dismissed Because
                Continental Fails to Allege Facts to Support an Actionable Agreement or an
                Unreasonable Restraint. .......................................................................... 9

        C.      Continental's Section 2 Claims (Counts V and VI) Must Be Dismissed
                Because the Allegations Raise a Simple Breach of Contract Dispute. ...... 13

                1.      Dissatisfaction with Offered Royalty Rates that Are Allegedly in
                        Breach of Contract Does Not Constitute a Section 2 Claim........... 13

                2.      The Complaint Fails to Allege Any Deceptive Conduct with the
                        Required Particularity to Support a Section 2 Claim..................... 14

                3.      The Complaint Fails to Allege Facts Establishing a Conspiracy to
                        Monopolize. ................................................................................ 16

        D.      Continental Fails to Allege a Relevant Antitrust Market in which Any
                Defendant Has Market Power. ................................................................. 17

                1.      Technology Markets ..................................................................... 18

                2.      Licensing Markets......................................................................... 19

                3.      Baseband Processor Market .......................................................... 20

V.      CONTINENTAL'S ADDITIONAL CLAIMS SHOULD BE DISMISSED. ...... 20

        A.      Continental Has Not Pled a Promissory Estoppel Claim............................ 20

        B.      The Declaratory Judgment Claims Are Duplicative and Not Ripe............. 21

        C.      The Breach of Contract Claim Fails to Establish a Claim to Specific
                Performance a Remedy. ........................................................................... 22

D.      The UCL Claim Should Be Dismissed for Multiple Reasons. ................................. 23

VI.   CERTAIN DEFENDANTS AND CLAIMS SHOULD BE DISMISSED FOR
        ADDITIONAL REASONS. .......................................................................................... 23

        A.      Many of the Defendants Should Be Dismissed for Lack of Personal
                 Jurisdiction. ............................................................................................................. 23

        B.      Non-California Defendants Should Be Dismissed with the Antitrust Claims. ........... 24

        C.      Continental Has Not and Cannot Plead Facts to Establish that Avanci Is
                 Contractually Obligated to Offer FRAND Rates to Third-Party Beneficiaries. ......... 25

        D.      Defendant Sharp Corporation Should Be Dismissed for Lack of Proper
                 Service. ..................................................................................................................... 26

        E.      The Optis Entities Request Dismissal for the Following Additional Reasons. .......... 28

VII.   CONCLUSION ............................................................................................................... 30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ...............................................................................28

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
   190 F.3d 1051 (9th Cir. 1999) ..................................................................................7

*Antoine L. Garabet, M.D., Inc. v. Autonomous Techs. Corp.*,
   116 F. Supp. 2d 1159 (C.D. Cal. 2000) ....................................................................8

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 11-cv-01846-LHK, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011)............................14, 19, 23

*Apple Inc. v. Samsung Elecs. Co.*,
   No. 11-cv-01846-LHK, 2012 WL 1672493 (N.D. Cal. May 14, 2012) .....................17, 18, 19, 20

*Avago Techs. Fiber Ip Sing. Pte v. IPtronics, Inc.*,
   No. C 10-02863 EJD (PSG), 2012 U.S. Dist. LEXIS 151037 (N.D. Cal. Oct. 19,
   2012) .........................................................................................................................15

*Bayer v. Neiman Marcus Grp., Inc.*,
   861 F.3d 853 (9th Cir. 2017) ...................................................................................30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................ *passim*

*Bhan v. NME Hosps., Inc.*,
   772 F.2d 1467 (9th Cir. 1985) ..................................................................................7

*Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.*,
   688 F. Supp. 2d 940 (N.D. Cal. 2010) ....................................................................21

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ...................................................................................3

*Broadcom Corp. v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007)....................................................................................14

*Brockmeyer v. May*,
   383 F.3d 798 (9th Cir. 2004) ....................................................................................3

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977)...................................................................................................8

*Cargill, Inc. v. Monfort of Colo., Inc.*,
   479 U.S. 104 (1986)...................................................................................................7

*Cascades Computer Innovation LLC v. RPX Corp.*,
    No. 12-cv-01143 YGR, 2013 WL 316023 (N.D. Cal. Jan. 24, 2013) .......................................... 11

*CBC Cos. v. Equifax, Inc.*,
    561 F.3d 569 (6th Cir. 2009) ................................................................................................. 9

*Cepheid v. Roche Molecular Sys., Inc.*,
    No. C-12-4411 EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013) ....................................... 6

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
    631 F.3d 939 (9th Cir. 2011) ................................................................................................. 5

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................................................................... 5

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ............................................................................................... 4

*Conservation Cong. v. United States Forest Serv.*,
    No. 2:16-cv-00864-MCE, 2018 WL 2427640 (E.D. Cal. May 30, 2018) ............................... 5

*Cortez v. Mortg. Elec. Registration Sys., Inc.*,
    No. 3:11-cv-00872-RCJ, 2012 WL 1744449 (D. Nev. May 11, 2012) ................................ 21

*Crowley v. Bannister*,
    734 F.3d 967 (9th Cir. 2013) ................................................................................................. 4

*Cruz v. United States*,
    219 F. Supp. 2d 1027 (N.D. Cal. 2002) .............................................................................. 26

*Delphix Corp. v. Actifio, Inc.*,
    No. 13-cv-4613 RS, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) ..................................... 11

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ............................................................................................... 25

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
    No. 3:16-cv-00014 GPC, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) .................................. 5

*F. Hoffmann-La Roche Ltd v. Empagran S.A.*,
    542 U.S. 155 (2004) ............................................................................................................. 19

*Fed. Trade Comm'n v. Qualcomm Inc.*,
    No. 17-cv-00220-LHK, 2019 WL 2206013 (N.D. Cal. May 21, 2019) ................................ 19

*Frost v. LG Electroncs Inc.*,
    No. 16-cv-05206-BLF, 2018 WL 6256790 (N.D. Cal. July 9, 2018) ................................... 12

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
    352 F.3d 367 (9th Cir. 2003) ................................................................................................. 7

iv

*H.L. Hayden Co. v. Siemens Med. Sys., Inc.*,
   672 F. Supp. 724 (S.D.N.Y. 1987) ............................................................................17

*Haier Am. Trading, LLC v. Samsung Elecs., Co.*,
   No. 1:17-cv-921 TJM, 2018 WL 4288617 (N.D.N.Y. Sept. 7, 2018) ..........................21

*Harkins Amusement Enterps., Inc. v. Gen. Cinema Corp.*,
   850 F.2d 477 (9th Cir. 1988) ....................................................................................17

*Hicks v. PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ..................................................................................18

*Huawei Techs., Co v. Samsung Elecs. Co*,
   340 F. Supp. 3d 934 (N.D. Cal. 2018) ......................................................................15

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*,
   547 U.S. 28 (2006)..............................................................................................13, 19

*InterDigital Commc'ns, Inc. v. ZTE Corp.*,
   No. 1:13-cv-00009-RGA, 2014 WL 2206218 (D. Del. May 28, 2014) ........................30

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ............................................................................11, 12

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
   725 F.3d 718 (7th Cir. 2013) ....................................................................................28

*LA Gem & Jewelry Design, Inc. v. Gold Star Jewellery PVT Ltd.*,
   No. 14-cv-4807 DSF, 2014 WL 10401936 (C.D. Cal. Aug. 11, 2014) ........................27

*Leon v. Continental AG*,
   176 F. Supp. 3d 1315 (S.D. Fla. 2016) ......................................................................27

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014)..........................24

*Live Nation Merch., Inc. v. Does*,
   No. 18-cv-2703-GPB, 2018 WL 6326321 (S.D. Cal. Dec. 4, 2018) ..............................5

*Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.*,
   753 F.3d 395 (2d Cir. 2014)......................................................................................19

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   No. C 11-01036 JSW, 2011 WL 13152817 (N.D. Cal. July 14, 2011) ........................22

*Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*,
   140 F.3d 1228 (9th Cir. 1998) ....................................................................................7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).....................................................................................................4

*MAI Sys. Corp. v. UIPS*,
  856 F. Supp. 538 (N.D. Cal. 1994) ..................................................................................6

*Marder v. Lopez*,
  450 F.3d 445 (9th Cir. 2006) .........................................................................................2

*Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.*,
  299 F. Supp. 2d 370 (D. Del. 2004) .............................................................................10

*Meyer v. Qualcomm Inc.*,
  No. 08-cv-655 WQH, 2009 WL 539902 (S.D. Cal. Mar. 3, 2009) ...............................8

*Microsoft Corp. v. Motorola, Inc.*,
  795 F.3d 1024 (9th Cir. 2015) .....................................................................................22

*Microsoft Corp. v. Motorola, Inc.*,
  No. C10-1823 JLR, 2011 WL 11480223 (W.D. Wash. June 1, 2011) .........................21

*Monaco v. Liberty Life Assurance Co.*,
  No. C06-07021 MJJ, 2007 WL 420139 (N.D. Cal. Feb. 6, 2007) ...............................26

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004) .......................................................................................4

*In re Musical Instruments & Equip. Antitrust Litig.*,
  798 F.3d 1186 (9th Cir. 2015) .....................................................................................12

*Nanoexa Corp. v. Univ. of Chicago*,
  No. 10-cv-2631-LHK, 2010 WL 4236855 (N.D. Cal. Oct. 21, 2010) .........................25

*Nero AG v. MPEG LA, L.L.C.*,
  No. 10-cv-3672-MRP-RZ, 2010 WL 4878835 (C.D. Cal. Nov. 24, 2010) ............10, 11

*Newcal Indus. v. Ikon Office Sol.*,
  513 F.3d 1038 (9th Cir. 2008) ...........................................................................17, 18, 20

*Norwest Mortg., Inc. v. Superior Court*,
  85 Cal. Rptr. 2d 18 (Cal. App. 1999)...........................................................................23

*NSS Labs, Inc. v. Symantec Corp.*,
  No. 18-cv-5711 BLF, 2019 WL 3804679 (N.D. Cal. Aug. 13, 2019) .........................18

*Orion Pictures Distrib. Corp. v. Syufy Enters.*,
  829 F.2d 946 (9th Cir. 1987) .........................................................................................8

*Orion Tire Corp. v. Gen. Tire, Inc.*,
  No. 92-cv-2391 AAH, 1992 WL 295224 (C.D. Cal. Aug. 17, 1992)...........................27

*Osborn ex rel. Osborn v. Kemp*,
  991 A.2d 1153 (Del. 2010) ...........................................................................................22

vi

*Paladin Assocs., Inc. v. Mont. Power Co.*,
  328 F.3d 1145 (9th Cir. 2003) ...................................................................................16

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
  57 F.3d 1051 (Fed. Cir. 1995), 549 U.S. 118 (2007)...............................................21

*Phillips v. Apple Inc.*,
  No. 15-cv-04879-LHK, 2016 WL 5846992 (N.D. Cal. Oct. 6, 2016)...........................4

*Piedmont Label Co. v. Sun Garden Packing Co.*,
  598 F.2d 491 (9th Cir. 1979) .................................................................................3, 28

*Pony v. Cty. of Los Angeles*,
  433 F.3d 1138 (9th Cir. 2006) ....................................................................................6

*Pool Water Prods. v. Olin Corp.*,
  258 F.3d 1024 (9th Cir. 2001) ....................................................................................7

*Rambus Inc. v. FTC*,
  522 F.3d 456 (D.C. Cir. 2008) .......................................................................13, 15, 19

*Reyes v. Nationstar Mortg. LLC*,
  No. 15-cv-01109-LHK, 2015 WL 4554377 (N.D. Cal. July 28, 2015)........................21

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) ....................................................................................3

*SKC Kolon PI, Inc. v. Kaneka Corp.*,
  No.10-cv-07251 GAF, 2010 WL 11553177 (C.D. Cal. Nov. 18, 2010) .....................27

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ....................................................................................11

*Standfacts Credit Servs, Inc. v. Experian Info. Sol., Inc.*,
  405 F. Supp. 2d 1141 (C.D. Cal. 2005) .....................................................................17

*Static Control Components, Inc. v. Lexmark Int'l, Inc.*,
  697 F.3d 387 (6th Cir. 2012) ......................................................................................8

*Stelmachers v. Verifone Sys.*,
  No. 5:14-cv-04912-EJD, 2016 WL 6835084 (N.D. Cal. Dec. 17, 2015) .....................5

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009)....................................................................................................4

*Sun Dun, Inc. v. Coca-Cola Co.*,
  740 F. Supp. 381 (D. Md. 1990).................................................................................17

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ..............................................................................15, 25

*Tanaka v. Univ. of S. Cal.*,
  252 F.3d 1059 (9th Cir. 2001) ........................................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. C 09-1115 SI, 2009 WL 4874872 (N.D. Cal. Oct. 6, 2009) ...................................27

*Townshend v. Rockwell Int'l Corp.*,
  No. C99-0400SBA, 2000 WL 433505 (N.D. Cal. Mar. 28, 2000) ................................18

*U.S. Philips Corp. v. International Trade Commission*,
  424 F.3d 1179 (Fed. Cir. 2005).....................................................................................12

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*,
  454 F. Supp. 2d 62 (E.D.N.Y. 2006) ...............................................................................9

*United Comp. Sys., Inc. v. AT&T Corp.*,
  298 F.3d 756 (9th Cir. 2002) ........................................................................................26

*United States v. Washington*,
  759 F.2d 1353 (9th Cir. 1985) ......................................................................................21

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
  108 F. Supp. 3d 733 (N.D. Cal. 2015) ...........................................................................28

*Verizon Communic's Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)................................................................................................13, 20

*Vernon v. S. Cal. Edison Co.*,
  955 F.2d 1361 (9th Cir. 1992) ...................................................................................9, 13

*Vess v. Ciba-Geigy Corp.*,
  317 F.3d 1097 (9th Cir. 2003) ......................................................................................14

*Voda v. Cordis Corp.*,
  476 F.3d 887 (Fed. Cir. 2007).......................................................................................22

*Walker v. Geico Gen. Ins. Co.*,
  558 F.3d 1025 (9th Cir. 2009) ......................................................................................23

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) ................................................................................24, 25

*Yamaha Motor Co. v. Superior Court*,
  174 Cal. App. 4th 264 (2009) .......................................................................................27

**Statutes**

15 U.S.C. § 6a.................................................................................................................19

15 U.S.C. § 22...........................................................................................................24, 28

Cal. Bus. & Prof. Code § 17200 ....................................................................................1, 3

Cal. Bus. & Prof. Code § 17204 ........................................................................................23

Cal. Civ. Code § 1550 ........................................................................................................26

Cal. Civ. Proc. Code § 416.10 ...........................................................................................27

Cal. Corp. Code § 2110 .....................................................................................................27

**Other Authorities**

Fed. R. Civ. P. 4 .................................................................................................................27

Fed. R. Civ. P. 9 .......................................................................................................1, 14, 15

Fed. R. Civ. P. 11 ...............................................................................................................28

Fed. R. Civ. P. 12 ...................................................................................................1, 2, 3, 27

DEFENDANTS' MOTION TO DISMISS                                    Case No. 19-cv-2520-LHK

## MEMORANDUM OF POINTS AND AUTHORITIES

Continental's Amended Complaint ("Complaint") fails at the threshold for lack of Article III standing. Continental seeks advisory opinions from this Court relating to its negotiations with Defendants without plausibly alleging any actual or imminent injury. Instead, Continental speculates that *if* Defendants charged Continental's OEM customers supra-FRAND royalties, it *might* have to indemnify its customers, regardless of the cost, and its customers *might* invoke the undefined indemnity obligation to pass along supra-FRAND royalties to Continental. Continental does not allege that any OEM customer has actually paid a supra-FRAND royalty, nor that any customer has demanded that Continental indemnify or reimburse it for any unfair and unreasonable royalties. Likewise, the Complaint contains no allegations that Defendants have threatened Continental with infringement litigation, an injunction proceeding, or other denial of access to patented technology. The speculative future harm upon which Continental predicates its Complaint does not constitute a concrete and imminent injury sufficient to confer Article III standing.

Continental's claims fare no better on substance. Continental asserts antitrust claims against the Avanci patent licensing platform, but the law recognizes that patent licensing pools, like the Avanci platform, offer procompetitive benefits in the form of efficient, one-stop-shopping for patent licensees and do not restrain trade at all when they permit individual licensing by the patent pool members. The Avanci master licensing agreement (incorporated by reference in the Complaint) expressly allows licensing by individual patent owners and prohibits double royalties. Indeed, the Complaint itself admits that Continental has negotiated independently with the patent owners.

Continental's antitrust claims against the Standard Essential Patent ("SEP") holder Defendants also fail because they are based on the wholly implausible and conclusory assertion that every SEP holder lied to every standard setting organization ("SSO") for several decades, without any specific factual allegations to back this up. Such wild allegations do not come close to satisfying the pleading standard for fraud required by Rule 9(b). Continental fails to allege any of the facts required to support its claims of (1) antitrust injury; (2) an antitrust conspiracy not to engage in individual licensing; (3) monopolization or conspiracy to monopolize; or (4) an appropriate relevant market and market power. Despite mentioning this Court's *FTC v. Qualcomm* case several times in the Complaint, there

DEFENDANTS' MOTION TO DISMISS                                    Case No. 19-cv-2520-LHK

are no allegations that this case is in any way factually analogous. The Complaint does not allege that any Defendant actually makes TCUs or competes with Continental in any market. The antitrust claims must be dismissed.

Continental's non-antitrust claims should suffer the same fate. Continental's claim for promissory estoppel is barred as a matter of French law, and in any event fails to satisfy U.S. law; its declaratory judgment claim is duplicative of its other claims and should be dismissed; its contract claim seeks an improper remedy; and its UCL claim fails because the Complaint does not allege any actionable loss of money or property to Continental itself.

Separately, several parties are entitled to dismissal on the following bases: (1) Defendants Nokia Corporation, Avanci Platform International Limited ("APIL"), and Conversant SARL should be dismissed from the action for lack of personal jurisdiction; (2) Continental's breach of contract and promissory estoppel claims against Avanci should be dismissed because, as Continental acknowledges, Avanci owns no patents and therefore could not have made any contractual commitments or promises to any SSO; (3) Sharp Corporation should be dismissed because service was improper; and (4) the Optis Entities (Optis UP Holdings, LLC, Optis Cellular Technology, LLC and Optis Wireless Technology, LLC) should be dismissed because of the absence of a case or controversy, the absence of personal jurisdiction (state law claims), and because venue is improper (all claims).

## I.   **FACTS**

Several Defendants (Nokia entities, Conversant entities, certain of the Optis Entities, and Sharp) are among the owners of SEPs relating to wireless communication standards. FAC ¶¶ 86-97. To facilitate licensing, Defendant Avanci has a non-exclusive right to grant licenses to the collection of SEPs held by the other Defendants (and many other non-defendant members of the Avanci platform) to certain groups of potential licensees (*e.g.*, automotive OEMs). *Id.* ¶ 4. Avanci participants retain the right to license their patents separately to Avanci's potential licensees as well as to anyone else. Papendick Decl., Ex. A (the Master License Management Agreement ["Avanci Agreement"]).[1]

---

[1] The Court may consider this agreement on a Rule 12 Motion under the incorporation by reference doctrine because the Complaint refers to the document and it is central to Continental's claims. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

Continental is a U.S. supplier of automotive components, including telematics control units (TCUs), to automobile manufacturers (OEMs). FAC ¶¶ 1, 3. Continental is an indirect subsidiary of Continental AG, a German company. *Id.* ¶ 17.

Continental alleges that it sought to license SEPs necessary for its TCUs from Avanci, but was unwilling to pay Avanci's stated royalty. *Id.* ¶¶ 8-9. Continental also claims that Avanci allegedly only licenses at the OEM level and that Avanci members agreed not to engage in individual license negotiations with component suppliers. *Id.* ¶¶ 141, 149-50. Dissatisfied with Avanci's offer to negotiate, Continental admits it sought licenses directly from certain Avanci members. *Id.* ¶¶ 142-145. Continental allegedly contacted Nokia about an individual license, but no agreement was reached because Continental believed Nokia's royalty rates were too high. *Id.* ¶ 142. Continental contacted Conversant but rejected Conversant's offer to license Continental at the same rate that Conversant offered others. *Id.* ¶ 143. Continental alleges it also contacted PanOptis and Sharp to negotiate individual licenses but reached no agreements. *Id.* ¶¶ 144, 145.

Continental brings claims for (1) breach of contract; (2) promissory estoppel; (3) declaratory judgment; (4) violation of Section 1 of the Sherman Act; (5) monopolization under Section 2 of the Sherman Act; (6) conspiracy to monopolize under Section 2 of the Sherman Act; and (7) violation of California's Unfair Competition Law. Continental does not seek any damages, but rather seeks declaratory and injunctive relief. *See id.* at Prayer.

## II.   LEGAL STANDARDS

Generally, a plaintiff bears the burden of demonstrating that it has alleged sufficient facts to establish subject matter jurisdiction, personal jurisdiction over all Defendants, that venue is proper, that service is valid, and that it has stated a plausible claim for relief. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (subject matter jurisdiction); *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (personal jurisdiction); *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979) (venue); *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004) (service of process); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a claim for relief must be plausible). Though courts generally look to the complaint's allegations to evaluate whether these requirements have been met, the court may look beyond the pleadings to assess a motion to dismiss

for lack of subject matter or personal jurisdiction, improper venue, and insufficient service of process. *Phillips v. Apple Inc.*, No. 15-cv-04879-LHK, 2016 WL 5846992, at *3 (N.D. Cal. Oct. 6, 2016) (subject matter jurisdiction); *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (personal jurisdiction); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (improper venue); *Crowley v. Bannister*, 734 F.3d 967, 975 (9th Cir. 2013) (insufficient service of process).

## III. THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE CONTINENTAL LACKS ARTICLE III STANDING.

To demonstrate Article III standing, Continental must allege facts sufficient to show that it suffered (1) a constitutionally cognizable and non-hypothetical injury-in-fact, (2) that Defendants caused. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III's standing requirements apply equally to injunctive and declaratory relief claims. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Here, Continental faces an insurmountable obstacle: Continental is not directly or imminently threatened with any concrete injury from Defendants' alleged behavior. Instead, Continental improperly speculates that its non-party OEM customers potentially might suffer injuries, which those customers might then attempt to pass on to Continental through hypothetical contractual indemnity claims. Such remote and speculative allegations cannot establish standing under Article III, and this Court must dismiss this action for lack of subject matter jurisdiction.

### A. Continental Has Not Alleged that It Has Suffered or Will Suffer an Imminent and Non-Speculative Injury-in-Fact.

Continental seeks a declaratory adjudication of FRAND terms and an injunction preventing Defendants from seeking "royalties from Continental *and its customers* that are not consistent with Defendants' FRAND obligations." FAC Prayer at H & I (emphasis added). Notably, however, the Complaint does not allege that any Defendants are seeking royalties (much less "elevated" non-FRAND royalties) from Continental itself. *Id.* ¶¶ 8, 154.[2] Instead, Continental alleges that Defendants

---

[2] Indeed, the Optis Entities have never sued or threatened to sue Continental's known customers for patent infringement. Warren Decl., Dkt. 102-6 ¶ 4. The Nokia entities have never dealt with Continental (the U.S. entity here), and the European Continental entities with which Nokia has dealt have never requested a license—they have only requested to pay for past use—and they have asserted that they only practice the CDMA2000 standard, not any of the full 2G, 3G, or 4G standards asserted in the Complaint. Holopainen Decl. ¶¶ 5, 15-16. The Continental U.S. entity simply has no standing.

DEFENDANTS' MOTION TO DISMISS                                    Case No. 19-cv-2520-LHK

will seek royalties only from non-party OEM customers of Continental or its affiliates, and it speculates those royalties might be inflated to unfair or unreasonable levels. Continental's wholly speculative future injury is then one step further removed: any such OEM that might ultimately agree to pay unfair and unreasonable royalties, might then hypothetically seek indemnification from Continental, including for the allegedly unfair or unreasonable portion of those royalties. *Id.* ¶¶ 11, 157. Such speculative and remote allegations of injury are not the type of "concrete" and "imminent" allegations of injury-in-fact sufficient to confer Article III standing. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 951-52 (9th Cir. 2011). Injury-in-fact is simply not established where, as here, the harm alleged to the plaintiff "may or may not occur." *See, e.g.*, *Live Nation Merch., Inc. v. Does*, No. 18-cv-2703-GPB, 2018 WL 6326321, at *4 (S.D. Cal. Dec. 4, 2018); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting "objectively reasonable likelihood" standard as "inconsistent with our requirement that 'threatened injury must be certainly impending to constitute injury in fact'"). When a plaintiff's alleged injury requires that "a litany of speculative events come about," that harm "is too attenuated to constitute a qualifying injury in fact for standing." *Stelmachers v. Verifone Sys.*, No. 5:14-cv-04912-EJD, 2016 WL 6835084, at *3-4 (N.D. Cal. Dec. 17, 2015); *see also Conservation Cong. v. United States Forest Serv.*, No. 2:16-cv-00864-MCE, 2018 WL 2427640, at *9 (E.D. Cal. May 30, 2018). "In *Clapper*, the Supreme Court held that respondents' reliance on a 'highly attenuated chain of possibilities,' involving a 'highly speculative fear' that a number of third-party actors would take certain actions, did not amount to the 'certainly impending' injury required for Article III standing." *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014 GPC, 2016 WL 6523428, at *2 (S.D. Cal. Nov. 3, 2016) (citing *Clapper*, 133 S. Ct. at 1148).

The only way Continental alleges it *might* be injured by the allegedly "excessive royalties" which its OEM customers *might* agree to pay is through the possibility that such OEMs *might* invoke contractual indemnification rights that *might* exist to recoup even excessive royalties from their Tier 1 suppliers, like Continental. *See* FAC ¶¶ 11, 12, 126, 135, 157, Prayer at H. Specifically, Continental alleges that OEMs "typically"—but not always—"demand indemnity of such licensing costs as a condition of purchasing any TCUs from Tier 1 suppliers." *Id.* ¶ 11. But, fatally, Continental does not allege that a single OEM customer has ever signed a license covering the SEPs at issue with one of

the Defendants, paid supra-FRAND royalties, invoked an indemnity clause against Continental, or taken the position that the indemnity was not limited to reasonable royalties, but required indemnification of even unfair and unreasonable royalties.

Rather than pleading any actual and concrete injury, Continental merely speculates that it might suffer future injury "*should Defendants succeed* in procuring a non-FRAND license from those OEM customers." *Id.* ¶ 157 (emphasis added). Continental concedes that this injury is wholly speculative and uncertain—*i.e.,* that the royalties accepted by Continental's OEM customers might be excessive and "*risk* being passed through to Tier 1 suppliers like Continental." *Id.* ¶ 11 (emphasis added). Continental's injury is thus based on the conjectural assertion that there is a "risk" of an unidentified third-party customer invoking an unidentified indemnity provision that might potentially expose Continental to "liability" to that third party. *Id.* Such a conjectural and hypothetical injury claim is insufficient to plead injury-in-fact, even for injunctive relief.

Nor can Continental cure its lack of Article III standing by asserting the requested injunctive relief on behalf of its "customers."  *See id.* Prayer at H & I. Indeed, Continental's Motion for Antisuit Injunction seeks to enjoin a patent infringement lawsuit brought against a non-party OEM *customer* of certain non-party *European affiliates* of Continental. *See* Dkt. 32. But Continental lacks standing to assert claims on behalf of its non-party customers, much less its non-party affiliate's non-party customers. *Pony v. Cty. of Los Angeles*, 433 F.3d 1138, 1146 (9th Cir. 2006) ("Generally, a plaintiff may only bring a claim on his own behalf, and may not raise claims based on the rights of another party.").

Continental's requests for declaratory relief (*see* FAC Prayer at A-G, J-L) must also be dismissed for lack of Article III standing. *See, e.g.*, *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 WL 184125, at *13 (N.D. Cal. Jan. 17, 2013) (plaintiff lacked standing for declaratory relief because she could not demonstrate real or immediate threat of future injury).

### B.      Continental Fails to Plead that Defendants' Conduct Caused It Injury.

Nor are there plausible allegations that Defendants' conduct caused the remote and speculative injury Continental pleads. *See, e.g.*, *MAI Sys. Corp. v. UIPS*, 856 F. Supp. 538, 540 (N.D. Cal. 1994) (causation is one of Article III's "three separate but interrelated components."). Instead, Continental's

potential injury, as alleged, is a result of independent decisions of Continental's OEM customers—non-parties here—voluntarily to accept purportedly excessive royalties and then demand indemnification broad enough to cover unfair or unreasonable royalties, to which Continental alleges it might agree. *See, e.g.*, FAC ¶¶ 11, 105, 157. These independent actions of non-party intermediaries—and of Continental itself—break the causal chain from Defendants' conduct and provide another reason why Article III standing does not exist.

## IV.   THE ANTITRUST CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Continental's antitrust claims (Counts IV-VI) should also be dismissed for four independent reasons: (1) Continental fails to allege facts to establish antitrust injury, a prerequisite to an antitrust claim; (2) Continental has not alleged an agreement or conspiracy that unreasonably restrains trade; (3) Continental has not alleged a monopoly or conspiracy to monopolize; and (4) Continental has not alleged any relevant market or monopoly power.

### A.   Continental's Antitrust Claims Should Be Dismissed Because Continental Lacks Antitrust Standing.

Beyond Article III standing, the Complaint also fails to allege facts that meet "the more demanding standard for *antitrust* standing" under Section 16 of the Clayton Act. *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998). Antitrust standing "is distinct from Article III standing," for even though a plaintiff may satisfy the constitutional requirement of injury in fact, it "is not necessarily a proper party to bring a private antitrust action" because "[t]he antitrust laws do not provide a remedy to every party injured by unlawful economic conduct." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 n.3, 1055 (9th Cir. 1999); *see also Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001) (antitrust injury is "[t]he most important limitation" to standing for antitrust claims). To establish antitrust standing, "[a] showing of antitrust injury is necessary, but not always sufficient." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 n. 5 (1986). Antitrust injury requires a showing of (1) unlawful conduct; (2) causing an injury to the plaintiff; (3) that flows from that which makes the conduct unlawful; and (4) that is of the type the antitrust laws were intended to prevent. *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003). The Ninth Circuit also requires "that the injured party be a participant in the same market as the alleged malefactors." *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985).

1  Continental cannot demonstrate antitrust standing because its alleged injury is (1) too remote, and (2)

2  does not flow from Defendants' alleged anticompetitive conduct.

3  First, as discussed above, if Defendants' conduct has any effect on Continental, it is merely an

4  indirect effect that is dependent on intervening events in which Defendants were not involved—*i.e.*,

5  Continental's independent decision to indemnify its OEM customers for any and all patent royalties

6  those customers independently choose to pay. This claimed injury "flow[s] merely from the [alleged]

7  misfortunes visited upon a third person" making it "too remote" to support standing for injunctive

8  relief under the Clayton Act. *Meyer v. Qualcomm Inc.*, No. 08-cv-655 WQH, 2009 WL 539902, at *6

9  (S.D. Cal. Mar. 3, 2009); *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 406

10  (6th Cir. 2012) (denying standing to supplier of components where OEM was more direct victim:

11  "where there are more direct victims of the anticompetitive conduct, those victims have standing to

12  sue, rather than those affected indirectly"). If anything, Continental's allegations show that the OEMs

13  are first in line to suffer any injury, and that Continental's own alleged injury is derivative of its

14  customers' injury. Thus, the proper party with antitrust standing to bring a private antitrust action

15  would be the OEMs, not OEM suppliers like Continental. As a result, Continental cannot meet its

16  burden to show that the requested "injunctive relief is necessary to prevent injury to *its* interests, rather

17  than those of others" who more directly bear the alleged injury. *Antoine L. Garabet, M.D., Inc. v.

18  Autonomous Techs. Corp.*, 116 F. Supp. 2d 1159, 1171 (C.D. Cal. 2000) (emphasis added).

19  Second, Continental's alleged injury is not "the type the antitrust laws were intended to

20  prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Continental alleges

21  that it must engage in "fierce bidding competitions" for contracts with OEM customers, and that such

22  customers—not Defendants—could exercise "significant buyer power" to coerce Continental to

23  capitulate to indemnification provisions. FAC ¶ 105. Thus, Continental's purported harm—the pass

24  through of the allegedly supra-FRAND royalties that might be agreed to by the OEMs in contractual

25  indemnity provisions—does not flow from any alleged reduction in competition from Defendants'

26  conduct, but rather from competition with Continental's competitors for TCU sales, which cannot

27  support a claim of antitrust injury. *See Orion Pictures Distrib. Corp. v. Syufy Enters.*, 829 F.2d 946,

28  949 (9th Cir. 1987) ("[Plaintiff] has suffered a breach of contract, not an antitrust injury" where

8

plaintiff complained prices established through intensive bidding were unreasonably high). Indeed, any contractual indemnity obligations Continental agreed to are the product of Continental's independent business decision to accept such terms. No antitrust injury occurs in such a situation. *See Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) (no antitrust injury where "the injury . . . appears to be largely the result of [plaintiffs'] own business decisions"); *CBC Cos. v. Equifax, Inc.*, 561 F.3d 569, 572-73 (6th Cir. 2009) (plaintiff's "fundamental frustration is with the price terms of [the agreement it entered], rather than specific anticompetitive behavior").

Further, even if Continental could allege a non-speculative injury that it would pay supra-FRAND royalties itself as a result of Defendants' conduct, such a claim would still be based on Defendants' alleged breach of contract regarding FRAND obligations, not an antitrust violation. Thus, this theory would not be a source of an antitrust, as opposed to contractual, injury. *Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1368 (9th Cir. 1992).

**B.     Continental's Section 1 Claim (Count IV) Must Also Be Dismissed Because Continental Fails to Allege Facts to Support an Actionable Agreement or an Unreasonable Restraint.**

Continental's Section 1 claim also fails to support a plausible inference of an agreement that unreasonably restrains trade. To establish a claim under Section 1 of the Sherman Act, a plaintiff must show: (1) that there was a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained trade; and (3) that the restraint affected interstate commerce. *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1062 (9th Cir. 2001). Continental's Complaint has not met this test. Continental advances two unsupported theories regarding an agreement that unreasonably restrains trade: (1) that the Avanci Agreement itself is an unlawful agreement that restrains trade; and (2) that Defendants made some other, unspecified, agreement that restrains trade. Neither theory withstands scrutiny.

1.     *The Avanci Agreement Cannot Create Antitrust Liability Because It Did Not Restrain Patent Owners from Independent Licensing.*

To the extent Continental contends that the Avanci Agreement itself forms the requisite "contract, combination, or conspiracy" for purposes of Section 1, this theory fails because "[c]ourts have repeatedly held that if the antitrust plaintiff had the opportunity to license independently from individual owners of . . . patent rights engaged in a pooled activity, then the pool of rights does not

DEFENDANTS' MOTION TO DISMISS                                         Case No. 19-cv-2520-LHK

restrain trade in violation of the conspiracy provision of the Sherman Act." *Sumitomo Mitsubishi Silicon Corp. v. MEMC Elec. Materials, Inc.*, No. 05-cv-2133 SBA, 2007 WL 2318903, at *15 (N.D. Cal. Aug. 13, 2007) (collecting cases); *Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.*, 299 F. Supp. 2d 370, 378-79 (D. Del. 2004) (no restraint of trade when plaintiff "realistically could avail itself of individual licenses to [the essential patents]"); *Nero AG v. MPEG LA, L.L.C.*, No. 10-cv-3672-MRP, 2010 WL 4878835, at *4 (C.D. Cal. Nov. 24, 2010) (no restraint of trade where patent pool does not restrict individual licensing); *see also* DOJ Guidelines on Licensing Intellectual Property §§ 3.1, 4.1, 5.1, 5.5 (2017) (setting forth pro-competitive benefits of patent pools).

Continental makes the conclusory assertion that it did not have the opportunity to license independently because Defendants "expressly memorialized in a multilateral agreement" (the Avanci Agreement) an unlawful refusal to individually license. FAC ¶ 129. But the Avanci Agreement says the opposite—that patent owners in the Avanci platform have the absolute right to independently enter into individual licensing agreements directly with any interested parties. *See* Ex. A, § 4.3. ("Each Licensor retains the right to independently enter into licenses for their Essential Patents or any other Patents with prospective licensees for any products.").

Backtracking from its allegations of an outright prohibition on individual licensing, Continental further asserts that "it is practically impossible for [Avanci] members to offer individual licenses" "[b]ecause fully exhaustive individual licenses would subject Avanci to double-dipping and exhaustion claims with respect to an Avanci Member's separately-licensed SEPs." FAC ¶ 129. Again, Continental's conclusory assertion is contradicted by the express language of the Avanci Agreement which *prohibits* double royalty collections on the same patents through individual licensing:

> It shall be the responsibility of each Licensor, and not of L[icense] A[dministrator], to resolve the effect of any overlapping license with the Licensee; provided, however, that *each Licensor agrees that it will not collect royalties under both* a pre-existing Patent license agreement and a Licensing Program PLA for Patents that are licensed under such Licensing Program PLA.

Ex. A, § 4.4 (emphasis added). Thus, the express terms of the Avanci Agreement preclude the "double-dipping" restraint on individual licensing that Continental alleges. *Cf.* FAC ¶ 129. And Continental fails to allege that any "double-dipping" has occurred or been threatened.

When the plain language of an incorporated agreement, like the Avanci Agreement, contradicts

the Complaint, the language of the incorporated document controls for purposes of a motion to dismiss. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-98 (9th Cir. 2001). As the Avanci Agreement expressly permits participants to individually license their portfolios to any potential licensee, Continental "has not plausibly alleged that [Defendants' agreement] prevents it and other potential licensees from negotiating individual licenses with any of the patentees." *Nero*, 2010 WL 4878835, at *4.

2.    *Continental Fails to Plausibly Allege Facts Showing Any Agreements to Restrain Trade Outside the Avanci Agreement.*

Beyond the written Avanci Agreement, Continental also alleges "on information and belief" a conspiracy to refuse to negotiate with Continental and to agree to offer supra-FRAND rates and myriad other restraints.[3] The Supreme Court has made clear that to satisfy the "contract, combination, or conspiracy" prong of Section 1, a plaintiff cannot simply make bald allegations of agreement or conspiracy; rather, it must submit "allegations plausibly suggesting (not merely consistent with) agreement"—things like the "specific time, place, or person involved in the alleged conspiracies." *Twombly*, 550 U.S. at 557, 565 n.10; *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). As with any other Section 1 claim, pleading a "group boycott," as Continental appears to state, requires a complaint to contain "enough factual matter (taken as true) to suggest that an agreement was made." *Cascades Computer Innovation LLC v. RPX Corp.*, No. 12-cv-01143 YGR, 2013 WL 316023, at *7 (N.D. Cal. Jan. 24, 2013) (quoting *Twombly* and dismissing group boycott claim).

First, Continental baldly asserts that "Defendants collectively have agreed to refuse to directly license Continental," and that "this concerted refusal to license was a necessary mechanism for achieving Avanci's collective supra-FRAND royalties." FAC ¶¶ 106, 113; *see also id.* ¶¶ 114, 128-129. In essence, Continental alleges that the parties agreed to one thing in the Avanci Agreement (independent licensing), but then made some side agreement contradicting the Avanci Agreement (no

---

[3] Allegations "on information and belief at best would constitute surplusage" since the Federal Rules require all allegations be based on an informed belief after reasonable pre-suit investigation. *Delphix Corp. v. Actifio, Inc.*, No. 13-cv-4613 RS, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014). When, like here, attorneys use the phrase "information and belief" selectively, it "undermines [Plaintiff]'s argument that the facts it has pleaded are sufficient to support a plausible inference of pre-suit knowledge." *Id.* A plaintiff must "be willing to make those averments without caveat and/or with additional detail explaining the basis of its beliefs." *Id.*

independent licensing). Even if there were facts that could support a plausible inference of such a side agreement, other contradictory allegations in the Complaint destroy any such inference. For example, Continental expressly alleges that Defendant Conversant did, in fact, offer an individual license of its SEPs to Continental. FAC ¶ 143 ("Conversant responded [to Continental] . . . that it was 'offering a FRAND license to its SEP portfolio to manufacturers of vehicles with cellular functionality,' and *only expressed a willingness to 'make the same offer'* to Continental") (emphasis added); *see also* FAC ¶ 142 (alleging that Nokia offered to license its SEPs to Continental, but Continental was unwilling to accept the royalty rates and other terms offered).

Second, Continental alleges in conclusory fashion that Defendants used Avanci's licensing platform to collusively engage in a wide variety of anticompetitive behavior but alleges no facts to support these claims. FAC ¶¶ 175, 177, 178.[4] These bald conspiracy allegations fail to plead the requisite "specific time, place, or person involved in the alleged conspiracies." *See Frost v. LG Electroncs Inc.*, No. 16-cv-05206-BLF, 2018 WL 6256790, at *5 (N.D. Cal. July 9, 2018); *see, e.g.*, FAC ¶ 113 ("At the heart of Defendants' scheme was the collective agreement among Avanci Members to not directly license upstream suppliers . . ."); *id.* ¶ 132 ("Continental is informed and believes, and thereupon alleges, that . . . there exists agreements or understandings—tacit or express— among Defendants and their unnamed co-conspirators that they would collectively offer royalty discounts, rebates, marketing support and/or other incentives"). Without more, Continental's mere "labels and conclusions" of an anticompetitive conspiracy cannot satisfy the pleading standards for a Section 1 violation. *Twombly*, 550 U.S. at 555; *Kendall*, 518 F.3d at 1047; *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1189 (9th Cir. 2015) (applying *Twombly* to affirm dismissal of conclusory antitrust conspiracy allegations).

---

[4] Continental's allegations of tying and bundling SEPs with "unwanted technologies" and/or non-SEPs is another diversionary tactic. These allegations are implausible because they are internally inconsistent with Continental's other allegations that (1) it does not know the scope or content of the Avanci portfolio (FAC ¶ 115); and (2) the Avanci portfolio is available for a flat fee. *Id.* ¶ 112. As such, even the alleged inclusion of unwanted and/or non-essential patents does not foreclose competition for non-essential technologies nor increase the cost of a license to the pool. *U.S. Philips Corp. v. I.T.C.*, 424 F.3d 1179, 1189 (Fed. Cir. 2005) (unlike a product tying arrangement, a patent license "does not obligate the licensee to do anything; it simply provides the licensee with a guarantee that it will not be sued for engaging in conduct that would infringe the patent in question").

DEFENDANTS' MOTION TO DISMISS                                      Case No. 19-cv-2520-LHK

C.   **Continental's Section 2 Claims (Counts V and VI) Must Be Dismissed Because the Allegations Raise a Simple Breach of Contract Dispute.**

Continental's Section 2 claims alleging monopolization and a conspiracy to monopolize must also be dismissed. Continental's monopolization claim founders on its inability to allege specific facts constituting exclusionary conduct, an essential element of any Section 2 claim. *Verizon Communic's Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) ("The possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive conduct."). Here, Continental fails adequately to allege exclusionary conduct because (1) a pricing disagreement over a contractual royalty rate commitment is not exclusionary conduct; and (2) Continental offers no facts to support a claim that Defendants engaged in deceptive conduct before the SSOs. Moreover, Continental's claim of a conspiracy to monopolize must be dismissed for the further reason that the Complaint does not allege facts plausibly supporting the existence of such a conspiracy to convey monopoly power upon any entity.

1.   *Dissatisfaction with Offered Royalty Rates that Are Allegedly in Breach of Contract Does Not Constitute a Section 2 Claim.*

Patents provide legally protected and enforceable rights to an invention. *Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006). Generally, antitrust law does not impose a duty on a patent owner to license its patent to others, nor does it constrain what the patent owner may charge for its patents. Continental claims that when patent owners declare their patents potentially essential to a SSO, they no longer have the unlimited right to exclude others from practicing their patent if they also undertake a commitment to offer a license on fair, reasonable, and non-discriminatory (FRAND) terms. FAC ¶ 5. Continental asserts that such a commitment is a contractual right enforceable by third-party beneficiaries in a court of law. *Id.* ¶¶ 151-158. As such, Continental's own allegations complain of an alleged breach of contract, but it is axiomatic that "a claimed breach of contract by unreasonable conduct, standing alone, should not give rise to antitrust liability." *Vernon*, 955 F.2d at 1368. If all that was required to expose a patent owner to treble damages under the antitrust laws was an allegation that a patent owner failed to comply with their contractual FRAND commitment, then any patent owner participating in a SSO could be subject to an antitrust suit by any dissatisfied implementer, even in the absence of exclusionary conduct. This is not the law, and Continental's Section 2 claim should be dismissed. *See Rambus Inc. v. FTC*, 522 F.3d 456, 466 (D.C. Cir. 2008) ("[A]n otherwise lawful

DEFENDANTS' MOTION TO DISMISS                    Case No. 19-cv-2520-LHK

monopolist's end-run around price constraints [in form of FRAND commitment], even when deceptive or fraudulent, does not alone present a harm to competition in the monopolized market.").

2.     *The Complaint Fails to Allege Any Deceptive Conduct with the Required Particularity to Support a Section 2 Claim.*

Courts have held that a FRAND dispute can only give rise to a potential Section 2 claim where a patent owner engaged in deceptive conduct by intentionally misrepresenting to the SSO its commitment to offer FRAND rates. *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 314 (3d Cir. 2007); *u-blox AG v. InterDigital, Inc.*, No. 3:19-cv-001 CAB, 2019 WL 1574322, at *3 (S.D. Cal. Apr. 11, 2019) (actionable anticompetitive conduct requires "a patent holder's intentionally false promise to license essential proprietary technology on FRAND terms"). To state a claim of exclusionary conduct, the Complaint must plausibly allege that a patent owner made an intentionally false promise to license essential proprietary technology on FRAND terms, and that the SSO relied on that promise in adopting the patented technology over available alternatives. *Apple Inc. v. Samsung Elecs*. Co., No. 11-cv-01846-LHK, 2011 WL 4948567, at *4 (N.D. Cal. Oct. 18, 2011). Moreover, because this claim is premised on fraud, Continental must plead facts "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud . . . so they can defend against the charge." *Id*. This requires Continental to plead, at a minimum, the "who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citation omitted).

Continental makes no allegations in this case, much less allegations sufficient to meet the more stringent Rule 9(b) standard, to support its assertion that the patent owner Defendants each engaged in fraudulent conduct before the SSOs when making their respective FRAND declarations. Continental makes only the conclusory allegation, with no factual details, that "Defendant Licensors intentionally and falsely represented to the relevant SSOs, such as ETSI, ATIS and/or TIA that if elements of their proprietary technology were included in the cellular standards adopted into the standards, they would license such patents to any applicant." FAC ¶ 182. These perfunctory allegations are insufficient under Rule 9(b). *See Apple*, 2011 WL 4948567, at *4 (plaintiff had "not set forth facts establishing when these declarations were made and by whom, and for *which patents* these FRAND declarations were made") (emphasis in original). The cellular standards and patent declarations are typically publicly

available, and Continental offers no explanation why this information is lacking from its Complaint. *Avago Techs. Fiber Ip Sing. Pte v. IPtronics, Inc.*, No. C 10-02863 EJD (PSG), 2012 U.S. Dist. LEXIS 151037, at *7 (N.D. Cal. Oct. 19, 2012) ("[b]oth the industry standards and the patents-in-suit are publicly available yet IPtronics has not identified any standards from which the patents-in-suit were improperly withheld").

In addition, Continental's conclusory allegations of deceptive conduct do not differentiate between Defendants, which also necessitates dismissal. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (internal quotations omitted). Continental's pleading failures are not mere formalities. By way of example, Defendants Conversant and the Optis Entities are not alleged even to have been in existence, much less actively participated in the SSO process, at the time the 2G, 3G, and 4G technology selections were made and standards adopted decades earlier. FAC ¶¶ 75-76, 102 (alleging only that they "either knew or should have known of the original transferees' FRAND promises"). As another example, the Avanci Defendants do not hold patents and thus did not make any contractual commitments or promises to any SSOs. *Id.* ¶ 4. Absent specific factual allegations that each Defendant made specific intentionally false statements to an SSO and that the SSO relied upon such statements in its standards development, there can be no actionable Section 2 claim. *See Huawei Techs., Co v. Samsung Elecs. Co*, 340 F. Supp. 3d 934, 955 (N.D. Cal. 2018) (dismissing section 2 claim when defendant did not offer any evidence of fraudulent intent). Indeed, the blanket allegation that each Defendant intentionally misrepresented its FRAND intentions for every patent that Continental might hope to license underscores the implausibility of Continental's claims.

Finally, even if Continental could allege facts sufficient to satisfy Rule 9(b) as to each individual Defendant, it would still not have a Section 2 claim because Continental must also demonstrate that but for such deceptive conduct, other technologies would have been adopted into the standard. *Rambus*, 522 F.3d at 466. Continental does not even attempt to allege what alternatives to Defendants' patents existed prior to standardization that would have been selected for inclusion into

DEFENDANTS' MOTION TO DISMISS                                    Case No. 19-cv-2520-LHK

the standards but for Defendants' alleged deception. Indeed, and as explained above, although Continental alleges that absent the FRAND promises, "the SSOs otherwise would not have agreed to adopt a cellular standard that would have given Defendant Licensors the power to effectively block companies from practicing the standards," FAC ¶ 183, Continental merely assumes, without factual allegations in support, that there were alternative technologies that the SSO could have adopted.

3.      *The Complaint Fails to Allege Facts Establishing a Conspiracy to Monopolize.*

Continental's conspiracy to monopolize claim must also be dismissed for multiple reasons. A conspiracy to monopolize claim has four elements: (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury. *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003). Continental has not pled any facts to support these elements, and instead alleges that each "Defendant Licensor" has a separate monopoly in each of the various technologies co-extensive with their SEPs (FAC ¶ 121), which each defendant independently achieved during the course of 2G, 3G and 4G standardization (*id.*). Post-standardization, according to the Complaint, there would be no competition among these different technology market monopolies to eliminate. Nevertheless, Continental implausibly claims that the Defendant Licensors conspired to eliminate "competition" between and amongst themselves in so-called "licensing market(s)" for their SEP portfolios (which, again, by Continental's own allegations do not compete with one another). *Id.* ¶ 127. As such, Plaintiff claims that Avanci was a mechanism that each Defendant Licensor used "to exploit the monopoly power that each co-conspirator SEP holder initially obtained from standardization of its proprietary technologies" to obtain higher rates from licensing their separate SEP portfolios. *Id.* ¶ 192. This makes no legal or economic sense.

Moreover, for the reasons stated above with respect to Continental's Section 1 claim, this claim must be dismissed for failure to allege a plausible conspiracy not to individually license under *Twombly*. And even if a plausible conspiracy was alleged, it would not constitute a conspiracy to monopolize because there is no allegation that a single entity would gain monopoly power.  Instead, the conspiracy alleged amounts to a mere "shared monopoly" theory that is not actionable under Section 2. Even if "two or more competitors conspire to create a market environment in which

DEFENDANTS' MOTION TO DISMISS                                        Case No. 19-cv-2520-LHK

competition . . . is improperly restricted," there can be no conspiracy to monopolize claim under Section 2 if the market power "continues to be shared among these otherwise unrelated entities." *Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381, 391-92 (D. Md. 1990); *see also H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 672 F. Supp. 724, 741-42 (S.D.N.Y. 1987) ("The notion that two *competitors* could conspire to monopolize is, seemingly, antithetical.") (emphasis in original). Rather, a Section 2 conspiracy to monopolize theory requires that the competitors must conspire to create a "single entity to possess the illegal market power." *Sun Dun, Inc.*, 740 F. Supp. 391-92; *see also Harkins Amusement Enterps., Inc. v. Gen. Cinema Corp.*, 850 F.2d 477, 491-92 (9th Cir. 1988) (rejecting shared monopoly claim); *Standfacts Credit Servs, Inc. v. Experian Info. Sol., Inc.*, 405 F. Supp. 2d 1141, 1152 (C.D. Cal. 2005) ("Since section 2 prohibits only monopolization by a single entity, as opposed to shared monopolization, . . . an allegation of conspiracy to create a shared monopoly does not plead a claim of conspiracy under section 2."). To the extent that Continental means to allege that Avanci holds a monopoly on the "licensing markets," that allegation is implausible because Defendants have the absolute right to independently license their patents pursuant to the Avanci Agreement. Finally, Plaintiff fails to allege any overt acts in furtherance of the alleged conspiracy to monopolize. Plaintiff affirmatively alleges that each Defendant already enjoyed their "SEP monopoly" well before Avanci was formed. For all of these reasons, the Complaint fails to state a claim for conspiracy to monopolize.

### D.    Continental Fails to Allege a Relevant Antitrust Market in which Any Defendant Has Market Power.

All of Continental's Sherman Act claims also fail because Continental does not adequately allege any relevant market and the requisite degree of market power within any such relevant market. *See Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008) ("[U]nder the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.'"). Among other requirements for establishing a relevant market, the Ninth Circuit has held: (1) products or producers define the boundaries of the market, not consumers; and (2) the market must encompass the product at issue as well as economic substitutes for the product. *Id.* at 1045. As such, "the relevant market must include 'the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business.'" *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846, 2012 WL 1672493, at *4 (N.D. Cal. May 14, 2012) (citing *Thurman Indus., Inc. v. Pay 'N Pak*

17

1    *Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989)).

2            1.      *Technology Markets*

3            Continental purports to define the relevant "technology markets" as "all of the potential

4    alternative technologies capable of performing each particular function within a 2G, 3G, or 4G

5    standard." FAC ¶ 120. But Continental does not identify with any specificity what these functions are,

6    which patents (or products) are included, whether there are any economic substitutes, or any other

7    factual underpinning as to the contours of these markets.

8            Continental's failure to identify any economic substitutes is fatal. *See Newcal Indus.*, 513 F.3d

9    at 1045. "Economic substitutes have a 'reasonable interchangeability of use' or sufficient 'cross-

10   elasticity of demand' with the relevant product." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th

11   Cir. 2018) (internal citation omitted); *see also NSS Labs, Inc. v. Symantec Corp.*, No. 18-cv-5711 BLF,

12   2019 WL 3804679, at *9 (N.D. Cal. Aug. 13, 2019) (dismissing the complaint because Plaintiff "fails

13   to identify the economic substitutes for the product markets" and fails to "plead any facts regarding

14   the cross-elasticity of demand between the Relevant Product Markets and their substitutes."). Because

15   Continental never identifies the specific functions or SEPs that it claims comprise the relevant

16   technology markets, it does not even purport to define the "potential alternative technologies capable

17   of performing each particular function within a 2G, 3G, or 4G standard." FAC ¶ 120.

18           Continental also fails to allege that Defendants have "any power to exclude that exceeds the

19   exclusionary power to which a patent holder is otherwise legally entitled." *Townshend v. Rockwell*

20   *Int'l Corp.*, No. C99-0400SBA, 2000 WL 433505, at *12 (N.D. Cal. Mar. 28, 2000). Continental

21   alleges that absent the FRAND promises, "the SSOs otherwise would not have agreed to adopt a

22   cellular standard that would have given Defendant Licensors the power to effectively block companies

23   from practicing the standards." FAC ¶ 183. But that allegation assumes, without factual allegations in

24   support, that there were alternative technologies that the SSOs could have adopted. Standardization

25   can only confer market power when it forecloses other technologies that could have been adopted. *See*

26   *Apple*, 2012 WL 1672493, at *6 (distinguishing *Townshend* on grounds that "Apple has identified the

27   alternative technologies in each of the relevant markets that could have been adopted had Samsung

28   not made the allegedly false FRAND commitments").

Continental *never* identifies what "the alternative technologies in each of the relevant markets" would have been but for Defendants' allegedly false FRAND commitments. *Id.* Again, this failure is fatal. *Rambus*, 522 F.3d at 466-67 (rejecting FRAND antitrust claim because FTC did not allege that alternative technology would have been adopted but-for defendant's deception, so the deception did not harm competition). In the SEP context, this Court has required allegations identifying a *specified* patent that purportedly creates market power and *specified* reasonable substitutes that were excluded. *Apple*, 2012 WL 1672493, at *6; *cf.* Dkt. 381 at ¶ 99 (counterclaim allegations). Such factual allegations are necessary given Supreme Court precedent that patents do not create a presumption of market power. *Ill. Tool*, 547 U.S. at 46.[5] Here, Continental's conclusory allegations that *all* SEPs for *all* standards and *all* SSOs at issue had substitutes before adoption of the standards fail to comply with these minimum pleading requirements.[6]

## 2. Licensing Markets

Continental also alleges a novel "market for the licensing of 2G, 3G, and 4G cellular SEPs." FAC ¶¶ 127, 134. According to Continental, "[i]n a competitive SEP licensing market . . . the terms, including the price, on which one large SEP holder would offer to license its cellular SEPs would competitively discipline the terms that could be offered by other SEP holders." *Id.* ¶ 127. But, a market

---

[5] The Court should also reject the bare allegation that holding an SEP creates market power: "the power to effectively block companies from practicing the standards." FAC ¶ 183. Continental has not identified any patents whatsoever, much less patents it claims are valid and essential. As this Court has recognized, unless a patent is valid and essential there are likely no "antitrust implications" to the licensing dispute because "the 'lock-in' effect of the standard setting does not exist." *Apple Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2011 WL 4948567, at *4 n.6 (N.D. Cal. Oct. 18, 2011). Indeed, per Continental's allegations, because the FRAND commitments to SSOs are contractually enforceable, an SEP owner necessarily has no market power. *See Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-cv-00220-LHK, 2019 WL 2206013, at *26 (N.D. Cal. May 21, 2019) (discussing how FRAND litigation or arbitration prevents unreasonably high royalty rates).

[6] And to the extent any of these technology markets relate to foreign patents, the antitrust laws do not apply under the Foreign Trade Antitrust Improvement Act (FTAIA). 15 U.S.C. § 6a. The FTAIA "initially lays down a general rule placing all (nonimport) activity involving foreign commerce outside the Sherman Act's reach. It then brings such conduct back within the Sherman Act's reach provided that the conduct both (1) sufficiently affects American commerce, *i.e.*, it has a 'direct, substantial, and reasonably foreseeable effect' on American domestic, import, or (certain) export commerce; and (2) has an effect of a kind that antitrust law considers harmful, *i.e.*, the 'effect' must 'giv[e] rise to a [Sherman Act] claim.'" *F. Hoffmann-La Roche Ltd v. Empagran S.A.*, 542 U.S. 155, 162 (2004); *see Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., Ltd.*, 753 F.3d 395, 415 (2d Cir. 2014) (applying FTAIA to dismiss FRAND antitrust claims relating to foreign standard setting).

1  is defined by products, not consumers; here, SEP licenses, not potential licensees. *See Newcal*, 513

2  F.3d at 1044. Nokia licenses Nokia's SEPs; Conversant licenses Conversant's SEPs; Optis licenses

3  Optis's SEPs; Sharp licenses Sharp's SEPs. Continental's theory that the SEP holders are in

4  competition with each other makes no economic sense (and conflicts with the other allegations in the

5  Complaint that each SEP holder has a separate monopoly)—SEPs are by definition complements, not

6  substitutes. Prospective licensees cannot pick and choose between licenses to different SEP portfolios;

7  they need to secure rights to each SEP portfolio. There is no allegation, nor could there be, that an

8  extra license to Nokia's SEPs would eliminate the need to also have a license to Conversant's (or

9  anyone else's) SEPs. Continental's novel "licensing market" allegations fail because they do not

10 identify any patents that actually compete with each other in that claimed market.

11 3.    *Baseband Processor Market*

12 Finally, Continental alleges antitrust "markets for baseband processors that implement the 2G,

13 3G, 4G, and/or eCall functionalities and standards," FAC ¶ 131, but it does not allege that any

14 Defendants participate in that market. Continental cannot establish that Defendants possess market

15 power in a market in which they do not participate. *Trinko*, 540 U.S. at 407; *see also Newcal*, 513 F.3d

16 at 1044 n.3. In *Newcal*, the court affirmed the rejection of two antitrust markets for which the plaintiff

17 had not alleged market power. *Id.* at 1046. Here, *a fortiori*, the Court should reject the baseband

18 processor market as the basis for Continental's antitrust claims because there is no allegation that

19 Defendants even *participate* in that market. Because Continental defines no relevant product market

20 with the specificity necessary to assert an antitrust claim, and in any event fails to allege the requisite

21 market power in any such market by Defendants, both its Section 1 and Section 2 antitrust claims must

22 be dismissed.

23 **V.    CONTINENTAL'S ADDITIONAL CLAIMS SHOULD BE DISMISSED.**

24 **A.    Continental Has Not Pled a Promissory Estoppel Claim.**

25 French law governs ETSI commitments. *See Apple Inc.*, *Apple*, 2012 WL 1672493, at \*10.

26 However, "[p]romissory estoppel is not traditionally recognized under French law." *Id.*; *see also u-*

27 *blox*, 2019 WL 1574322, at \*2 (same). As a result, Continental's promissory estoppel claim regarding

28 any commitments made to ETSI under French law fails as a matter of law.

To the extent that Continental advances a promissory estoppel claim based on commitments made to U.S. organizations (ATIS and TIA), that claim also fails. Promissory estoppel requires a clear and unambiguous promise. *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.*, 688 F. Supp. 2d 940, 953 (N.D. Cal. 2010). Continental does not allege that any Defendant made a clear and unambiguous promise because any promises to "provide licenses on FRAND terms were at best promises to negotiate the terms of such patent licenses" with Continental, and such a general promise without any specific terms "does not create an enforceable promise on which a promissory estoppel claim could lie." *Haier Am. Trading, LLC v. Samsung Elecs., Co.*, No. 1:17-cv-921 TJM, 2018 WL 4288617, at *17 (N.D.N.Y. Sept. 7, 2018); *Cortez v. Mortg. Elec. Registration Sys., Inc.*, No. 3:11-cv-00872-RCJ, 2012 WL 1744449, at *3 (D. Nev. May 11, 2012) (finding that "Plaintiffs have not sufficiently stated a promissory estoppel claim" because "they allege only a promise to negotiate"). Further, Continental does not, and cannot, allege that Avanci made any commitments to SSOs because it was not a patent owner, so there can be no promissory estoppel claim against Avanci.

**B.     The Declaratory Judgment Claims Are Duplicative and Not Ripe.**

Continental's declaratory judgment claim is nearly identical to its breach of contract claim. FAC ¶¶ 167-169. In fact, the basis of Continental's request that this Court declare a FRAND rate is that "Defendants are contractually obligated to license" their SEPs on FRAND terms. *Id.* ¶ 168. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1356-57 (9th Cir. 1985). As this Court has held, when a breach of contract claim provides a plaintiff with an adequate legal remedy, "dismissal of the claim for declaratory relief related to breach of contract is proper." *Reyes v. Nationstar Mortg. LLC*, No. 15-cv-01109-LHK, 2015 WL 4554377, at *8 (N.D. Cal. July 28, 2015); *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823 JLR, 2011 WL 11480223, at *6 (W.D. Wash. June 1, 2011) (dismissing duplicative declaratory judgment claim in a RAND case).

Also, "[w]hen there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051, 1053 (Fed. Cir. 1995) *abrogated on other grounds by*

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (finding no actual controversy where licensing negotiations ongoing). For both reasons, the declaratory judgment claim must be dismissed.

## C.     The Breach of Contract Claim Fails to Establish a Claim to Specific Performance a Remedy.[7]

Continental's breach of contract claim raises only the conclusory allegation that it has "been injured in its business or property," including through "the imposition of non-FRAND terms and conditions" by indemnity. FAC ¶ 157. As a result, the Complaint requests "(1) that this Court order Defendants to offer a license on FRAND terms and conditions to Continental, and (2) an adjudication of the FRAND terms and conditions for such a license." *Id.* ¶ 158. Continental has not alleged any facts in support of this claim for specific performance under whatever unidentified contract it is seeking to enforce (and under whatever law it seeks to apply). *E.g., Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1161 (Del. 2010) ("We will order specific performance only if a party is ready, willing, and able to perform under the terms of the agreement."). Nor has Continental established that the Court has the ability to dictate specific "FRAND terms and conditions" where a wide variety of terms and conditions can be fair, reasonable, and non-discriminatory. *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1033 (9th Cir. 2015) (describing Judge Robart's determination of "RAND rate and range" for jury to compare against licensing offers to adjudicate breach of RAND claim).

Further, Continental cannot overcome the fact that this Court does not have jurisdiction to dictate terms and conditions of a license where many of the patents at issue are granted by foreign jurisdictions. *E.g., Lotes Co. v. Hon Hai Precision Indus. Co.*, No. C 11-01036 JSW, 2011 WL 13152817, at *4 (N.D. Cal. July 14, 2011) (declining jurisdiction over foreign patent claims); *Voda v. Cordis Corp.*, 476 F.3d 887, 902 (Fed. Cir. 2007) (holding that adjudication of "foreign patent infringement claims should be left to the sovereigns that create the property rights in the first instance"). Finally, Continental alleges that it has practiced the standard and sold products incorporating the standardized technology to its customers unimpeded—free from threats of exclusion or infringement litigation—so its failure to secure a license has not caused it any harm. *See* Section III, *supra*. If Continental is ever harmed, it can claim damages. *See* Witkin, Cal. Proc. (5th ed.2008)

---

[7] The Optis Defendants discuss their position on the scope of remedies available in this case in a separate section below.

DEFENDANTS' MOTION TO DISMISS                                    Case No. 19-cv-2520-LHK

Pleading, § 785, p. 203-204 (no specific performance where plaintiff has adequate remedy at law).

### D. The UCL Claim Should Be Dismissed for Multiple Reasons.

First, Continental's claim for a violation of California's Unfair Competition Law should be dismissed because it has not alleged that it has "has lost money or property as a result of the unfair competition," which it must allege in order to have UCL standing. Cal. Bus. Prof. Code § 17204. A claim for violation of the UCL cannot be maintained absent such alleged injury. *See Walker v. Geico Gen. Ins. Co.*, 558 F.3d 1025, 1027 (9th Cir. 2009) (affirming dismissal of UCL claim because a plaintiff must allege lost money or property). Second, Continental is a non-California plaintiff alleging non-California conduct, and thus cannot assert any claims under the UCL. *Norwest Mortg., Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18, 23-24 (Cal. App. 1999) (non-California resident cannot state a claim under the UCL where none of the alleged misconduct or injuries occurred in California). Third, because a UCL claim must be based on a predicate claim, it should be dismissed if the Court dismisses Continental's antitrust claims. *Apple*, 2011 WL 4948567, at *8-9.

## VI. <u>CERTAIN DEFENDANTS AND CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL REASONS.</u>

In addition to the reasons stated above for dismissing all the claims in the case, there are numerous other deficiencies with the Complaint that apply to specific Defendants. First, the Court cannot exercise personal jurisdiction over Nokia Corporation and APIL because there are insufficient facts or contacts alleged against those companies. Second, if the Court dismisses the antitrust claims, then personal jurisdiction and venue are not proper over a number of the Defendants. Third, Defendant Sharp Corporation was not properly served and should be dismissed for this reason alone. Fourth, additional reasons exist to dismiss the Optis Defendants.

### A. Many of the Defendants Should Be Dismissed for Lack of Personal Jurisdiction.

The Court should dismiss the following Defendants for lack of personal jurisdiction, including the absence of any pled facts linking them to the United States: Nokia Corporation, Conversant SARL, and APIL. In addition, if the Court dismisses the antitrust claims, the Court should also dismiss the following additional Defendants because they have no alleged connection to California: Nokia of America Corporation, Nokia Solutions and Networks US LLC, Nokia Solutions and Networks Oy, Nokia Technologies Oy, Conversant SARL, Avanci LLC, and Sharp Corporation (the "non-California

1    Defendants").

2        In fact, Nokia Corporation is a Finnish corporation, not registered to do business anywhere in

3    the United States, without any place of business in the United States. *See* Mandelin Decl. ¶¶ 3-5. It

4    has no contacts with the United States, other than a single employee on temporary assignment in New

5    Jersey, whose work does not involve automotive patent licensing projects. *Id.* ¶ 7.

6        Similarly, APIL is an Irish company with its principal place of business in Ireland. FAC ¶ 21.

7    APIL does not conduct its licensing business in the U.S. and lacks minimum contacts with the U.S.

8    *See* Fasell Decl. ¶¶ 3, 4, 10. Continental has not pled any specific forum-related activities of APIL and

9    certainly has not alleged a claim arising out of any forum-related activities by APIL. Similarly, the

10   Complaint improperly groups APIL together with "Avanci." Such collective pleading is improper and

11   is a standalone basis to dismiss the Complaint for lack of facts establishing personal jurisdiction. *See,*

12   *e.g., In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 309192, at *13

13   (N.D. Cal. Jan. 21, 2014) (dismissing a complaint that used group definitions to refer to multiple

14   defendant entities together, because plaintiffs are "required to allege that each individual defendant

15   joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an

16   agreement and a conscious decision by each defendant to join it") (internal quotation omitted). Indeed,

17   nowhere in the 79 paragraphs that comprise the "Factual Allegations" of the Complaint or in any of

18   the causes of action is APIL mentioned specifically. And, APIL did not engage in any communications

19   or negotiations with Continental relating to any of the allegations in the Complaint. Fasell Decl. ¶ 4.

20       **B.    Non-California Defendants Should Be Dismissed with the Antitrust Claims.**

21       As for Defendants with alleged U.S. contacts, the Clayton Act's broad service provisions allow

22   those U.S. contacts to be considered even though they are not contacts with the forum state. 15 U.S.C.

23   § 22. But if the Court dismisses the Sherman Act claims, the non-California Defendants should also

24   be dismissed because they have no contacts with California. First, none of these Defendants are subject

25   to general jurisdiction in California because none are incorporated in California, nor do they have a

26   principal place of business in California. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020-22 (9th

27   Cir. 2017); FAC ¶¶ 20-56; *See* Holopainen & Schmidt Decs. (Nokia); Burt Decl. ¶ 4 (Conversant

28   SARL).

         Second, specific jurisdiction is similarly lacking because Continental does not allege that the

non-California Defendants purposefully availed themselves of California's jurisdiction as it relates to this case. *Doe v. Unocal Corp.*, 248 F.3d 915, 924 (9th Cir. 2001); *see generally*, Holopainen Decl.; Burt Decl. ¶¶ 10-18. The Complaint improperly groups Defendant entities together, making assertions about licensing and negotiations as to multiple entities at once. At best, the Complaint alleges that each Defendant engaged in licensing activities, demands, and negotiations in California. FAC ¶ 59. This boilerplate pleading is both insufficient and false. *See Swartz*, 476 F.3d at 766 (stating that, for personal jurisdiction, "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden"). The Court has recognized that non-exclusive license agreements with non-resident defendants are insufficient to create personal jurisdiction. *Nanoexa Corp. v. Univ. of Chicago*, No. 10-cv-2631-LHK, 2010 WL 4236855, at *4-6 (N.D. Cal. Oct. 21, 2010). None of Continental's allegations involve discussions or meetings that occurred in California. FAC ¶¶ 119-150. And while Continental's outside counsel directed correspondence to the California offices of an affiliate of Conversant SARL, all of the responsive licensing correspondence on behalf of Conversant SARL was authored in Canada by an executive of the Canadian parent. Burt Decl. ¶¶ 13-17. Additionally, Continental does not allege that any events related to the purported conspiracy occurred in California or that Continental sustained any damages in California because of the alleged Conspiracy. *See* FAC ¶¶ 119-150.

As to the activity of Avanci, Continental includes only a boilerplate allegation that Avanci conducts licensing activity in this District. There are no factual allegations showing that Avanci actually conducted any relevant licensing activity in in this District. *See also* Dkt. 110. But, even if this were true, Avanci's contacts with California cannot create personal jurisdiction over any other Defendant. *See, e.g.*, *Williams*, 851 F.3d at 1024 ("[T]he rationale set forth in *Daimler* would seem to undermine application of an agency test even in specific jurisdiction cases.").

### C.    Continental Has Not and Cannot Plead Facts to Establish that Avanci Is Contractually Obligated to Offer FRAND Rates to Third-Party Beneficiaries.

Continental's breach of contract claims against all Defendants, including Avanci, are based on alleged FRAND commitments that the SEP owners—not Avanci—made to various SSOs. FAC ¶¶ 151-166 ("Defendants entered into, or are bound by, contractual commitments they made to the relevant SSOs"). It is undisputed that Avanci is not a SEP owner, and the Complaint does not allege

that Avanci entered into any contractual FRAND commitments or made any promises to any SSOs. *See id.* ¶ 4 ("Avanci purportedly does not own any patents directly, but rather acts on behalf of Defendant Licensors and other owners of SEPs . . . as their licensing agent"); *id.* ¶¶ 5, 99, 183. The breach of contract claims against Avanci must thus be dismissed for this additional reason.[8]

Continental tries to evade this result by making the wholly conclusory assertion that Avanci is "bound by" the Defendant Licensors' contractual FRAND commitments to relevant SSOs. *Id.* ¶ 152. But the Complaint makes clear that Avanci is merely licensing portfolios of others, and that Avanci has not itself entered into any FRAND contract with any SSO. *Id.* ¶ 99 ("all of the alleged SEPs for which Avanci acts as *licensing agent* [for the SEP owners] are encumbered by FRAND obligations . . . to make the latest technology available in a way that is fair, reasonable, and non-discriminatory (FRAND)") (emphasis added). An action for breach of contract lies only against the principal, not against the agent. *See, e.g.*, *Cruz v. United States*, 219 F. Supp. 2d 1027, 1038 (N.D. Cal. 2002) ("it is a matter of basic California contract law that where his principal is disclosed an agent cannot be held liable for breach of a contract to which he is not a party"). While Defendants may require Avanci to comply with their separate FRAND obligations, that is a right enforceable by the patent holders against their agent; it does not create a contract right against Avanci as to any implementer of the standard.

### D. Defendant Sharp Corporation Should Be Dismissed for Lack of Proper Service.

Continental has purported to serve Defendant Sharp Corporation ("Sharp Japan")—a Japanese company with its principal place of business in Osaka, Japan—only by substituted service on its U.S. subsidiary, Sharp Electronics Corporation ("Sharp USA"), a New York corporation, with its principal place of business in Montvale, New Jersey.[9] Substituted service on Sharp USA, however, is improper

---

[8] Avanci cannot breach a contractual FRAND commitment to an SSO if it never entered into such a contract in the first place. *See, e.g.*, *United Comp. Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (only a party to a contract may be liable for breach); *Monaco v. Liberty Life Assurance Co.*, No. C06-07021 MJJ, 2007 WL 420139, at *4 (N.D. Cal. Feb. 6, 2007) (citing Cal. Civ. Code § 1550) ("In order to be liable for breach of contract a defendant must be a consenting party to the contract."). Although Avanci did not make any promises or contractual commitments to any SSOs because it was not a patent owner, it does, in fact, offer its joint platform license on FRAND terms.

[9] More specifically, Continental attempted to serve Sharp Japan by (1) serving Sharp USA's registered agent for service of process, CT Corporation, ("CT Corp.") on July 26, 2019 (Dkt. 114), which was rejected by CT Corporation because it is not a registered agent for Sharp Japan (*see* Exhibit A to the Declaration of Christopher Kao); and (2) mailing the summons and complaint to the corporate

DEFENDANTS' MOTION TO DISMISS                                    Case No. 19-cv-2520-LHK

1    here and the claims against Sharp Japan must be dismissed under Rule 12(b)(5) for insufficient service.

2         Under Rule 4 of the Federal Rules of Civil Procedure, Sharp Japan must be served in Japan in

3    accordance with the requirements of the Hague Convention. Fed. R. Civ. P. 4(h)(2). Courts in this

4    District thus routinely require that foreign defendants, like Sharp Japan, be served under the Hague

5    Convention. *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 09-1115 SI, 2009 WL

6    4874872, at *5 (N.D. Cal. Oct. 6, 2009).

7         Although Rule 4 also allows for service in accordance with the procedures of the state "where

8    the district court is located or where service is made," Fed. R. Civ. P. 4 (e)(1), California law only

9    permits service on a foreign corporation through a *California* subsidiary that serves as the foreign

10   corporation's "general manager" in this state. Cal. Code Civ. Proc. § 416.10(b); Cal. Corp. Code §

11   2110. Continental's purported service on Sharp USA is therefore improper because Sharp USA is not

12   a California corporation. *See LA Gem & Jewelry Design, Inc. v. Gold Star Jewellery PVT Ltd.*, No.

13   14-cv-4807 DSF, 2014 WL 10401936, at *2 (C.D. Cal. Aug. 11, 2014) (New York subsidiaries were

14   not California general managers); *SKC Kolon PI, Inc. v. Kaneka Corp.*, No.10-cv-07251 GAF, 2010

15   WL 11553177, at *3 (C.D. Cal. Nov. 18, 2010) (same for Texas subsidiary); *see also Yamaha Motor

16   Co. v. Superior Court*, 174 Cal. App. 4th 264, 267 (2009) ("[The rule] makes service on the *California*

17   *representative* of a foreign parent valid. . . .") (emphasis added). Moreover, Sharp USA is not Sharp

18   Japan's "general manager" with respect to the licensing of any patents owned by Sharp Japan that is

19   allegedly at issue in this case—Sharp USA does not engage in any patent licensing business at all.

20   Fox Decl. ¶ 5.[10]

21

22

23   _____

     headquarters of Sharp USA in an envelope addressed to its Chairman and CEO (Dkt. 117), who is not

24   authorized to accept service on behalf of Sharp Japan.

25   [10] Indeed, Continental knows its attempted service on Sharp USA, rather than Sharp Japan, is
     improper. Continental's ultimate parent company, Continental AG, a German corporation, has

26   repeatedly prevailed on the argument that it cannot be served through the Plaintiff here, its U.S.
     subsidiary, but instead must be served under the Hague Convention. *See Orion Tire Corp. v. Gen.*

27   *Tire, Inc.*, No. 92-cv-2391 AAH, 1992 WL 295224, at *1 (C.D. Cal. Aug. 17, 1992) (granting
     Continental AG's motion to dismiss for insufficient service and requiring service under Hague

28   Convention); *see also Leon v. Continental AG*, 176 F. Supp. 3d 1315, 1318 (S.D. Fla. 2016) (requiring
     service on Continental AG under Hague Convention). The same is true of Sharp Japan.

DEFENDANTS' MOTION TO DISMISS                                    Case No. 19-cv-2520-LHK

### E.      The Optis Entities Request Dismissal for the Following Additional Reasons.

The Complaint should be dismissed against the Optis Entities for additional reasons.

***Personal Jurisdiction***. First, Continental cannot allege personal jurisdiction over the Optis Entities as to state-law claims. The Complaint does not contain allegations that any relevant agreements were negotiated, executed, or performed in California. *See* FAC ¶¶ 44-51, 66, 92-95, 102, 144. Nor does the Complaint contend that any of the Optis Entities' activities related to Continental were or are directed to California. This is not an oversight. Continental's silence is because of absence of facts that could be pled compliant with Rule 11. Dkt. 102-6 (Warren Decl.), ¶¶ 4-19. Docket 136 at pages 7-9 discusses the unique interactions between the Optis Entities and Continental.

***Venue***: The Court should dismiss the case against the Optis Entities for improper venue as to all claims. "Though personal jurisdiction is appropriate everywhere under [15 U.S.C. § 22], venue is proper only in the district(s) the corporation inhabits, is found, or transacts business." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 725 (7th Cir. 2013) (citing *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 n.6 (3d Cir. 2004)). In *Action Embroidery*, the panel made clear that a separate venue analysis must still occur. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004). Continental's allegations that various entities "transact business" in the Northern District of California are conclusory and must be disregarded under *Twombly*. "The Supreme Court interprets the phrase 'transacts business' as 'the practical, everyday business or commercial concept of doing business or carrying on business of any substantial character.'" *KM Enters.*, 725 F.3d at 731 (quoting *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948)). "Importantly, the Ninth Circuit has rejected the idea that a conspirator's in-forum acts can be attributed to his co-conspirators for venue purposes." *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 755 n.8 (N.D. Cal. 2015) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 492 (9th Cir. 1979)). For the Optis Entities (and foreign defendants, who join this argument), the Complaint makes no competent allegation of transaction of business in this District.

***No Case or Controversy***: Each of Plaintiff's counts is premised on allegations of a conspiracy among Avanci "members" "to only offer licenses to the automotive industry at the OEM level in an attempt to obtain elevated royalties that far exceed any measure of FRAND." FAC ¶ 8; *see also id.* ¶¶ 119-35. As to the Optis Entities, that premise is supported by nothing more than conclusory,

boilerplate assertions. *Id.* ¶¶ 131, 136; *Iqbal*, 556 U.S. at 678. Conclusory assertions of law masquerading as facts cannot form the basis of a proper complaint.

There is a reason why allegations against the Optis Entities are so threadbare. As noted in the Warren Declaration submitted in opposition to the Motion for Antisuit Injunction, Continental never pursued negotiations with the Optis Entities.[11] Dkt. 102-6, ¶¶ 5-7. And the Optis Entities have never sued or threatened to sue Continental or its known customers for patent infringement. *Id.* ¶ 4. The Optis Entities have recently been acquired and inherited the Avanci Agreement. Optis Entities ceased all communications with automobile manufacturers before this lawsuit. *Id.* ¶ 8. There has been no refusal to negotiate. There has been no impasse in negotiation. There has been no proposal of terms by Continental. There has been no identification of the scope of the license Continental desires. There has been no identification of the products it desires to license other than CDMA2000 products for which the Optis Entities do not have a licensing program. Dkt. 102-6 ¶¶ 5-7. There has been no rejection by Continental or Optis of terms. The Optis Entities are being hauled into a massive, complex, and costly litigation involving a dispute between other parties on nothing more than empty boilerplate allegations. Article III case or controversy requires more.

The Optis Entities will license all their declared standard essential patents for cellular communication to Continental on fair, reasonable, and non-discriminatory terms ("FRAND").

**First Cause of Action (*Breach of Contract*):** The boiler-plate allegations that "Defendants are refusing to license Continental" and "Defendants have also failed and refused to license their alleged SEPs on FRAND terms" are the exact type of empty allegation that cannot sustain a claim. FAC ¶¶ 154, 156.

**Second Cause of Action (*Promissory Estoppel*):** This count relies on the same boilerplate predicates as the First Cause of Action.

**Third Cause of Action (*Declaratory Judgment*):** This count seeks an advisory opinion on the terms of a FRAND license and seeks "'a determination that Defendants have not offered Continental a direct license to their . . . 2G, 3G, and 4G SEPs on FRAND terms and conditions." FAC ¶ 169. This

---

[11] Optis UP Holdings, LLC has no authority to license patents held by Unwired Planet, LLC or Unwired Planet International Limited (Ireland), or any other Defendant identified in the case. Blasius Decl. ¶ 2. This is an independent basis for dismissal.

DEFENDANTS' MOTION TO DISMISS                                      Case No. 19-cv-2520-LHK

1   count is defective for three reasons. First, there is no live controversy. Plaintiff has not pleaded that

2   there has been any discussion of terms with the Optis Entities that it maintains are not FRAND, and

3   the Optis Entities agree to license on FRAND terms. Second, this Court sits under limited federal

4   question jurisdiction and, in that context, the requests go well beyond its authority. Third, there is no

5   patent infringement action pending against Continental in this District (or any other district) based on

6   the Optis Entities' SEPs. Each of the three factors above independently establish that the Court's

7   declaration will serve no more than "a data point from which the parties could continue negotiations."

8   *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 1:13-cv-00009-RGA, 2014 WL 2206218, at *3 (D.

9   Del. May 28, 2014); *see also Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017)

10   (stating that the "value of the judicial pronouncement—what makes it a proper judicial resolution of a

11   'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects*

12   *the behavior of the defendant towards the plaintiff.*") (emphasis in original) (citation omitted).

13      **Fourth to Seventh Causes of Actions (Federal and California competition law):** Once again,

14   these counts are dependent on the boilerplate allegation that the Optis Entities have "refus[ed] to

15   directly license [Continental], let alone on FRAND terms and conditions[.]" FAC ¶ 171. This is empty

16   rhetoric, unsupported by any competent allegation.

17   **VII.** **CONCLUSION**

18      For the foregoing reasons, Defendants request that the Complaint be dismissed in its entirety.

19      DATED: August 30, 2019

20

21   WINSTON & STRAWN LLP      ALSTON & BIRD LLP

22    */s/ Jeffrey L. Kessler*       */s/ Ryan W. Koppelman*
 Jeffrey L. Kessler (pro hac vice)   Ryan W. Koppelman (SBN 290704)

23    jkessler@winston.com      ALSTON & BIRD LLP
 Aldo A. Badini (SBN 257086)    950 Page Mill Road

24    abadini@winston.com      Palo Alto, CA 94304
 Susannah P. Torpey (pro hac vice)  Telephone: (650) 838-2000

25    storpey@winston.com      Facsimile: (650) 838-2001
 WINSTON & STRAWN LLP    ryan.koppelman@alston.com

26    200 Park Avenue
 New York, NY 10166-4193

27    Telephone: (212) 294-6700    Teresa T. Bonder (SBN 321558)
 Facsimile: (212) 294-4700     ALSTON & BIRD LLP

28                  560 Mission Street, Suite 2100
               San Francisco, CA 94105

1  Ian L. Papendick (SBN 275648)
   ipapendick@winston.com
2  Jeanifer E. Parsigian (SBN 289001)
   jparsigian@winston.com
3  WINSTON & STRAWN LLP
   101 California Street
4  San Francisco, CA 94111
   Telephone: (415) 591-1000
5  Facsimile: (415) 591-1400

6
   *Counsel for Defendants Avanci, LLC and*
7  *Avanci Platform International Ltd.*

8

9  IRELL & MANELLA LLP

10   */s/ Jason G. Sheasby*
    Jason G. Sheasby (SBN 205455)
11  jsheasby@irell.com
    H. Annita Zhong (SBN 266924)
12  hzhong@irell.com
    IRELL & MANELLA LLP
13  1800 Avenue of the Stars, Suite 900
    Los Angeles, CA 90067-4276
14  Telephone: (310) 277-1010
    Facsimile: (310) 203-7199
15

16 *Counsel for Defendants*
17 *Optis UP Holdings, LLC, Optis Wireless*
   *Technology, LLC, and Optis Cellular*
18 *Technology, LLC*

19
   PILLSBURY WINTHROP SHAW
20 PITTMAN LLP

21 */s/  Christopher Kao*
22 Christopher Kao (SBN 237716)
   christopher.kao@pillsburylaw.com
23 David J. Tsai (SBN 244479)
   david.tsai@pillsburylaw.com
24 PILLSBURY WINTHROP SHAW
   PITTMAN LLP
25 Four Embarcadero Center, 22nd Floor
26 San Francisco, CA 94111
   Telephone: (415) 983-1000
27 Facsimile: (415) 983-1200

28 *Specially Appearing for Defendant Sharp*
   *Corporation*

Telephone: (415) 243-1000
Facsimile: (415) 243-1001
teresa.bonder@alston.com

Mark A. McCarty (pro hac vice granted)
Matthew D. Richardson (pro hac vice granted)
John D. Haynes (pro hac vice granted)
Andrew J. Tuck (pro hac vice granted)
Cassandra Kerkhoff Johnson (SBN 300064)
ALSTON & BIRD LLP
1201 W. Peachtree St.
Atlanta, GA 30309
Telephone:    (404) 881-7000
Facsimile:    (404) 881-7777
mark.mccarty@alston.com
matt.richardson@alston.com
john.haynes@alston.com
andy.tuck@alston.com
cassie.johnson@alston.com

*Attorneys for Defendants Nokia Corporation,*
*Nokia of America Corporation, Nokia Solutions*
*and Networks US LLC, Nokia Solutions and*
*Networks Oy, and Nokia Technologies Oy*

BAKER BOTTS LLP

  */s/ James G. Kress*
James G. Kress (pro hac vice)
james.kress@bakerbotts.com
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

Peter K. Huston (SBN 150058)
peter.huston@bakerbotts.com
Stuart C. Plunkett (SBN 187971)
stuart.plunkett@bakerbotts.com
Tina V. Ngo (SBN 324102)
tina.ngo@bakerbotts.com
101 California Street, Suite 3600
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Counsel for Defendant Conversant Wireless*
*Licensing SARL*

DEFENDANTS' MOTION TO DISMISS                    Case No. 19-cv-2520-LHK

**FILER'S ATTESTATION**

I, Ryan W. Koppelman, am the ECF User whose identification and password are being used to file this document. I hereby attest that the concurrence to the filing of this document, and accompanying declarations and exhibits, has been obtained from each signatory hereto.

DATED: August 30, 2019                    ALSTON & BIRD LLP

                                          By:    */s/ Ryan W. Koppelman*_____

DEFENDANTS' MOTION TO DISMISS                    Case No. 19-cv-2520-LHK

1

**<u>CERTIFICATE OF SERVICE</u>**

2

    I certify that on August 30, 2019, I cause of a copy of this Motion to be served on all counsel

3

of record via the Court's Electronic Filing system.

4

5

Dated: August 30, 2019            */s/ Ryan W. Koppelman*
                                  Ryan W. Koppelman (SBN 290704)

6                                 ALSTON & BIRD LLP
                                  950 Page Mill Road

7                                 Palo Alto, CA 94304
                                  Telephone: (650) 838-2000

8                                 Facsimile: (650) 838-2001
                                  ryan.koppelman@alston.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS                           Case No. 19-cv-2520-LHK