# Exhibit A

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONTINENTAL AUTOMOTIVE SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AVANCI, LLC, AVANCI PLATFORM INTERNATIONAL LIMITED, NOKIA CORPORATION, NOKIA OF AMERICA CORPORATION, NOKIA SOLUTIONS AND NETWORKS US LLC, NOKIA SOLUTIONS AND NETWORKS OY, NOKIA TECHNOLOGIES OY, CONVERSANT WIRELESS LICENSING SARL, OPTIS UP HOLDINGS LLC, OPTIS CELLULAR TECHNOLOGY, LLC, OPTIS WIRELESS TECHNOLOGY, LLC,<br><br>Defendants. | Case No. 19-cv-2520-LHK<br><br>**FOURTH DECLARATION OF LASSE HOLOPAINEN** |

**Fourth Declaration of Lasse Holopainen**

1. I am currently the Senior Licensing Manager of Patent Licensing at Nokia Technologies Oy ("Nokia Technologies") in Espoo, Finland. In that role, I am responsible for handling automotive licensing. Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would testify competently to them.

2. On 29 August 2019, I submitted a declaration in support of Defendants' Motion to Dismiss First Amended Complaint. In that declaration, I explained, among other things, that (1) neither I nor anyone at Nokia Technologies ever had discussions with any employee of Continental Automotive Systems, Inc. and instead only communicated with representatives of Continental Automotive GmbH regarding a potential license; and (2) Continental Automotive GmbH made clear that it was only interested in a license to Nokia's SEPs related to CDMA2000 and that it only wanted a license to cover past sales to Daimler (as opposed to other OEMs).

3. On 4 October 2019, David Djavaherian submitted a declaration in support of Plaintiff's Opposition to Motion to Dismiss First Amended Complaint. In his declaration, Mr. Djavaherian states that certain of the statements contained in my 29 August 2019 declaration were incorrect. I disagree with Mr. Djavaherian's characterization and therefore I submit this declaration to provide clarification.

4. In response to my assertion that Nokia Technologies only dealt with Continental Automotive GmbH and had no dealings with Continental Automotive Systems, Inc., Mr. Djavaherian states that Nokia Technologies, on 24 October 2017, received a letter on behalf of the "Continental Group" stating that the Continental Group is "generally willing to take licenses to declared standard essential patents, to the extent that any of its products make use of technical inventions[] protected by such" patents. The 24 October 2017 letter, however, was not sent on behalf of the Continental Group. Instead, the letter was sent on a Continental Automotive GmbH letterhead and was signed by Dr. Roman Bonn, Vice President of Intellectual Property, and Dr. Jürgen Richter, Director of Intellectual Property, who was employed by Continental Automotive GmbH according to his e-mail signature. Thus, even though there is one single reference to the "Continental Group" in the body of the 24 October 2017 letter, the letter certainly was not sent on "behalf" of the Continental Group as Mr.

Djavaherian suggests.

5. Additionally, Mr. Djavaherian's statement that the Non-Disclosure Agreement was executed "by Nokia Technologies Ltd. and Continental AG" is incorrect. The Parties to the agreement were Nokia Technologies Ltd and Continental Automotive GmbH.

6. Mr. Djavaherian also repeatedly states that the negotiations between Nokia Technologies and Continental Automotive GmbH were not restricted to past sales and were not limited to CDMA2000.[1] However, I never stated that the parties only discussed a license for CDMA2000 that would cover past sales. In fact, I acknowledged that representatives from Nokia Technologies suggested that any license should cover more than CDMA2000 because the market data demonstrated that Continental Automotive GmbH supplied LTE, 2G, and 3G products to Daimler. Moreover, representatives from Nokia Technologies believed that a license should cover both past and future sales and included language to that effect in the proposals sent to Continental Automotive GmbH.

7. The point I was emphasizing in my 29 August 2019 declaration was that, despite Nokia Technologies' position that a license should cover all relevant standards and apply to both past and future sales, Continental Automotive GmbH consistently took the position that it was only interested in a license to CDMA2000 that would cover past sales to Daimler. Specifically, during both the 15 February 2018 conference call and the 28 February 2018 conference call, Dr. Richter stated that Continental Automotive GmbH only expected a license for CDMA2000. Dr. Richter further explained that the license to Daimler should only cover past sales because, as he had explained on a prior conference call, Continental Automotive GmbH was "not a supplier to Daimler" and did not have any present sales to Daimler. Moreover, in a 27 March 2018 email, Dr. Richter declined a meeting with representatives of Nokia Technologies because he had not yet received a "lump sum proposal for CDMA2000." Therefore, I agree with Mr. Djavaherian that the parties' discussions and proposals included the potential for a license that covered all relevant standards and applied to both past and future sales. But it was Nokia Technologies—not Continental Automotive GmbH—that was

---

[1] Although Mr. Djavaherian references discussions between the parties in November of 2017, he was not involved in those discussions and therefore I do not believe that he has personal knowledge regarding the subject of those discussions.

proposing such a license.

8. Mr. Djavaherian then relies on his 30 October 2018 letter to Nokia Technologies in order to support his statement that Continental Automotive GmbH sought a "direct FRAND license" for all relevant standards that would cover both past and future sales. Importantly, this letter marked a shift in Continental Automotive GmbH's licensing strategy. Mr. Djavaherian's 30 October 2018 letter was the first time that any Continental entity suggested that they were interested in a license that was not limited to past sales and CDMA2000. Mr. Djavaherian's letter was therefore directly contrary to the position that representatives of Continental Automotive GmbH took during the negotiations that took place in late 2017 and early 2018.

9. Mr. Djavaherian also makes much of the fact that the draft license proposals covered affiliates, including Continental Automotive Systems, Inc. Once again, I agree that the draft proposals exchanged between the parties covered affiliates, as is customary in patent license agreements for standard essential patents. But that does not change the fact that in its bilateral discussions with Continental, Nokia Technologies never engaged in any direct communications or negotiations with Continental Automotive Systems, Inc. regarding a license. As I explained in detail in my 29 August 2019 declaration, Nokia Technologies only communicated with representatives of Continental Automotive GmbH regarding a potential license.

10. With respect to the communications between Nokia Technologies and Zonar, Mr. Djavaherian states that "Nokia proposed a direct license with Zonar" and then "backtracked" offering only the "Tier 1" license. This is incorrect. Nokia Technologies' original offer to Zonar included a license to Nokia Technologies' patent portfolio for Zonar Systems' complete end-user products. Indeed, in my 20 September 2018 email, I explained that "[f]or the sake of clarity, the license offer described in Nokia's letter of 21st September 2017 and made pursuant to Nokia's commitments towards Qualcomm, also cover[ed] end-user, ready-to-use products and not intermediate products." Therefore, Nokia Technologies' position was always that any direct license to Zonar would only cover complete, ready-to-use end products as opposed to intermediary connectivity products.

11. Finally, Mr. Djavaherian's suggestion that Nokia offered direct licenses to other component

suppliers in the automotive industry is misleading. Specifically, Mr. Djavaherian states that, in a 18 December 2018 letter, he "explained the many deficiencies in Nokia's refusal to offer a direct license to Continental, including . . . Nokia's licenses to other component suppliers in the automotive industry. . . ." Importantly, Mr. Djavaherian did not list any component suppliers with direct licenses and otherwise failed to substantiate his claim that Nokia Technologies had direct licenses with component suppliers. While Nokia Technologies has granted licenses under its standard essential patents to companies, such as Samsung, LG, and Huawei, which, according to my knowledge, directly or indirectly also supply components to automotive manufacturers, these licenses cover only complete and ready-to-use end-user products, such as mobile handsets, and they do not cover intermediate component products. Nokia Technologies' position with respect to component suppliers has consistently been that sales by component suppliers should be covered by a FRAND license agreement between Nokia Technologies and the end product company. This is because the most efficient way to provide access to our patented technology for any value-chain is through one license agreement covering all SEPs relevant for such value chain as opposed to multiple license agreements with multiple companies in the same value chain.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _24th October 2019_ at _Espoo, Finland_.

_/s/ Lasse Holopainen_
Lasse Holopainen

FOURTH DECLARATION OF LASSE HOLOPAINEN
Case No. 19-cv-2520-LHK